**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

DAVID DYKEHOUSE, KRISTINA
BOSKOVICH, and ELIZABETH
HAMBLIN, on behalf of themselves and
all others similarly situated,

                        Plaintiff,

vs.

THE 3M COMPANY, a Delaware
Corporation, GEORGIA-PACIFIC LLC, a
Delaware Corporation,

                        Defendants.

Case No. 1:18-CV-01225-RJJ-PJG

Hon. Robert J. Jonker

---

**MEMORANDUM OF LAW IN SUPPORT OF GEORGIA-PACIFIC'S**
**MOTION TO DISMISS UNDER RULE 12(b)(6)**

# **TABLE OF CONTENTS**

Page

TABLE OF CONTENTS ................................................................................................ i

TABLE OF AUTHORITIES ....................................................................................... iii

INTRODUCTION ...........................................................................................................1

ARGUMENT .................................................................................................................2

    I.    Plaintiffs' Trespass Claim Fails, Because They Have Not Alleged a Cognizable Physical Intrusion on Their Properties. .............................................2

    II.    Plaintiffs' Battery Claim Fails, Because Plaintiffs Do Not Allege That Georgia-Pacific "Touched" Them at all, Let Alone Intentionally. .........................4

        A.    Plaintiffs Fail to Allege That Georgia-Pacific Intended to Commit an Act of Battery. ...........................................................................5

        B.    Exposure to Generalized Pollution Cannot Satisfy the "Harmful Touching" Element of Battery Under Michigan Law. ...............................6

    III.    Plaintiffs' Unjust Enrichment Claim Fails Because Plaintiffs Do Not Allege They Conferred Any Benefit on Georgia-Pacific. ......................................6

    IV.    Plaintiffs' Product Liability Claims Against Georgia-Pacific Fail Because Plaintiffs Do Not Allege Harm Caused by any Product Georgia-Pacific Designed or Manufactured. ......................................................................8

        A.    Plaintiffs have not stated a design defect claim upon which relief can be granted. ..............................................................................8

        B.    Plaintiffs have not stated a failure to warn claim upon which relief can be granted. ............................................................................11

    V.    The Court should also dismiss several of Plaintiffs' requests for relief, as they seek remedies not available under Michigan law. .....................................12

        A.    Michigan Does Not Recognize Medical Monitoring as a Remedy. ..........12

        B.    Plaintiffs Have Not Identified an Exception to the "American Rule." ...................................................................................14

Page

C.    Defendants Are Not State Actors, and Plaintiffs Have Not
       Identified Any Provision of the Constitution That Defendants Have
       Violated.................................................................................................14

CONCLUSION.................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

Page(s)

**FEDERAL CASES**

*Abnet v. Coca-Cola Co.*,
   786 F. Supp. 2d 1341 (W.D. Mich. 2011) .................................................................4

*Corradetti v. Sanitary Landfill, Inc.*,
   912 F. Supp. 2d 156 (D.N.J. 2012) ..........................................................................5

*In re Darvocet, Darvon, & Propoxyphene Products Liab. Litig.*,
   756 F.3d 917 (6th Cir. 2014) ...............................................................................9, 12

*Guertin v. Michigan*,
   No. 16-cv-12412, 2017 WL 2418007 (E.D. Mich. June 5, 2017) ...........................4

*Mercer v. Rockwell Int'l Corp.*,
   24 F. Supp. 2d 735 (W.D. Ky. 1998) .....................................................................3

*Nat'l Collegiate Athletic Ass'n v. Tarkanian*,
   488 U.S. 179 (1988).............................................................................................14

*Schechner v. Whirlpool Corp.*,
   237 F. Supp. 3d 601 (E.D. Mich. 2017)..................................................................8

*Storey v. Attends Healthcare Products Inc.*,
   No. 15-CV-13577, 2016 WL 3125210 (E.D. Mich. June 3, 2016) .........................8


**STATE CASES**

*A & M Supply Co. v. Microsoft Corp.*,
   No. 274164, 2008 WL 540883 (Mich. Ct. App. Feb. 28, 2008)..............................7

*Abel v. Eli Lilly & Co.*,
   343 N.W.2d 164 (Mich. 1984)................................................................................9

*Adams v. Cleveland-Cliffs Iron Co.*,
   602 N.W.2d 215 (Mich. Ct. App. 1999) ..............................................................2, 3

*Auto Club Ins. Ass'n v. Gen. Motors Corp.*,
   552 N.W.2d 523 (Mich. Ct. App. 1996) ..............................................................8-9

*Brown v. Drake-Willock Int'l Ltd.*,
   530 N.W.2d 510 (Mich Ct. App. 1995)................................................................11

Page(s)

