## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| DAVID DYKEHOUSE, KRISTINA BOSKOVICH, and ELIZABETH HAMBLIN, on behalf of themselves and all others similarly situated,<br><br>    *Plaintiffs*,<br><br>  v.<br><br>THE 3M COMPANY, a Delaware Corporation, GEORGIA-PACIFIC LLC, a Delaware corporation,<br><br>    *Defendants*. | Civil Action No. 1:18-cv-1225<br><br>Hon. Robert J. Jonker<br><br>Magistrate Judge Phillip J. Green<br><br>**ORAL ARGUMENT REQUESTED** |

## 3M COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS <u>MOTION TO DISMISS</u>

## TABLE OF CONTENTS

**Page**

BACKGROUND ................................................................................................................ 1

ARGUMENT .................................................................................................................... 2

I.  PLAINTIFFS FAIL TO STATE A NUISANCE CLAIM (COUNTS I & II) ................... 2

II.  PLAINTIFFS FAIL TO STATE A TRESPASS CLAIM (COUNT III) .......................... 4

    A.  The Alleged Presence of PFAS Is Not A "Significant Physical Intrusion." .......... 5

    B.  Plaintiffs Do Not Allege A "Direct or Immediate Intrusion." .............................. 6

    C.  Plaintiffs Have No Exclusive Property Right In Groundwater ............................. 6

III.  PLAINTIFFS FAIL TO STATE AN UNJUST ENRICHMENT CLAIM (COUNT
    IV) ................................................................................................................................ 7

IV.  PLAINTIFFS FAIL TO STATE A NEGLIGENCE CLAIM (COUNTS V & VI) ........... 8

    A.  3M owed Plaintiffs no duty of care as a matter of law ......................................... 8

    B.  Michigan's product liability statute preempts Plaintiffs' negligence claim ......... 9

    C.  Plaintiffs' remaining negligence theories fail as a matter of law ........................ 10

    D.  Plaintiffs fail to allege cognizable physical injuries or property damage ............ 11

        1.  Michigan law requires a present, physical injury to state a
        negligence claim .......................................................................................... 12

        2.  Plaintiffs fail to allege an injury to property ............................................. 13

    E.  Plaintiffs fail to state a gross negligence claim .................................................. 14

V.  PLAINTIFFS FAIL TO STATE A PRODUCTS LIABILITY CLAIM (COUNTS
    VII AND VIII) .............................................................................................................. 15

    A.  Plaintiffs do not allege facts to support a feasible alternative design ................. 15

    B.  The complaint shows that 3M sold its products to a sophisticated user ............. 16

VI.  PLAINTIFFS FAIL TO STATE A BATTERY CLAIM (COUNT IX) ......................... 17

    A.  Plaintiffs do not allege a harmful "touching." ................................................... 17

    B.  Plaintiffs do not allege that 3M acted with the requisite intent .......................... 18

VII.  SEVERAL OF PLAINTIFFS' REQUESTS FOR RELIEF FAIL AS A MATTER
    OF LAW ...................................................................................................................... 18

CONCLUSION ................................................................................................................ 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*16630 Southfield Ltd. P'Ship v. Flagstar Bank, F.S.B.*,
  727 F.3d 502 (6th Cir. 2013) ................................................16

*A & M Supply Co. v. Microsoft Corp.*,
  2008 WL 540883 (Mich. App. Feb. 28, 2008) ........................7

*Abnet v. Coca-Cola Co.*,
  786 F. Supp. 2d 1341 (W.D. Mich. 2011) ...........................5, 6

*Adams v. Cleveland-Cliffs Iron Co.*,
  602 N.W.2d 215 (Mich. App. 1999)............................... *passim*

*Adkins v. Thomas Solvent Co.*,
  487 N.W.2d 715 (Mich. 1992)............................................4, 13

*Aetna Cas. & Surety Co. v. Ralph Wilson Plastics Co.*,
  509 N.W.2d 520 (Mich. App. 1993)......................................16

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).................................................................2

*Barnes v. Sun Chem. Corp.*,
  164 F. Supp. 3d 994 (W.D. Mich. 2016) ...............................20

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).................................................................2

*Bickerstaff v. Lucarelli*,
  830 F.3d 388 (6th Cir. 2016) ..................................................2

*Bletz v. Gribble*,
  641 F.3d 743 (6th Cir. 2011) ................................................14

*Boumelhem v. Bic Corp.*,
  535 N.W.2d 574 (Mich. App. 1995)......................................18

*Buckner v. Roy*,
  2015 WL 4936694 (E.D. Mich. Aug. 18, 2015) ....................14

*Buczkowski v. McKay*,
  490 N.W.2d 330 (Mich. 1992)............................................8, 9

*In re Certified Question from Fourteenth Dist. Ct. of Appeals of Tex.*,
   740 N.W.2d 206 (Mich. 2007) ...................................................................8, 9

*Children's Ctr. for Developmental Enrichment v. Machle*,
   612 F.3d 518 (6th Cir. 2010) ...........................................................................20

*Cloverleaf Car Co. v. Phillips Petroleum Co.*,
   540 N.W.2d 297 (Mich. App. 1995) ..........................................................2, 3, 6

*Coyer v. HSBC Mortg. Servs.*,
   2011 WL 4502087 (E.D. Mich. Sept. 28, 2011) ...............................................11

*In re Darvocet, Darvon, & Prophoxyphene Prods. Liab. Litig.*,
   756 F.3d 917 (6th Cir. 2014) ...........................................................................15

*Detroit Bd. of Educ. v. Celotex Corp.*,
   493 N.W.2d 513 (Mich. App. 1992) ...............................................................3, 4

*Espinoza v. Thomas*,
   472 N.W.2d 16 (Mich. App. 1991) ...................................................................17

*Gelman Sciences, Inc. v. Dow Chemical Co.*,
   508 N.W.2d 142 (Mich. App. 1993) ...............................................................3, 4

*Greene v. A.P. Prods., Ltd.*,
   717 N.W.2d 855 (Mich. 2006) ......................................................................9, 15

*Guertin v. Michigan*,
   2017 WL 2418007 (E.D. Mich. June 5, 2017) ...............................................5, 14

*Haliw v. City of Sterling Heights*,
   691 N.W.2d 753 (Mich. 2005) ..........................................................................20