*Chapman v. Alawi*,
No. 331750, 2018 WL 472211 (Mich. Ct. App. Jan. 18, 2018) .............................................13

*Doe v. Henry Ford Health System*,
865 N.W.2d 915 (Mich. Ct. App. 2014) .................................................................................13

*Dunn v. Lederle Labs.*,
328 N.W.2d 576 (Mich. Ct. App. 1982) .................................................................................11

*Espinoza v. Thomas*,
472 N.W.2d 16 (Mich. Ct. App. 1991) ................................................................................4, 5

*Gautheir v. Mayo*,
258 N.W.2d 748 (Mich. Ct. App. 1977) .................................................................................10

*Ghrist v. Chrysler Corp.*,
547 N.W.2d 272 (Mich. 1996) ...............................................................................................10

*Glittenberg v. Doughboy Recreational Indus.*,
491 N.W.2d 208 (Mich. 1992) ...............................................................................................11

*Haliw v. City of Sterling Heights*,
691 N.W.2d 753 (Mich. 2005) ...............................................................................................14

*Henry v. Dow Chem. Co.*,
701 N.W.2d 684 (Mich. 2005) ...............................................................................................13

*Hollowell v. Career Decisions, Inc.*,
298 N.W.2d 915 (Mich. Ct. App. 1980) ..................................................................................7

*Karaus v. Bank of N.Y. Mellon*,
831 N.W.2d 897 (Mich. Ct. App. 2012) ..................................................................................7

*Landstar Express Am. Inc. v. Nexteer Auto. Corp.*,
900 N.W.2d 650 (Mich. Ct. App. 2017) ..................................................................................7

*Martin v. Reynolds Metals Co.*,
342 P.2d 790 (Or. 1959) ..........................................................................................................3

*Morris Pump v. Centerline Piping, Inc.*
273 Mich. App. 187  (2006) .....................................................................................................7

*Neurology Servs. v. Fairfax Med. PWH, LLC*,
No. 220451, 2005 WL 832160 (Va. Cir. Ct. Jan. 3, 2005).......................................................5

Page(s)

*Nolen v. Laura*,
No. 330621, 2017 WL 2704908 (Mich. Ct. App. June 22, 2017),
*appeal denied,* 908 N.W.2d 904 (Mich. 2018) ....................................................6

*Postma v. County of Ottawa*,
No. 243602, 2004 WL 1949317 (Mich. Ct. App. Sept. 2, 2004)..........................3, 4

*Romeo Inv. Ltd. v. Michigan Consol. Gas Co.*,
No. 260320, 2007 WL 1264008 (Mich. Ct. App. May 1, 2007) ...........................7

*Scott v. Hurd-Corrigan Moving & Storage Co. Inc.*,
302 N.W.2d 867 (Mich. Ct. App. 1981) ..............................................................14

*Smith v. Glenmark Generics, Inc., USA*,
No. 315898, 2014 WL 4087968 (Mich. Ct. App. Aug. 19, 2014).......................7-8

*Sudul v. City of Hamtramck*,
562 N.W.2d 478 (Mich. Ct. App. 1997) ..............................................................5

*Tinkler v. Richter*,
295 N.W. 201 (Mich. 1940).................................................................................4

*United States Aviex Co. v. Travelers Ins. Co.*,
336 N.W.2d 838 (Mich. Ct. App. 1983) ..............................................................4

*Wiggins v. City of Burton*,
805 N.W.2d 517 (Mich. Ct. App. 2011) ..............................................................3

*Williams v. Detroit Edison Co.*,
234 N.W.2d 702 (Mich. Ct. App. 1975) ..............................................................10


**STATUTES**

Mich. Comp. Laws § 600.2945(h) .........................................................................9


**OTHER AUTHORITIES**

PROSSER & KEETON, TORTS § 13 (5th ed.) ..........................................................3

## <u>INTRODUCTION</u>

Plaintiffs try to force square pegs into round holes.  In their Complaint, Plaintiffs allege

that per- and polyfluoroalkyl substances (PFAS) in industrial waste leached into their drinking

water.  They claim a corporate predecessor of defendant Georgia-Pacific LLC ("Georgia-

Pacific") generated this waste making paper products at a mill in Parchment and disposed of that

waste in an adjacent landfill it owned and operated.  Plaintiffs further allege that Georgia-Pacific

negligently closed that landfill after the mill shut down.  Even if those allegations are accepted as

true, five counts of Plaintiffs' nine-count Complaint should be dismissed, because the legal

theories on which they are based do not apply.[1]

Plaintiffs first stretch to assert intentional torts of trespass and battery.  Those claims fail,

because Plaintiffs cannot allege a physical invasion of land by a tangible object necessary for a

trespass claim, and they cannot allege either the "touching" or the intent necessary for a battery

claim.