*Handy-Clay v. City of Memphis*,
   695 F.3d 531 (6th Cir. 2012) ...........................................................................19

*Heaton v. Benton Constr. Co.*,
   780 N.W.2d 618 (Mich. App. 2009) .................................................................10

*Hendricks v. DSW Shoe Warehouse, Inc.*,
   444 F. Supp. 2d 775 (W.D. Mich. 2006) ..........................................................19

*Henry v. Dow Chem. Co.*,
   701 N.W.2d 684 (Mich. 2005) ................................................................. *passim*

*Henry v. Dow Chem. Co.*,
   905 N.W.2d 601 (Mich. 2018) (Order) .......................................................12, 13

*Johnson v. Chrysler Corp.*,
  254 N.W.2d 569 (Mich. App. 1977) ................................................................ 10

*McCrory ex rel. Jones v. Ford Motor Co.*,
  1996 WL 33323948 (Mich. App. July 9, 1996) ................................................ 3

*Karaus v. Bank of New York Mellon*,
  831 N.W.2d 897 (Mich. App. 2012) ................................................................ 7

*Lipov v. Louisiana-Pacific Corp.*,
  2013 WL 3805673 (W.D. Mich. July 22, 2013) .............................................. 7

*Mallory v. City of Ferndale*,
  2011 WL 891212 (E.D. Mich. Mar. 11, 2011) ................................................ 14

*Martell v. Turcheck*,
  2008 WL 2714210 (E.D. Mich. July 7, 2008) ................................................ 7

*Nolen v. Laura*,
  2017 WL 2704908 (Mich. App. June 22, 2017) .............................................. 17

*People v. Woolfolk*,
  848 N.W.2d 169 (Mich. App. 2014) ................................................................ 19

*Postma v. Cty. of Ottawa*,
  2004 WL 1949317 (Mich. App. Sept. 2, 2004) .............................................. 5, 6

*Prentis v. Yale Mfg. Co.*,
  365 N.W.2d 176 (Mich. 1984) ........................................................................ 10

*Psycher v. United States*,
  2017 WL 2904208 (E.D. Mich. July 7, 2017) ................................................ 12

*Reed v. Pfizer, Inc.*,
  839 F. Supp. 2d 571 (E.D.N.Y. 2012) ............................................................ 16

*Reilly v. Vadlamudi*,
  680 F.3d 617 (6th Cir. 2012) ........................................................................ 14, 15

*Rogers v. Caruso*,
  2013 WL 1339684 (W.D. Mich. Mar. 29, 2013) ............................................ 14

*Rose v. Braciszewski*,
  2009 WL 3276431 (Mich. App. Oct. 13, 2009) .............................................. 18

*Scott v. Hurd-Corrigan Moving & Storage Co., Inc.*,
  302 N.W.2d 867 (Mich. App. 1981) ................................................................ 20

*Scribner v. Charter Twp. of Independence*,
   2002 WL 87514 (Mich. App. Jan. 22, 2002) ...................................................................11

*Sholberg v. Truman*,
   852 N.W.2d 89 (Mich. 2014) ....................................................................................2, 3

*Storey v. Attends Healthcare Prods., Inc.*,
   2016 WL 3125210 (E.D. Mich. June 3, 2016)..................................................................7

*Sudul v. City of Hamtramck*,
   562 N.W.2d 478 (Mich. App. 1997) ..............................................................................18

*Tarlea v. Crabtree*,
   687 N.W.2d 333 (Mich. App. 2004)..........................................................................14, 15

*Van Buren v. Crawford Cty.*,
   2014 WL 2217016 (E.D. Mich. May 29, 2014)..............................................................14

*Xu v. Gay*,
   668 N.W.2d 166 (Mich. App. 2003) ..............................................................................14

**Statutes**

42 U.S.C. § 1983 ...............................................................................................................19

M.C.L. 324.20101a ...........................................................................................................11

M.C.L. 324.20107a(1) .......................................................................................................11

M.C.L. 600.2945 .................................................................................................................9

M.C.L. 600.2945(h) ............................................................................................................9

M.C.L. 600.2945(j) ...........................................................................................................17

M.C.L. 600.2946(2) ...........................................................................................................15

M.C.L. 600.2947(4) ...........................................................................................................16

M.C.L. 600.2948(2) ...........................................................................................................17

Michigan's Natural Resources and Environmental Protection Act ...................................10

Plaintiffs David Dykehouse, Kristina Boskovich, and Elizabeth Hamblin bring this putative class action against 3M Company ("3M") and Georgia-Pacific LCC ("Georgia-Pacific") to recover for the alleged contamination of the City of Parchment's drinking water system by chemicals known as per- and polyfluoroalkyl substances ("PFAS"). Plaintiffs' claims against 3M fail as a matter of law and should be dismissed with prejudice.

## BACKGROUND

PFAS are a family of synthetic chemicals with a wide range of properties and industrial and commercial applications. The complaint alleges that certain PFAS or PFAS-containing products manufactured and sold by 3M were used "in products applied to paper, such as waxed and foot contact paper," at a paper mill (the "Mill") operated by Georgia Pacific and its predecessor entities. Dkt. 1 ("Compl.") ¶¶ 26, 30-31, 92-94. The Mill then allegedly disposed of its PFAS-containing waste at the Crown Vintage Landfill ("Landfill"), which was constructed, operated, and maintained by Georgia Pacific and its predecessors. *Id*. ¶¶ 95-137. There are no allegations that 3M ever operated or exercised control over the Landfill, disposed of PFAS or PFAS-containing wastes there, or otherwise released PFAS directly into Michigan's environment.

Plaintiffs allege that PFAS from the Landfill subsequently contaminated the City of Parchment's municipal water supply due to Georgia Pacific's supposed failure to operate the Landfill "in a safe and responsible manner." *Id*. ¶¶ 3, 138-62. Plaintiffs further allege that PFAS has a number of deleterious health effects and that 3M purportedly knew of these effects and tried to conceal them. *Id*. ¶¶ 32-88. Plaintiffs claim that PFAS are hazardous substances and that Plaintiffs' exposure to PFAS in drinking water warrants continued medical monitoring. *Id*. ¶¶ 163-83.