Plaintiffs' unjust enrichment claim is similarly inapplicable.  Plaintiffs have not stated a

claim under this implied contract theory, because they do not allege any interaction with

Georgia-Pacific, let alone that they conferred a benefit upon Georgia-Pacific.

Plaintiffs' product liability claims, premised on both design defect and failure to warn

theories, fare no better.  Plaintiffs do not allege that the paper products and food packaging

James River produced injured them.  To the extent Plaintiffs allege injury from any product, 3M

(not Georgia-Pacific (or James River)) manufactured it.  At most, Plaintiffs allege injury from a

---

[1] The allegation that a predecessor of Georgia-Pacific operated the mill in Parchment is inaccurate.  As Georgia-Pacific clarifies in its accompanying answer, the business entity that operated the Parchment mill until 1995 was James River Paper Company, Inc. ("James River"), which later became Georgia-Pacific Consumer Products LP.  That company is different from the named defendant in this lawsuit, Georgia-Pacific LLC.  But this inaccuracy is immaterial to this motion.

byproduct of Georgia-Pacific's manufacturing process, but Michigan law does not recognize such "byproduct liability" as a species of product liability.

Finally, Plaintiffs seek relief unavailable under Michigan law, including medical monitoring, attorney fees, and a declaration that the Defendants acted in an "unconstitutional" manner (even though the Complaint alleges no constitutional violations and the Defendants are not state actors). The Court should dismiss these requests for relief.

In sum, the Court should dismiss Counts III, IV, VII, VIII, and IX of Plaintiffs' Complaint as well as paragraphs b, f, and j of their Relief Requested.

## ARGUMENT

**I.    Plaintiffs' Trespass Claim Fails, Because They Have Not Alleged a Cognizable Physical Intrusion on Their Properties.**

The Court should dismiss Plaintiffs' trespass claim (Count III) because Michigan law does not recognize a cause of action in trespass for intrusions by diffuse particulates that have become part of the ambient environment.  That is the type of intrusion Plaintiffs allege. Plaintiffs assert that an alleged corporate predecessor of Georgia-Pacific disposed of waste from paper production at a landfill in Parchment, Michigan.  (Compl. ¶¶ 3, 14, 91; *see generally id.* ¶¶ 89-119.)  Plaintiffs allege that some of this waste contained PFAS, and that PFAS contained in the waste was "allowed to leach into the water system." (*Id.* ¶¶ 2-3.)  Plaintiffs further allege that "Defendants' actions resulted in contaminants entering into Plaintiffs' persons and properties." (*Id.* ¶ 205.)  This does not suffice to state a claim for trespass.

In *Adams v. Cleveland-Cliffs Iron Co.,* 602 N.W.2d 215 (Mich. Ct. App. 1999), the Michigan Court of Appeals considered whether dust from a mine that migrated from the defendant's property onto the plaintiffs' property was actionable in trespass.  The Court of Appeals held that a plaintiff could not recover in trespass "for indirect, intangible invasions that

nonetheless interfere[ ] with exclusive possessory interests in the land." *Id.* at 220. "Trespass is an invasion of the plaintiff's interest in the exclusive possession of his land." *Id.* at 219. "Recovery for trespass to land in Michigan is available only upon proof of an unauthorized direct or immediate intrusion of a physical, tangible object onto land over which the plaintiff has a right of exclusive possession." *Id.* at 222. Invasions by matter, such as dust particles, which have become "part of the ambient circumstances of [the] space" are recoverable (if at all) in nuisance, rather than trespass. *Id.* at 223.

Notably, the Court of Appeals expressly rejected cases from other jurisdictions that permitted recovery in trespass based on the presence of PCBs and for "fluoride compounds in the form of gases and particles" on plaintiffs' properties. *Id.* at 220 (citing *Mercer v. Rockwell Int'l Corp.*, 24 F. Supp. 2d 735, 743 (W.D. Ky. 1998) and *Martin v. Reynolds Metals Co.*, 342 P.2d 790 (Or. 1959)). The court held such situations are "in reality, examples of the tort of . . . nuisance or . . . negligence." *Adams*, 602 N.W.2d at 220 (citing PROSSER & KEETON, TORTS § 13 (5th ed.)); *see also Wiggins v. City of Burton*, 805 N.W.2d 517, 533 (Mich. Ct. App. 2011) (per curiam) (noting the Michigan Court of Appeals' "desire to preserve the separate identities of trespass and nuisance.") (internal quotations and citations omitted).