Based on these allegations, Plaintiffs bring nine claims against 3M and Georgia-Pacific: public nuisance (Count I); private nuisance (Count II); trespass (Count III); unjust enrichment (Count IV); negligence (Count V); gross negligence (Count VI); defective design (Count VII); failure to warn (Count VIII); and battery (Count IX). Because these claims fail as a matter of law, and because further pleading could not cure the defects, the Court should dismiss the complaint with prejudice for failure to state a claim.

## ARGUMENT

To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This standard requires more than a "sheer possibility" that a defendant has acted unlawfully. *Id.* In deciding whether a complaint states a claim, the Court should disregard "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* Thus, the Complaint "must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." *Bickerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016).

## I.      Plaintiffs Fail To State A Nuisance Claim (Counts I & II)

Plaintiffs assert both public and private nuisance claims in their complaint. As an initial matter, Plaintiffs fail to state a nuisance claim of either variety because, as a matter of law, manufacturers and sellers lack the necessary control of their products after the point of sale and therefore may not be held liable in nuisance for post-sale events.

"In general, even though a nuisance may exist, not all actors are liable for the damages stemming from the condition." *Sholberg v. Truman*, 852 N.W.2d 89, 92 (Mich. 2014) (quoting *Cloverleaf Car Co. v. Phillips Petroleum Co.*, 540 N.W.2d 297, 300 (Mich. App. 1995)). "'A

defendant held liable for the nuisance must have possession or control'" of the source of the nuisance. *Id.* In *Gelman Sciences, Inc. v. Dow Chemical Co.*, for example, the Michigan Court of Appeals reversed the denial of summary disposition of a nuisance claim against the seller of an industrial solvent that allegedly contaminated the plaintiff's land after the plaintiff purchased the solvent and used it in a manufacturing process. 508 N.W.2d 142, 143 (Mich. App. 1993).  The court held that, "[b]ecause a seller in a commercial transaction relinquishes ownership and control of its products when they are sold, it lacks the legal right to abate whatever hazards its products may pose" and therefore may not be held liable in nuisance. *Id.* at 144. The court accordingly ruled that "the trial court erred in denying defendants' motions for the summary disposition of plaintiff's claim[] of nuisance." *Id.*[1]

Under these authorities, Plaintiffs fail to state a nuisance claim against 3M. Their nuisance claims rest on an allegation that Defendants "caus[ed] PFAS contaminated water to be delivered to the homes of Plaintiffs" and purportedly "substantially and unreasonably interfered with Plaintiffs' comfortable living and ability to use and enjoy their homes, constituting a nuisance." Compl. ¶¶ 185-86. But as mentioned, 3M did not dispose of PFAS or PFAS-containing wastes at the Landfill and exercised no control over its products after selling them to intermediaries for use at the Mill. The complaint alleges only that, *after* 3M sold the PFAS-containing products, those products "were used" by others at the Mill and disposed of at the

---

[1] *See also, e.g.*, *Cloverleaf Car*, 540 N.W.2d at 301 (seller of gasoline was not liable in nuisance for contamination caused by gasoline leak because seller "had no control over what happened to the gasoline after it was delivered"); *Detroit Bd. of Educ. v. Celotex Corp.*, 493 N.W.2d 513, 521-22 (Mich. App. 1992) ("manufacturers, sellers, or installers of defective products may not be held liable on a nuisance theory for injuries caused by the defect"); *McCrory ex rel. Jones v. Ford Motor Co.*, 1996 WL 33323948, at *1 (Mich. App. July 9, 1996) (sellers of transformers that leaked PCBs were not liable in nuisance because sellers "gave up ownership and control of the products when they were sold").

Landfill. Compl. ¶ 92. Without an allegation that 3M controlled its PFAS products after sale, 3M is not liable in nuisance for alleged contamination caused by the use or disposal of those products by purchasers or third-parties. *Gelman Scis.*, 508 N.W.2d at 144; *Detroit Bd. of Educ.*, 493 N.W.2d at 522.

Besides this fundamental defect, Plaintiffs' public nuisance claim fails for the additional reason that they have not (and cannot) plead that they suffered any harm different from the general public. Plaintiffs' claim is based upon alleged exposure to PFAS in the drinking water. According to the Michigan Supreme Court, however, "[a]lthough the contamination of ground water may give rise to an action for public nuisance, the plaintiffs must show harm of a kind different from that suffered by other members of the general public exercising the right common to the general public that was the subject of interference." *Adkins v. Thomas Solvent Co.*, 487 N.W.2d 715, 721 n.11 (Mich. 1992). Plaintiffs allege no such unique harm. They do not allege that their own groundwater was contaminated or that they were otherwise affected differently than anyone else serviced by Parchment's municipal water system. On the contrary, at most Plaintiffs offer the conclusory allegation, not that they suffered some unique harm, but that they somehow suffered the same harm merely to a greater degree. *See* Compl. ¶ 189 (describing alleged contamination as "*especially injurious*" to Plaintiffs compared with the public) (emphasis added).

## II.     Plaintiffs Fail To State A Trespass Claim (Count III).

Under Michigan law, trespass requires "an unauthorized direct or immediate intrusion of a physical, tangible object onto land over which the plaintiff has a right of exclusive possession." *Adams v. Cleveland-Cliffs Iron Co.*, 602 N.W.2d 215, 222 (Mich. App. 1999). Plaintiffs' trespass claim fails for three reasons. First, the mere presence on land of a substance such as PFAS is not

a trespass as a matter of law. Second, Plaintiffs do not and cannot allege a "direct or immediate intrusion" on their land. Third, Plaintiffs lack a "right of exclusive possession" in Parchment's municipal water supply.