The Court in *Adams* identifies invasions that do not qualify as trespass—"noise, vibrations, or ambient dust, smoke, soot, or fumes." *Adams*, 602 N.W.2d at 222. The Court's reasoning applies equally to groundwater contamination, so courts have repeatedly applied *Adams* to bar trespass claims alleging groundwater contamination. In *Postma v. County of Ottawa*, No. 243602, 2004 WL 1949317 (Mich. Ct. App. Sept. 2, 2004) (unpublished) (per curiam), for example, the Court analogized groundwater contamination to the dust in *Adams*, noting "contaminants in groundwater, even more so than dust that settles on land, simply

becomes a part of the ambient circumstances of that space and will not support an action in trespass."[2] *Id.* at *9 (internal quotations and citations omitted); *see also Guertin v. Michigan*, No. 16-cv-12412, 2017 WL 2418007, at *29 (E.D. Mich. June 5, 2017), *rev'd in part on other grounds* (holding in a Flint water case alleging trespass based on water contamination that "although the intrusion of particulate matter may give rise to a claim of nuisance, the tangible object requirement for trespass is not met by such intrusion") (internal quotations and citations omitted); *Abnet v. Coca-Cola Co.*, 786 F. Supp. 2d 1341, 1346 (W.D. Mich. 2011) (Bell, J.) ("The Court must conclude that Michigan does not recognize claims of trespass where groundwater contamination is the only alleged injury.").

Plaintiffs' trespass claim here suffers the same defect. Groundwater contamination is not an "invasion" sufficient to support a trespass claim. The Court should dismiss that claim.

## II.    Plaintiffs' Battery Claim Fails, Because Plaintiffs Do Not Allege That Georgia-Pacific "Touched" Them at all, Let Alone Intentionally.

Battery is an intentional tort that requires "the willful and harmful or offensive touching of another person which results from an act intended to cause such a contact." *Espinoza v. Thomas*, 472 N.W.2d 16, 21 (Mich. Ct. App. 1991) (citing *Tinkler v. Richter*, 295 N.W. 201 (Mich. 1940)). Plaintiffs have alleged neither an intentional act of battery nor a harmful or offensive touching, so their battery claims accordingly fail as a matter of law.

---

[2] The Court of Appeals continued in dicta that "even if plaintiff could prove . . . that groundwater contaminants equate to physical, tangible objects, plaintiff's claim of trespass is without merit because this Court has recognized that one does not have ownership or exclusive possession over water beneath one's property." *Id.* (citing *United States Aviex Co. v. Travelers Ins. Co.*, 336 N.W.2d 838 (Mich. Ct. App. 1983)).

A.     **Plaintiffs Fail to Allege That Georgia-Pacific Intended to Commit an Act of Battery.**

Battery is an intentional tort that requires a willful act intended to create a harmful or offensive touching.  Negligence or gross negligence are not enough.  *Sudul v. City of Hamtramck*, 562 N.W.2d 478, 479 (Mich. Ct. App. 1997).  "The question of intent and/or willfulness is an element of assault and battery.  The intent element for assault is identical with that for battery.  There is, properly speaking, no such thing as a negligent assault."  *Id*. at 487 (internal citations omitted).

Plaintiffs do not allege or describe any act by Georgia-Pacific that was "intended to" cause the "harmful or offensive touching" of Plaintiffs.  *Espinosa*, 472 N.W.2d at 21.[3]  Rather, the Complaint alleges merely that "Defendants" (collectively) "allowed the release and migration of toxic chemicals into the environment," and that "[t]he wrongful touching and/or contact occurred when PFAS invaded the bodies of the Plaintiffs and the Class Members through their drinking water."  (Compl. ¶¶ 255-256.)  At most, these allegations constitute some species of negligence.  They will not support an intentional battery claim under Michigan law.  The Court should dismiss Plaintiffs' battery counts.

---

[3] Other jurisdictions applying the same intent standard for battery have found that a party does not act with sufficient intent to touch another person merely by releasing an alleged toxin into the environment.  *See, e.g.*, *Neurology Servs. v. Fairfax Med. PWH, LLC*, No. 220451, 2005 WL 832160, at *9 (Va. Cir. Ct. Jan. 3, 2005) (dismissing battery claim based on asbestos exposure because, although defendants were aware asbestos was present at construction site and "may have sent the asbestos fibers into the air, the Court finds no intent to cause an offensive touching.") (internal quotation marks omitted); *Corradetti v. Sanitary Landfill, Inc.*, 912 F. Supp. 2d 156, 161 (D.N.J. 2012) (granting defendant's motion to dismiss, reasoning that intent required in an environmental tort case cannot be satisfied by the "discharging of Contaminants into the environment and failing to remediate such Contaminants.").