### A.    The Alleged Presence of PFAS Is Not A "Significant Physical Intrusion."

PFAS is not the kind of "tangible object" capable of trespass as a matter of Michigan law. In *Adams*, a case alleging that a mine's blasting operations caused dust to settle on the plaintiffs' land, the Michigan Court of Appeals held that "the law of trespass in Michigan does not cover airborne particulate." *Id.* at 216. In so holding, the court observed that dust particles, although "tangible objects in a strict sense," are not "a significant physical intrusion" because they "do not normally occupy the land on which they settle in any meaningful sense." *Id.* at 223. The same is true of PFAS. Indeed, other cases have extended *Adams* to groundwater contamination, holding that "contaminants in groundwater, *even more so than dust that settles on land*, simply become[] 'a part of the ambient circumstances of that space' and will not support an action in trespass." *Postma v. Cty. of Ottawa*, 2004 WL 1949317, at *9 (Mich. App. Sept. 2, 2004) (emphasis added) (quoting *Adams*, 602 N.W.2d at 223); *accord Abnet v. Coca-Cola Co.*, 786 F. Supp. 2d 1341, 1346 (W.D. Mich. 2011) ("Michigan does not recognize claims of trespass where groundwater contamination is the only alleged injury."); *see also Guertin v. Michigan*, 2017 WL 2418007, at *29 (E.D. Mich. June 5, 2017) (dismissing trespass claim based on contaminated water because "the 'tangible object' requirement for trespass is not met by" an "intrusion of particulate matter"), *rev'd in part on other grounds sub nom. Guertin v. State*, — F.3d —, 2019 WL 99088 (6th Cir. 2019). Plaintiffs' trespass claim therefore fails as a matter of law at the threshold.

**B.      Plaintiffs Do Not Allege A "Direct or Immediate Intrusion."**

Plaintiffs also fail to allege a "direct or immediate intrusion." An intrusion is direct only when "'an act is done with knowledge that it will to a substantial certainty result in the entry of the foreign matter.'" *Adams*, 602 N.W.2d at 224. Because "the actor must *intend* to intrude on the property," "an action for trespass is not proper" "[i]f the intrusion was due to an accident caused by negligence or an abnormally dangerous condition." *Cloverleaf Car*, 540 N.W.2d at 302 (emphasis added). This is the sort of claim Plaintiffs have asserted. Plaintiffs do not allege that 3M intended or even knew (let alone knew with "substantial certainty") that its sale of PFAS-containing products to the Mill would result in PFAS entering the municipal water supply. Although Plaintiffs describe the Mill's waste-disposal practices at length (Compl. ¶¶ 89-137), they nowhere allege that 3M was aware of these practices, or of the Mill's allegedly "negligent and/or faulty construction, operation, maintenance, and/or use" of its Landfill. *Id.* ¶ 130. Even if the mere sale of PFAS-containing products could be said to have "caused [PFAS] to spill into the ground water" (a contention 3M vigorously disputes), Plaintiffs' failure to allege facts showing that 3M "intended this intrusion" alone defeats their trespass claim. *Cloverleaf Car*, 540 N.W.2d at 302 (affirming dismissal of trespass claim against gasoline supplier).

**C.      Plaintiffs Have No Exclusive Property Right In Groundwater.**

Finally, Plaintiffs' claim fails as a matter of law on a third independent ground—Plaintiffs have not alleged that PFAS intruded "onto land over which [they have] a right of exclusive possession." In fact, Plaintiffs do not allege that PFAS is present on their property at all—only that it has entered Parchment's "municipal water system" and unidentified "private wells in Parchment and Cooper Township." Compl. ¶¶ 1-2, 140-42, 144-47, 175. It is well-established that property owners have no right of exclusive possession in groundwater, including the "water beneath one's property." *Postma*, 2004 WL 1949317, at *9; *accord Abnet*, 786 F.

Supp. 2d at 1345-46 (collecting sources). Thus, even a charitable reading of Plaintiffs' allegations cannot save their claim, as they have failed to identify any exclusive possessory right with which PFAS has interfered.

Because Plaintiffs cannot allege a "tangible object," direct interference, or "a right of exclusive possession," the Court should dismiss their trespass claim with prejudice. *Adams*, 602 N.W.2d at 222-24.

### III.   Plaintiffs Fail To State An Unjust Enrichment Claim (Count IV).

The elements of an unjust enrichment claim are "(1) the receipt of a benefit by the other party from the complaining party and (2) an inequity resulting to the complaining party because of the retention of the benefit by the other party." *Karaus v. Bank of New York Mellon*, 831 N.W.2d 897, 905 (Mich. App. 2012). Plaintiffs' claim fails because, at a minimum, they allege "no direct receipt of any benefit by [3M] . . . from the [Plaintiffs]." *A & M Supply Co. v. Microsoft Corp.*, 2008 WL 540883, at *2 (Mich. App. Feb. 28, 2008). Indeed, Plaintiffs do not allege that they conferred a benefit on anyone. They contend only that "Defendants have received the benefits of disposing of PFAS without incurring the costs associated with conducting such disposal in a safer and more appropriate manner." Compl. ¶ 210. In the absence of "direct contact between [3M] and [Plaintiffs]," or "direct payment or other benefit from [Plaintiffs]," Plaintiff's claim must be dismissed. *A & M Supply*, 2008 WL 540883, at *2; *accord Martell v. Turcheck*, 2008 WL 2714210, at *10-11 (E.D. Mich. July 7, 2008) ("With regard to the first element, the defendant must have received a benefit directly from the plaintiff," which, "[a]t minimum, . . . involves some sort of direct contact between the parties").[2]

---

[2] This District, among others, has dismissed unjust enrichment claims under Michigan law even where a plaintiff did transact with the defendant but the interaction was too "indirect." *Lipov v. Louisiana-Pacific Corp.*, 2013 WL 3805673, at *6 (W.D. Mich. July 22, 2013); *see also Storey*

**IV.     Plaintiffs Fail To State A Negligence Claim (Counts V & VI).**

"[T]o state a negligence claim on which relief may be granted, plaintiffs must prove (1) that defendant owed them a duty of care, (2) that defendant breached that duty, (3) that plaintiffs were injured, and (4) that defendant's breach caused plaintiffs' injuries." *Henry v. Dow Chem. Co.*, 701 N.W.2d 684, 688 (Mich. 2005). Plaintiffs' negligence claim fails for four reasons. First, 3M had no relationship with Plaintiffs and therefore owed them no legal duty as a matter of law. Second, several of Plaintiffs' negligence theories are preempted by Michigan's product liability statute. Third, Plaintiffs' remaining negligence theories are fatally defective as a matter of law. Finally, Plaintiffs have not alleged a cognizable injury to person or property.

Plaintiffs' gross negligence claim also should be dismissed because gross negligence is not an independent cause of action under Michigan law. And even if it were, Plaintiffs fail to state a claim.