B.    **Exposure to Generalized Pollution Cannot Satisfy the "Harmful Touching" Element of Battery Under Michigan Law.**

A second, independent reason why the Court should dismiss Plaintiffs' battery claims is because alleged exposure to pollution is not a "touching" as a matter of law.  In a 2017 opinion, the Michigan Court of Appeals considered whether a plaintiff could premise a battery claim on allegations that the defendant intentionally exposed plaintiff to diesel fumes, giving the plaintiff headaches, dizziness, and nausea.  *Nolen v. Laura,* No. 330621, 2017 WL 2704908, at \*7 (Mich. Ct. App. June 22, 2017) (per curiam) *appeal denied,* 908 N.W.2d 904 (Mich. 2018).  Citing the elements of battery from *Espinosa*, the court held: "the trial court did not err when it granted summary disposition of plaintiff's assault and battery claim ... .  The trial court summarily dismissed the assault and battery claims because it rejected the notion that these facts involved a 'touching.'"  *Id.*

The reasoning of the Court of Appeals in *Nolen* is consistent with its holding in *Adams* (discussed above), regarding trespass.  Just as fumes or groundwater contamination do not constitute the physical invasion onto land necessary to support a trespass claim, they likewise do not constitute a "touching" for purposes of a battery claim.  These intentional tort claims are simply not the correct vehicle to address the allegations made by Plaintiffs. Because allegedly exposing a person to pollution does not involve an intentional "touching" as required to assert a battery claim under Michigan law, the Court should dismiss Plaintiffs' battery claims.

III.    **Plaintiffs' Unjust Enrichment Claim Fails Because Plaintiffs Do Not Allege They Conferred Any Benefit on Georgia-Pacific.**

The "unjust enrichment" cause of action allows a court to impose a contract-in-law between plaintiff and defendant to prevent the defendant from profiting unjustly from a benefit conferred by the plaintiff.  To prevail on such a claim, the plaintiff must establish "'(1) the receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to the

plaintiff because of the retention of the benefit by defendant.'"  *Landstar Express Am. Inc. v. Nexteer Auto. Corp.*, 900 N.W.2d 650, 657 (Mich. Ct. App. 2017) (quoting *Morris Pumps v. Centerline Piping, Inc.*, 273 Mich. App. 187, 195 (2006)).  Because granting relief through an unjust enrichment claim requires a court to impose a contractual relationship that the parties did not themselves expressly negotiate, courts should approach the task "with some caution." *Hollowell v. Career Decisions, Inc.*, 298 N.W.2d 915, 920 (Mich. Ct. App. 1980); *see also Romeo Inv. Ltd. v. Michigan Consol. Gas Co.*, No. 260320, 2007 WL 1264008, at *8 (Mich. Ct. App. May 1, 2007).

Plaintiffs do not allege these elements.   Plaintiffs allege that Georgia-Pacific "received the benefits of disposing of PFAS without incurring the costs associated with conducting such disposal in a safer and more appropriate manner."  (Compl. ¶ 210.)  Plaintiffs then allege that "[t]he retention of these benefits constitutes unjust enrichment in the amount of all amounts not expended by failing to provide for the disposal of the PFAS materials in a safer and more appropriate manner."  (*Id.* ¶ 211.)   But Plaintiffs do not allege that they conferred this benefit on Georgia-Pacific themselves.  Indeed, the Plaintiffs here do not claim to have had any interaction with Georgia-Pacific at all.

Because Plaintiffs do not allege that they conferred any benefit on Georgia-Pacific, the Court should dismiss their unjust enrichment claim.  Absent the "receipt of a benefit by [defendant] from plaintiff," an unjust enrichment claim cannot succeed.   *Karaus v. Bank of N.Y. Mellon*, 831 N.W.2d 897, 906 (Mich. Ct. App. 2012); *see also, e.g., A & M Supply Co. v. Microsoft Corp.*, No. 274164, 2008 WL 540883, at *2 (Mich. Ct. App. Feb. 28, 2008) (affirming dismissal of unjust enrichment claim where plaintiffs could not show that the defendant received any direct benefit from them); *Smith v. Glenmark Generics, Inc., USA*, No. 315898, 2014 WL

4087968, at *1 (Mich. Ct. App. Aug. 19, 2014) ("In this case, the facts show that defendant did not receive a direct benefit from plaintiff. Defendant did not sell the contraceptives directly to plaintiff, and plaintiff admitted that she did not purchase the contraceptives from defendant, but rather from a pharmacy. Therefore, the trial court did not err by granting summary disposition for defendant and dismissing plaintiff's claim."); *Storey v. Attends Healthcare Products Inc.*, No. 15-CV-13577, 2016 WL 3125210, at *12–13 (E.D. Mich. June 3, 2016) (observing that unjust enrichment only applies under Michigan law where the defendant and plaintiff "had some sort of direct interaction," and finding that the Plaintiffs failed to state a claim because they have not alleged that they directly conferred a benefit on the defendant); *Schechner v. Whirlpool Corp.*, 237 F. Supp. 3d 601, 618 (E.D. Mich. 2017) (dismissing unjust enrichment claim in a consumer class action, on the basis that "to state a claim for unjust enrichment, Michigan law requires a direct benefit or some sort of direct interaction between Plaintiffs and Whirlpool. Plaintiffs allege neither.") (internal citations omitted).