**A.     3M owed Plaintiffs no duty of care as a matter of law.**

Plaintiffs' negligence claim fails at the threshold. "The most important factor" in determining the existence of a duty is the "relationship between the [defendant] and the plaintiff." *In re Certified Question from Fourteenth Dist. Ct. of Appeals of Tex.*, 740 N.W.2d 206, 211 (Mich. 2007) (quoting *Buczkowski v. McKay*, 490 N.W.2d 330, 333 n.5 (Mich. 1992)). Indeed, "when there is no relationship between the parties, *no duty can be imposed.*" *Id.* at 212 (emphasis added). But Plaintiffs fail to allege *any* relationship with 3M. On the contrary, 3M's only relationship was with the Mill owners, whose alleged non-compliant "dump[ing]" of chemical waste (*e.g.*, Compl. ¶¶ 3, 130-33) 3M was not obligated to anticipate, much less

---

*v. Attends Healthcare Prods., Inc.*, 2016 WL 3125210, at *12-13 (E.D. Mich. June 3, 2016) (dismissing unjust enrichment claim because "[w]hatever benefit Plaintiffs conferred on Defendant they conferred indirectly"). *A fortiori*, an unjust enrichment claim cannot survive when there was *no* relationship between the plaintiffs and defendant.

prevent. *See Buczkowski*, 490 N.W.2d at 334-35 (refusing to impose duty on retailer that sold ammunition to inebriated customer who then accidentally shot plaintiff). At most, "the relationship between [Plaintiffs] and [3M] was highly tenuous," as Plaintiffs merely live near the area where they allege 3M's *customer* improperly disposed of its waste. *In re Certified Question*, 740 N.W.2d at 216.[3] This is insufficient to state a claim.

In the absence of a relationship with 3M, Plaintiffs' negligence claims fail. *Id.* at 212 ("[W]hen there is no relationship between the parties, no duty can be imposed.").

### B.     Michigan's product liability statute preempts Plaintiffs' negligence claim.

These claims also fail on the independent ground that Plaintiffs' putative common-law negligence theories are really product liability claims governed exclusively by Michigan's product liability statute, MCL 600.2945 *et seq*. Plaintiffs allege that "Defendants" owed Plaintiffs "a duty to exercise reasonable care in creating, selling, applying, and disposing of PFAS substances." Compl. ¶ 215. Of these, 3M is alleged only to have "creat[ed]" and "s[old]" "PFAS substances." *E.g.*, *id.* ¶¶ 30-31, 34, 91-93.

Michigan's product liability statute, M.C.L. 600.2945 *et seq.*, is a component of Michigan's "[t]ort reform legislation" that has "*displaced* the common law" of product liability. *Greene v. A.P. Prods., Ltd.*, 717 N.W.2d 855, 859 (Mich. 2006) (emphasis added). Under this statute, *any* "action based on a legal or equitable theory of liability brought for . . . injury to a person or damage to property caused by or resulting from the production of a product" is a "[p]roduct liability action." M.C.L. 600.2945(h). "Production," in turn, includes the

---

[3] As this tenuous relationship suggests, Plaintiffs essentially seek to saddle 3M with a duty to "protect[] every person with whom [PFAS] come[s] into contact." *Id.* at 217. But such a duty "would impose an extraordinarily onerous and unworkable burden" of monitoring *every disposal* of PFAS and any resulting migration. *Id.* Accordingly, the "'burden [that would be imposed] on the defendant' prong" of Michigan's duty analysis also weighs against finding that 3M owed Plaintiffs a duty of care. *Id.*

"manufacture, construction, design, formulation, . . . warning, instructing, marketing, [and] selling" of the product at issue. *Id.* 600.2945(i). These are precisely the theories underlying Plaintiffs' negligence claims—that 3M failed to (1) "exercise ordinary care in the *manufacture* of PFAS and PFAS-containing products," (2) "*warn* of known harms of PFAS," and (3) "*warn* Plaintiffs . . . about the likelihood that their water supply was or would become contaminated." Compl. ¶ 219(a)-(b), (f) (emphases added).

Plaintiffs may not evade this statute, and the limits it imposes, merely by reframing their product liability claims as "negligence" claims in their complaint. *Heaton v. Benton Constr. Co.*, 780 N.W.2d 618, 623 (Mich. App. 2009) ("[T]he fact that plaintiffs' theory of liability was one of negligence does not preclude its action from coming within the statutory definition of a products liability action"). Accordingly, the Court should dismiss Plaintiffs' negligence claim with prejudice to the extent it relies on an alleged design defect or failure to warn.[4]

### C.    Plaintiffs' remaining negligence theories fail as a matter of law.

Beyond the absence of a duty of care to Plaintiffs generally, *see supra* Section IV.A, Plaintiffs' remaining (non-product liability) negligence theories fail on multiple alternative grounds. First, contrary to Plaintiffs' assertion, 3M had no duty to "exercise due care by undertaking response activity necessary to mitigate unacceptable exposure to hazardous substances" or to "[t]ake reasonable precautions against the reasonably foreseeable acts or omissions of a third party." Compl. ¶¶ 216, 219(c), (e). Michigan's Natural Resources and Environmental Protection Act imposes these duties only on "[a] person who owns or operates

---

[4] Furthermore, allowing Plaintiffs to clone their design defect and failure to warn claims under the guise of a standalone negligence claim would be confusing, "repetitive[,] and unnecessary." *Prentis v. Yale Mfg. Co.*, 365 N.W.2d 176, 186 (Mich. 1984); *see also Johnson v. Chrysler Corp.*, 254 N.W.2d 569, 571 (Mich. App. 1977) ("The addition of the [overlapping] count adds only confusion, not substance.").

property" from which contamination emanated. M.C.L. 324.20107a(1).[5] Plaintiffs do not allege that 3M ever owned or operated the Landfill, so these duties do not extend to 3M.

Second, as mentioned, Plaintiffs do not allege that 3M disposed of PFAS in Michigan generally, let alone in the Landfill that is the subject of Plaintiffs' claims. Accordingly, Plaintiffs have failed to allege facts showing that 3M breached any duty "to exercise due care in the disposal of PFAS, including the construction, operation, maintenance, use, and closure of the Landfill." Compl. ¶ 219(d). Where, as here, a plaintiff "fail[s] to allege that [a particular defendant] breached a legal duty," a negligence claim fails as a matter of law. *Scribner v. Charter Twp. of Independence*, 2002 WL 87514, at *3 (Mich. App. Jan. 22, 2002) (affirming dismissal for failure to state a claim); *accord Coyer v. HSBC Mortg. Servs.*, 2011 WL 4502087, at *5 (E.D. Mich. Sept. 28, 2011) (dismissing negligence claim for failure to allege breach of duty where defendant "was not involved with" the injury-causing activity), *aff'd sub nom. Coyer v. HSBC Mortg. Servs., Inc.*, 701 F.3d 1104 (6th Cir. 2012).