Because Plaintiffs have alleged no interaction whatsoever with Georgia-Pacific, let alone that they conferred any direct benefit on Georgia-Pacific, the Court should dismiss Count IV of their Complaint.

**IV.   Plaintiffs' Product Liability Claims Against Georgia-Pacific Fail Because Plaintiffs Do Not Allege Harm Caused by any Product Georgia-Pacific Designed or Manufactured.**

**A.   Plaintiffs Have Not Stated a Design Defect Claim Upon which Relief Can Be Granted.**

To establish a *prima facie* case of product liability under Michigan law, a plaintiff must show that "the defendant supplied a product that was defective and that the defect caused the injury." *Auto Club Ins. Ass'n v. Gen. Motors Corp.,* 552 N.W.2d 523, 527 (Mich. Ct. App.

1996).  "The threshold requirement of any products liability action is identification of the injury-causing product and its manufacturer."  *Abel v. Eli Lilly & Co.*, 343 N.W.2d 164, 170 (1984).

Michigan has codified this sine qua non of a products liability claim.  "The Michigan Revised Judicature Act of 1961 includes a provision defining 'product liability actions' as those 'based on a legal or equitable theory of liability brought for ... injury to a person ... caused by or resulting from the production of a product.'"  *In re Darvocet, Darvon, & Propoxyphene Products Liab. Litig.*, 756 F.3d 917, 946–47 (6th Cir. 2014) (quoting Mich. Comp. Laws § 600.2945(h)).  "Michigan courts require that plaintiffs in product liability actions prove that the defendant manufactured the injury-causing product."  Id. (citing *Abel*, 343 N.W.2d at 170).

Plaintiff's product liability claims fail against this requirement.  Plaintiffs' Complaint repeatedly identifies co-defendant 3M—and not Georgia-Pacific—as the manufacturer of the allegedly defective products.  Plaintiffs allege that they were damaged by "harmful chemicals known as PFAS," and that "Defendant 3M manufactured these dangerous chemicals."  (Compl. ¶¶ 2, 4.)  Plaintiffs allege that "PFAS is a family of chemicals known as per- and polyfluoroalkyl substances which include Perflourooctaneesulfonic acid ("PFOS") and perflourooctanic acid ("PFOA")," and that "3M produced all or substantially all of the PFOS in the United States."  (*Id.* ¶¶ 19, 29; *see also id.* ¶ 30, "3M produced a variety of widely-used products with PFOS, including the well-known Scotchgard and also Scotchban"; *id.* ¶ 34, "3M created and manufactured these substances.")

In contrast, Plaintiffs lodge no complaint about any product Georgia-Pacific (or James River) manufactured.  They allege that a Georgia-Pacific corporate predecessor manufactured paper products.  (Compl. ¶¶ 14, 89.)  But Plaintiffs do not allege that they ever purchased or used those paper products, much less suffered any injury from them.  At most, they assert that a

Georgia-Pacific predecessor generated waste that contained PFAS when it manufactured paper, and that this PFAS has since leached into groundwater.  (*Id.* ¶¶ 3, 14, 92, 102, 106.)

Disposing of industrial waste is not an activity covered by product liability law.  "The underlying rationale of a product liability claim is that the manufacturer has a duty to place into the stream of commerce products free of defects and reasonably fit for the use intended, anticipated or reasonably foreseeable.  If there is a causal connection between the defect and the resultant injury or damage, liability attaches."  *Gautheir v. Mayo*, 258 N.W.2d 748, 749 (Mich. Ct. App. 1977) (internal citations omitted); *see also Ghrist v. Chrysler Corp.*, 547 N.W.2d 272, 275 (Mich. 1996) ("by putting the product into the stream of commerce, the manufacturer impliedly promises that the product is safe for its intended and all reasonably foreseeable uses."). The product—not the process by which it was manufactured—must cause the injury, and it must do so after the defendant placed it into the stream of commerce.