### D. Plaintiffs fail to allege cognizable physical injuries or property damage.

Even if Plaintiffs had adequately alleged duty and breach, their negligence claim still would fail because they allege no cognizable physical injury or property damage.

---

[5] Plaintiffs incorrectly attribute these duties to M.C.L. 324.20101a, which instead describes when a "lender holding a security interest in a facility" is considered to "participate[] in the management of the facility." *See* Compl. ¶ 216.

1. *Michigan law requires a present, physical injury to state a negligence claim.*

Plaintiffs allege they suffer from "increased risk of disease, disorder, and illness." Compl. ¶ 222; *see also id.* ¶ 164 (alleging "a significantly increased risk of contracting one or more diseases"). But allegations of future injury are insufficient to state a claim under Michigan law. Plaintiffs' failure to allege an *existing* health condition thus dooms their claim for personal injury.

In *Henry v. Dow Chemical Co.*, the Michigan Supreme Court considered and rejected the argument that exposure to a hazardous chemical is alone a cognizable injury under tort law. It held that Michigan law "squarely rejects the proposition that mere exposure to a toxic substance and the increased risk of future harm constitutes an 'injury' for tort purposes. It is a *present* injury, not fear of an injury in the future, that gives rise to a cause of action under negligence theory." 701 N.W.2d at 688-89.

The plaintiffs in *Henry* therefore did not state a claim for relief, even though they alleged that the defendant "negligently released dioxin, a synthetic chemical that is potentially hazardous to human health," and that they were exposed to dioxin. *Id.* at 685-86. Relatedly, the Court also held that a claim for "medical monitoring" "does *not* exist in Michigan." *Id.* at 693. In short, "the Michigan Supreme Court has squarely rejected the proposition that mere exposure to a toxic substance and the increased risk of future harm constitutes an 'injury' for tort purposes." *Psycher v. United States*, 2017 WL 2904208, at *4 (E.D. Mich. July 7, 2017) (additional internal quotation marks omitted).

Under *Henry*, Plaintiffs' negligence claim is "precluded as a matter of law" to the extent they seek recovery for personal injuries, and the Court should dismiss this claim with prejudice. *Henry*, 701 N.W.2d at 689.

### 2.    *Plaintiffs fail to allege an injury to property.*

Plaintiffs allege, in conclusory fashion, that they have suffered "property damage" (Compl. ¶ 222), but nowhere allege that their well water, or anything else on their property, has tested positive for PFAS. As a matter of law, therefore, Plaintiffs plead no cognizable injury to property and therefore may not recover for property damage.

*Henry* again is dispositive. The Michigan Supreme Court held that "present harm to person *or property* is a necessary prerequisite to a negligence claim." *Henry*, 701 N.W.2d at 690 (emphasis added). The Court made clear that plaintiffs must allege that "they suffer from *present physical* injuries to person or property" to recover under a negligence theory. *Id.* at 691; *see also Henry v. Dow Chem. Co.*, 905 N.W.2d 601 (Mich. 2018) (Order) (the "wrong" of property damage "is done" when "the presence of dioxin" reached plaintiffs' land); *see also Adkins*, 487 N.W.2d at 724, 727 (holding that contamination of groundwater in "general area" of plaintiffs' property is not a cognizable property injury, even when accompanied by purported diminution of plaintiffs' property value).

Plaintiffs do not allege that PFAS has reached their land. Under *Henry*, therefore, they have not pleaded a cognizable injury to property. Accordingly, their negligence claims should be dismissed on this alternative ground to the extent they seek recovery for property damage

### E.      Plaintiffs fail to state a gross negligence claim.

Plaintiffs' gross negligence claim fails not only for the reasons discussed above, but also because "Michigan law does not create an independent cause of action for gross negligence." *Rogers v. Caruso*, 2013 WL 1339684, at *3 (W.D. Mich. Mar. 29, 2013) (Jonker, J.) (citing *Bletz v. Gribble*, 641 F.3d 743, 756 (6th Cir. 2011)); *accord, e.g.*, *Guertin*, 2017 WL 2418007, at *30 (dismissing gross negligence claim in case arising from contaminated water because "gross negligence is not an independent cause of action in Michigan"); *Buckner v. Roy*, 2015 WL 4936694, at *8 (E.D. Mich. Aug. 18, 2015); *Van Buren v. Crawford Cty.*, 2014 WL 2217016, at *10 (E.D. Mich. May 29, 2014); *Mallory v. City of Ferndale*, 2011 WL 891212, at *7 (E.D. Mich. Mar. 11, 2011). For this reason alone, the Court should dismiss Plaintiffs' claim.

Even if gross negligence were a stand-alone claim, moreover, Plaintiffs do not plead it here. "[E]vidence of ordinary negligence does not create a material question of fact concerning gross negligence." *Reilly v. Vadlamudi*, 680 F.3d 617, 627 (6th Cir. 2012) (quotation marks omitted). Gross negligence "suggests, instead, almost a willful disregard of precautions or measures to attend to safety and a singular disregard for substantial risks." *Id.* (quotation marks omitted). Thus, allegations that a defendant's conduct fell below "industry standards" do not support a claim for gross negligence. *See Xu v. Gay*, 668 N.W.2d 166, 171 (Mich. App. 2003). And "[s]imply alleging that an actor could have done more is insufficient [to establish gross negligence] under Michigan law, because, with the benefit of hindsight, a claim can always be made that extra precautions could have influenced the result." *Tarlea v. Crabtree,* 687 N.W.2d 333, 339 (Mich. App. 2004). Here, Plaintiffs merely repeat their negligence allegations and perfunctorily add that the "Defendants' failures to exercise reasonable care[] . . . were so reckless as to demonstrate a substantial lack of concern for whether an injury would result." Compl.

¶ 231. Under Michigan law, this undeveloped allegation is not enough. *Reilly*, 680 F.3d at 627-28; *Tarlea*, 687 N.W.2d at 339.