Michigan courts have declined invitations to deviate from this bedrock principle.  For example, in *Williams v. Detroit Edison Co.*, 234 N.W.2d 702 (Mich. Ct. App. 1975), a decedent's surviving spouse sued after the defendant's power line was knocked down and fell on the decedent, killing him.  The Court of Appeals concluded that these facts would not support a product-liability claim, because there was no "transfer" of the product (electricity) out of the power company's control.  *Id.* at 707.  "The ill-fated contact with defendant's wire and its subsequent descent onto plaintiff's decedent did not involve placing the electricity 'into the stream of commerce,' and was not type of transfer which triggers the application of the [product liability] doctrines at issue."  *Id.*

The same principles apply here.  The focus of product liability law is the product that a manufacturer places into the stream of commerce—not the byproduct waste that it places in a

landfill.  Plaintiffs do not allege that Georgia-Pacific paper products injured them.  The Court

should dismiss Count VII against Georgia-Pacific.

> **B.      Plaintiffs Have Not Stated a Failure to Warn Claim Upon Which Relief Can Be Granted.**

Plaintiffs' product liability/failure to warn claim (Count VII) fails for the same reasons as

its design defect claim.  Under Michigan law, "manufacturers have a duty to warn purchasers or

users of dangers associated with the intended use or reasonably foreseeable misuse of

their products."  *Glittenberg v. Doughboy Recreational Indus.*, 491 N.W.2d 208, 211 (Mich.

1992).  But "[t]he law does not impose upon manufacturers a duty to warn of the hazards of

using products manufactured by someone else."  *Brown v. Drake-Willock Int'l Ltd.*, 530 N.W.2d

510, 515 (Mich Ct. App. 1995).

Plaintiffs do not allege that they purchased, used or were harmed by any product

manufactured by Georgia-Pacific or its alleged predecessor.  The product that Georgia-Pacific's

alleged corporate predecessor produced is not alleged to have injured the Plaintiffs, and Georgia-

Pacific is not alleged to be the manufacturer of the product that is alleged to have injured the

Plaintiffs.  Again, at most, Plaintiffs assert that Georgia-Pacific's alleged corporate predecessor

disposed of industrial waste from papermaking operations and that this waste contained PFAS.

(Compl. ¶¶ 3, 14, 92, 102, 106.)  Such waste disposal does not support a failure to warn claim.

Michigan "duty to warn" law simply does not apply to injuries arising from general

environmental contamination that occurred as a byproduct of manufacturing.  Michigan "duty to

warn" law requires that manufacturers market "[u]navoidably unsafe products ... with adequate

warnings of their dangers."  *Dunn v. Lederle Labs.*, 328 N.W.2d 576, 579 (Mich. Ct. App. 1982).

"Warnings generally must be calculated to reach the ultimate *consumer*."  *Id.* (emphasis added).

11

But Plaintiffs do not allege that they were ever a consumer of any paper product Georgia-Pacific made.

Plaintiffs try to mask the defects in their product liability claims by making all of their allegations against "Defendants" collectively.  (Compl. ¶¶ 236-253.)  But Plaintiffs cannot satisfy federal pleading standards by simply lumping the Defendants together.  *See In re Darvocet,* 756 F.3d at 931-32 (finding failure to warn complaint was deficient under *Iqbal* and *Twombly* where the plaintiffs failed to identify *which* manufacturer failed to implement warnings, or whose "failure to warn" caused the injuries at issue in the complaint).  Plaintiffs have not stated a product liability/failure to warn claim upon which relief can be granted, so the Court should dismiss Count VIII of their Complaint.

**V.     The Court Also Should Dismiss Several of Plaintiffs' Requests for Relief, as They Seek Remedies Not Available Under Michigan Law.**

The Court should dismiss several of Plaintiffs' requests for relief, because they seek remedies not available under Michigan law.  In particular, Plaintiff asks that the Court grant them "Medical monitoring" (Compl. at 36, ¶ f "Relief Requested") and "Reasonable attorneys' fees and litigation expenses" (*id.* ¶ j).   Because neither of these requested remedies are available under applicable Michigan law, they fail to state claims upon which relief can be granted and should be dismissed.  In addition, Plaintiffs ask for "[a]n order declaring the conduct of Defendants unconstitutional."  (*Id.* ¶ b.)  But because Plaintiffs have alleged no constitutional violation of any kind, and because Defendants are private business entities and not state actors, that relief is likewise unavailable.

**A.     Michigan Does Not Recognize Medical Monitoring as a Remedy.**

Plaintiffs do not allege that they have been diagnosed with any health condition or suffered any present injury or illness of any kind.  Rather, Plaintiffs allege merely that "people

have been placed at risk for developing serious and fatal diseases." (Compl. ¶ 2.) Similarly, in a portion of their Complaint devoted to purportedly establishing the "Necessity of Medical Monitoring" (*id*. ¶¶ 163-173), Plaintiffs allege merely that "[p]ersons such as Plaintiffs and the Class . . . have or will have a significantly increased risk of contracting one or more diseases." (*Id*. ¶ 164.) They further allege that their exposure to pollution makes it "reasonably necessary for them to undergo periodic diagnostic medical examinations." (*Id.* ¶ 165.)