## V.       Plaintiffs Fail To State A Products Liability Claim (Counts VII and VIII).

### A.       Plaintiffs do not allege facts to support a feasible alternative design.

Plaintiffs' design defect claim fails because they have not pleaded facts supporting the existence of a feasible alternative design. Under Michigan product liability law, a "manufacturer . . . is not liable unless the plaintiff establishes . . . that, according to generally accepted production practices at the time the specific unit of the product left the control of the manufacturer . . . , a practical and technically feasible alternative production practice was available that would have prevented the harm without significantly impairing the usefulness or desirability of the product to users and without creating equal or greater risk of harm to others." M.C.L. 600.2946(2); *see Greene*, 717 N.W.2d at 859 (statutory tort reform "displaced the common law").

Plaintiffs parrot this legal standard by alleging, "[u]pon information and belief," that "alternative designs of Defendants' products were and are available, reasonable, technologically feasible and practical." Compl. ¶ 242. But a conclusory recitation of a legal standard is insufficient to state a claim. Plaintiffs do not identify these alternative designs, much less allege that they would not have "significantly impair[ed] the usefulness or desirability of the product to users." Accordingly, Plaintiffs have not alleged all required elements under M.C.L. 600.2946(2).

More than that, the allegation "fall[s] short" of federal pleading requirements because it rests solely on unelaborated "information and belief." *In re Darvocet, Darvon, & Prophoxyphene Prods. Liab. Litig.*, 756 F.3d 917, 931 (6th Cir. 2014). "The mere fact that someone believes something to be true does not create a plausible inference that it is true." *Id.* It is a "'naked assertion[] devoid of further factual enhancement'" that "contribute[s] nothing to the sufficiency

of the complaint." *16630 Southfield Ltd. P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 506 (6th Cir. 2013); *accord, e.g.*, *Reed v. Pfizer, Inc.*, 839 F. Supp. 2d 571, 578 (E.D.N.Y. 2012) (dismissing state-law claim for failure to "plead facts alleging the existence of a feasible alternative design").

### B.    The complaint shows that 3M sold its products to a sophisticated user.

Plaintiffs' failure-to-warn claim likewise fails, for the complaint demonstrates that 3M sold its product to a sophisticated user. Under Michigan law, "a manufacturer" generally "is not liable in a product liability action for failure to provide an adequate warning if the product is provided for use by a sophisticated user." M.C.L. 600.2947(4). Michigan law defines a "sophisticated user" as an "entity that, by virtue of training, experience, a profession, or legal obligations, is or is generally expected to be knowledgeable about a product's properties, including a potential hazard or adverse effect." *Id.* § 600.2945(j). And Michigan courts have held that "[c]ommercial enterprises that use materials in bulk must be regarded as sophisticated users, as a matter of law." *Aetna Cas. & Surety Co. v. Ralph Wilson Plastics Co.*, 509 N.W.2d 520, 523 (Mich. App. 1993).

The Complaint alleges that the Mill has operated since 1909, including a landfill for disposing of paper-making waste for the Mill and a nearby papermaking facility. Compl. ¶¶ 13-14. The Complaint further alleges that the Mill used 3M's PFAS and PFAS-containing products in bulk in a commercial capacity, including as the "primary ingredient" in the production of certain laminated products. *See id.* ¶¶ 91-93. Under Michigan law, therefore, the Mill and its owner entities "must be regarded as sophisticated users[] as a matter of law." *Aetna Cas.*, 509 N.W.2d at 523. Indeed, the complaint alleges that Defendants, including Georgia Pacific, "knew or should have known that the distribution, storage, and use of [PFAS] would likely contaminate the environment and enter the water supply." Compl. ¶ 248. That fulfills the statute's

requirement of a purchaser that "is or is generally expected to be knowledgeable about a product's properties, including a potential hazard or adverse effect." M.C.L. 600.2945(j). Thus, according to Plaintiffs' own allegations, Georgia Pacific is a sophisticated user as a matter of law, meaning 3M owed no duty to warn.

Plaintiffs' failure-to-warn claim also fails under M.C.L. 600.2948(2), which provides in relevant part that "[a] defendant is not liable for failure to warn of a material risk that is or should be obvious to a reasonably prudent product user." Plaintiffs allege that "Defendants knew or should have known that the distribution, storage, and use of [PFAS-containing products] would likely contaminate the environment and enter the water supply, harming human health, property, and the environment." Compl. ¶ 248. In short, Plaintiffs allege that the "product user" either knew or should have known of the alleged risks, and these allegations preclude liability against 3M under M.C.L. 600.2948(2).

## VI.   Plaintiffs Fail To State A Battery Claim (Count IX).

Plaintiffs' claim for battery (Count IX) also fails as a matter of law. "[B]attery is the willful and harmful or offensive touching of another person which results from an act intended to cause such a contact." *Espinoza v. Thomas*, 472 N.W.2d 16, 21 (Mich. App. 1991). This claim fails for two independent reasons.

### A.   Plaintiffs do not allege a harmful "touching."

Contact with PFAS through drinking water and air vapor does not satisfy the "touching" requirement of a battery claim. *See Nolen v. Laura*, 2017 WL 2704908, at *7 (Mich. App. June 22, 2017) (affirming dismissal of battery claim based on contact with diesel fumes despite plaintiff's argument that contact with particulate matter is a battery). In this regard, the Plaintiffs' battery claim is analogous to trespass claims based on particulate matter landing on residents'

property, a theory Michigan courts have squarely rejected. *See Adams*, 602 N.W.2d at 223; *see supra* Section II.A.

> **B.      Plaintiffs do not allege that 3M acted with the requisite intent.**

Plaintiffs also fail to allege that 3M *intended* to cause any touching. Battery's intent element is satisfied only when a defendant intends to injure the plaintiffs or "know[s] with substantial certainty" that its actions "w[ill] cause a harmful contact to the . . . plaintiffs." *Boumelhem v. Bic Corp.*, 535 N.W.2d 574, 579 (Mich. App. 1995). Thus, the question is not whether 3M intended to *sell* its product that later injured Plaintiffs, but whether 3M intended to *cause offensive contact* with Plaintiffs. *See id.* (holding that manufacturer of lighter did not commit battery when its lighter burned children because it had no intent to injure them); *Rose v. Braciszewski*, 2009 WL 3276431, at *5 (Mich. App. Oct. 13, 2009) (holding defendants not liable for battery because, while "defendants intended to set the fires and start the automobiles allegedly giving rise to [plaintiff's] health complaints," they did not take "those actions with the intent to cause the smoke or fumes to come into contact with [plaintiff] or with the knowledge that their actions were substantially certain to cause such contact").