The Michigan Supreme Court held unambiguously that Michigan does not recognize a claim for medical monitoring expenses. *Henry v. Dow Chem. Co.,* 701 N.W.2d 684, 686 (Mich. 2005). "[W]e decline plaintiffs' invitation to alter the common law of negligence liability to encompass a cause of action for medical monitoring." *Id.* This prohibition applies regardless of whether the plaintiff is attempting to assert medical monitoring as a cause of action or as a form of damages. "[I]f the alleged [medical monitoring] damages cited by plaintiffs were incurred in anticipation of possible future injury rather than in response to present injuries, these pecuniary losses are not derived from an injury that is cognizable under Michigan tort law." *Id.* at 689. The Court concluded that "[b]ecause plaintiffs have not alleged a present physical injury, but rather, 'bare' damages, the medical expenses plaintiffs claim to have suffered (and will suffer in the future) are not compensable." *Id.* at 691. *Henry* accordingly precludes medical monitoring in the absence of a present physical injury. *Id*; *see also Doe v. Henry Ford Health System,* 865 N.W.2d 915, 921 (Mich. Ct. App. 2014) ("damages 'incurred in anticipation of possible future injury rather than in response to present injuries' are not cognizable under Michigan law") (following *Henry*); *Chapman v. Alawi*, No. 331750, 2018 WL 472211, at *18 (Mich. Ct. App. Jan. 18, 2018) (per curiam) ("[E]xpenses incurred due to the fear of a possible future injury are not compensable damages in the absence of a present injury.")

13

Plaintiffs' request for a medical monitoring remedy is precluded by Michigan law and accordingly should be dismissed.

**B.    Plaintiffs Have Not Identified an Exception to the "American Rule."**

"Michigan follows the 'American rule' with respect to the payment of attorney fees" and accordingly "attorney fees generally are not recoverable from the losing party as costs in the absence of an exception set forth in a statute or court rule expressly authorizing such an award." *Haliw v. City of Sterling Heights*, 691 N.W.2d 753, 756 (Mich. 2005).  And "any exception to the prevailing doctrine that attorney fees are not recoverable must be narrowly construed." *Scott v. Hurd-Corrigan Moving & Storage Co. Inc.*, 302 N.W.2d 867 (Mich. Ct. App. 1981). Plaintiffs do not allege that any such exception applies here, and none does.  Because no statute or court rule expressly authorizes an award of attorney fees in this case, the Court should dismiss Plaintiffs' request for attorney fees.

**C.    Defendants Are Not State Actors, and Plaintiffs Have Not Identified Any Provision of the Constitution That Defendants Have Violated.**

Plaintiffs request "[a]n order declaring the conduct of Defendants unconstitutional." Nowhere in their Complaint, however, do they allege violation of any provision of the Constitution.  Nor do they allege that any Defendant is a state actor.  *See Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179 (1988).  To the contrary, they acknowledge that both Defendants are private business entities.  (Compl. ¶ 9, alleging that Georgia-Pacific "is a limited liability company organized in Delaware with its principal place of business located in Atlanta, Georgia"; *id.* ¶ 8, alleging that 3M "is a Delaware corporation with its principal place of business located in St. Paul, Minnesota.")  Accordingly, Plaintiffs' request for "[a]n order declaring the conduct of Defendants unconstitutional" should be dismissed.

## **<u>CONCLUSION</u>**

Georgia-Pacific respectfully requests that, for the reasons described more fully above, this Court grant its Motion to Dismiss Under Rule 12(b)(6), and dismiss Counts III, IV, VII, VIII, and IX of Plaintiffs' Complaint as well as paragraphs b, f, and j of their Relief Requested.


Dated:  January 18, 2019                              <u>        /s/ George P. Sibley, III           </u>

                                                         Janet Ramsey
                                                         Dean Pacific
                                                         WARNER NORCROSS + JUDD LLP
                                                         111 Lyon, N.W., Ste. 900
                                                         Grand Rapids, Michigan 49503
                                                         616.752.2424
                                                         dpacific@wnj.com
                                                         jramsey@wnj.com

                                                         Michael Shebelskie
                                                         mshebelskie@hunton.com
                                                         Alexandra Cunningham
                                                         acunningham@hunton.com
                                                         Douglas Garrou
                                                         dgarrou@hunton.com
                                                         George P. Sibley, III
                                                         gsibley@hunton.com
                                                         HUNTON ANDREWS KURTH LLP
                                                         951 E Byrd St.
                                                         Riverfront Plaza, East Tower
                                                         Richmond, VA 23219
                                                         804.788.8200

                                                         Attorneys for Defendant Georgia-Pacific LLC