3M's only relevant, alleged "act" is "put[ting] in motion the chemicals that touched Plaintiffs" at some later date. Compl. ¶ 257. Plaintiffs do not allege that 3M released PFAS into the environment or intended to cause PFAS to contact Plaintiffs. Indeed, the word "intent" is missing from Count IX. Nor do Plaintiffs allege that 3M knew with substantial certainly that PFAS would contact Plaintiffs. And battery by negligence, or even gross negligence, does not exist as a cause of action. *Sudul v. City of Hamtramck*, 562 N.W.2d 478, 479 (Mich. App. 1997).

## VII.   Several of Plaintiffs' Requests For Relief Fail As A Matter Of Law.

Finally, Plaintiffs' Prayer for Relief includes, among other things, requests for "[a]n order declaring the conduct of Defendants unconstitutional," for medical monitoring costs related to

the alleged health risks caused by exposure to PFAS, and for attorney's fees. Compl. at p. 36. These forms of relief are unavailable as a matter of law, and Plaintiffs' request for these remedies should be stricken from the Complaint.

*First*, Plaintiffs' request to declare 3M's conduct unconstitutional is baseless. Plaintiffs do not allege any constitutional violations by 3M (or mention any constitutional provisions or concepts in the complaint), and they do not bring claims for relief under 42 U.S.C. § 1983 or similar statutes. Nor could they. 3M is not a state actor and did not act under color of state law when it sold PFAS to private manufacturers. *See Handy-Clay v. City of Memphis*, 695 F.3d 531, 539 (6th Cir. 2012) (to state a claim for deprivation of constitutional rights under § 1983, "a plaintiff must allege that a defendant acted under color of state law"). Because Plaintiffs' request for declaratory relief is therefore plainly inappropriate, that request should be stricken.

*Second*, Plaintiffs' request for medical monitoring is contrary to Michigan law. The Michigan Supreme Court held in *Henry*, a case likewise involving exposure to a "potentially hazardous" chemical, that a cause of action for medical monitoring "does *not* exist in Michigan." *Henry*, 701 N.W.2d at 685, 693. The Court explained that such a claim could "create a potentially limitless pool of plaintiffs," "drain resources needed to compensate those with manifest physical injuries and a more immediate need for medical care," and "wreak enormous harm on Michigan's citizens and its economy." *Id.* at 694, 697; *see People v. Woolfolk*, 848 N.W.2d 169, 198 (Mich. App. 2014) (*Henry* "declin[ed] to recognize a cause of action for medical monitoring"); *accord Hendricks v. DSW Shoe Warehouse, Inc.*, 444 F. Supp. 2d 775, 783 (W.D. Mich. 2006).

Although Plaintiffs do not assert a claim for medical monitoring among the nine causes of action in their complaint, they cannot bring what amounts to the same claim through a

backdoor request for relief on their other causes of action. Plaintiffs allege that they have been exposed to hazardous substances that "significantly increase" their "risk of contracting one or more diseases," and therefore that it is "reasonably necessary for them to undergo periodic diagnostic medical examinations." Compl. ¶¶ 164-65. But *Henry* squarely held that such allegations are insufficient to state a claim. Where, as here, a plaintiff's only basis for a claim is the allegation that "they *may* develop [contaminant]-related illnesses in the future," medical monitoring is unavailable under Michigan law. 701 N.W.2d at 691. The request for the same relief rejected in *Henry* fails as a matter of law and should be stricken from the Complaint.

*Third*, the Court should dismiss with prejudice Plaintiffs' request for "[a]n award of attorneys' fees." Compl. 34. Both Michigan and the federal courts follow "the 'American rule' with respect to the payment of attorney fees," meaning that "attorney fees generally are not recoverable from the losing party as costs in the absence of an exception set forth in a statute or court rule expressly authorizing such an award." *Haliw v. City of Sterling Heights*, 691 N.W.2d 753, 756 (Mich. 2005); *accord Barnes v. Sun Chem. Corp.*, 164 F. Supp. 3d 994, 997-98 (W.D. Mich. 2016). Furthermore, "any exception to the prevailing doctrine that attorney fees are not recoverable must be narrowly construed." *Scott v. Hurd-Corrigan Moving & Storage Co., Inc.*, 302 N.W.2d 867, 878 (Mich. App. 1981).

Plaintiffs do not allege that any such exception applies here. Because no statute or court rule "expressly authoriz[es]" an award of attorneys' fees in this case, the Court should dismiss with prejudice Plaintiffs' requests for attorneys' fees. *Haliw*, 691 N.W.2d at 756; *see also Children's Ctr. for Developmental Enrichment v. Machle*, 612 F.3d 518, 524 (6th Cir. 2010) (affirming denial of attorneys' fees in absence of "statute or enforceable contract" authorizing award).

## CONCLUSION

For the foregoing reasons, Plaintiffs' claims against 3M fail as a matter of law and should be dismissed with prejudice.

Dated:  January 18, 2019

Respectfully submitted,

s/Richard Bulger_____
Joseph M. Infante (P68719)
Robert L. DeJong (P12639)
MILLER,   CANFIELD,   PADDOCK   AND
STONE, P.L.C.
99 Monroe Avenue NW, Suite 1200
Grand Rapids, MI 49503
(616) 454-8656

Michael A. Olsen
Daniel L. Ring
Richard Bulger
Peter B. Baumhart (*admission to be requested*)
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606

*Counsel for Defendant 3M Company*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Civil Rule 7.2(b)(ii), the undersigned hereby certifies that this Memorandum of Law in Support of Motion to Dismiss complies with the requirements of Local Civil Rule 7.2(b). The length of this brief, determined using Microsoft Word 2016 and not counting all words properly excluded under Rule 7.2(b)(i), is 6,350 words.

/s/ Richard Bulger____
Richard Bulger

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on the 18th day of January, 2019, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel registered with CM/ECF.


<u>/s/ Richard Bulger</u>
Richard Bulger