## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

DAVID DYKEHOUSE, KRISTINA BOSKOVICH, and ELIZABETH HAMBLIN, on behalf of themselves and all others similarly situated,

*Plaintiffs*,

v.

THE 3M COMPANY, GEORGIA-PACIFIC LLC, and GEORGIA-PACIFIC CONSUMER PRODUCTS LP,

*Defendants*.

Civil Action No. 1:18-cv-1225

Hon. Janet T. Neff

## STIPULATED JOINT PROTOCOL GOVERNING DISCOVERY OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION

WHEREAS, Plaintiffs David Dykehouse, Kristina Boskovich, and Elizabeth Hamblin ("Plaintiffs") and Defendants 3M Company, Georgia-Pacific LLC, and Georgia-Pacific Consumer Products LP ("Defendants") (collectively, "Parties") will engage in discovery proceedings in the above-captioned civil lawsuit (the "Action"), and their counsel have engaged in substantive discussions regarding the discovery of documents and electronically stored information ("ESI").

WHEREAS, the Parties agree that this Stipulated Joint Protocol Governing Discovery of Documents and ESI (the "Protocol") in no way alters the Parties' rights, obligations, and/or abilities to produce documents, and/or to raise objections about production of information, consistent with the Federal Rules of Civil Procedure and law.

NOW, THEREFORE, the Parties by their respective undersigned counsel stipulate to, and respectfully request the Court enter, the following Protocol for the Parties' production of ESI and other documents in response to discovery requests ("Discoverable Information") in this Action:

## I.      GENERAL PROVISIONS

1.      <u>Discoverability and Admissibility</u>.  Nothing in this Protocol shall be construed to effect the admissibility of Discoverable Information.  All objections to the discoverability or admissibility are preserved and may be asserted at any time.

2.      <u>Cooperation and Proportionality</u>.  The Parties agree to take the proportionality considerations addressed in the Federal Rules of Civil Procedure into account for purposes of preservation and production of ESI and documents.  This Protocol is not intended to expand the Parties' obligations under Rules 1, 26 and 34.

3.      <u>Meet and Confer</u>.   The Parties agree to meet and confer regarding any disagreements that arise as a result of the implementation of this Protocol, and other discovery related matters.  To the extent a Party that is producing Discoverable Information (a "Producing Party") reasonably expects production of specific paper documents or ESI will be impractical or unduly burdensome, the Parties will meet and confer in good faith to attempt to agree on an acceptable format for production pursuant to Rule 34(b)(2)(E).

4.      <u>Modification</u>.   This Protocol may be modified or amended either by written agreement of the Parties submitted to the Court for approval or by order of the Court.  Any practice or procedure set forth herein may be varied by agreement of the Parties, which will be confirmed in writing, where such variance is deemed appropriate to facilitate the proportional, timely, and economical exchange of Discoverable Information. If the need for discovery of ESI not provided for by this agreement should arise, the Parties agree to meet and confer in good faith to attempt to reach agreement on one or more appropriate modification(s) before seeking relief from the Court.

5.      <u>Superseding Effect</u>.  This Protocol supersedes any prior discussions or agreements of the Parties on the topics contained herein, and to the extent it is contrary to any such agreements

or discussions, the terms of the Protocol control.

      6.  <u>Materials from Prior Litigation</u>.  To the extent that a Party propounds discovery requests (a "Requesting Party") upon a Producing Party seeking the express reproduction of documents and/or responsive information which the Producing Party has previously produced in other litigation(s), and/or subject to any agreement to reproduce such documents from prior litigation(s) between Requesting and Producing Parties,  a Producing Party is not obligated to re-run or re-validate those document production sets or responsive information.  Nor is a Producing Party obligated to recollect the documents that formed the basis for such prior document production(s) for the purpose of obtaining additional metadata as set forth in Parts III and IV below.

      a.  Should the Requesting Party come forward with a particularized need for additional metadata information as to a specific document, then the Parties will meet and confer to discuss reasonable efforts to locate and recollect such information.  A Requesting Party may make reasonable requests, with which a Producing Party shall reasonably comply, for the Producing Party to provide an explanation of the document custodians or sources, methodology, and date ranges used to assemble the prior document production(s), if known.

      b.  The utilization of prior productions by a Producing Party will not exempt that Party from having to undertake additional and/or supplemental efforts to produce further documents in order to account for additional electronic search terms, document custodians, expanded date ranges, etc., that were not taken into account in assembling and serving the prior productions and relevant information, about which the Parties shall meet and confer in good faith.

c.      For the avoidance of doubt, with respect to discovery in this Action of documents that any Party has previously produced in other litigations, it is the Parties' intent that such prior document productions will be reproduced in this Action in the format in which they have previously been produced.

## II.    **SCOPE & PRESERVATION**

1.      <u>General</u>.  The procedures and protocols outlined herein govern the production of Discoverable Information by all Parties to this Action, whether they currently are involved or become so in the future.  The Parties will take reasonable steps to comply with this agreed-upon Protocol for the production of Discoverable Information.

2.      <u>ESI</u>.  Shall mean any electronically stored active-user files, including but not limited to:  email; word-processing documents; spreadsheets; electronic slide presentations; databases; and other reasonably accessible data reasonably anticipated to be subject to discovery pursuant to the Federal Rules of Civil Procedure.

3.      <u>Not Reasonably Accessible ESI</u>.  The Parties agree that the circumstances of this Action do not warrant the preservation, collection, review, production, or identification on a privilege log of ESI that is not reasonably accessible, unless the Producing Party believes in good faith that not reasonably accessible ESI is likely to contain significant relevant information not otherwise available in reasonably accessible sources.  For purposes of this Paragraph, the Parties agree that the following sources of ESI are not reasonably accessible, provided that no Party waives any rights to either assert and/or challenge whether other ESI sources are, or are not, reasonably accessible:

a.      Data stored in a backup system for the purpose of system recovery or information recovery, including but not limited to:  disaster recovery backup tapes and

4

media; continuity of operations systems; and data or system mirrors or shadows.

      b.      Voicemail recordings.

      c.      ESI stored on mobile devices, including smart phones or tablets.

      d.      Instant Messaging.

      e.      Data stored in Random Access Memory ("RAM"), cache memory, or in temporary or cache files, including internet history, web browser cache, and cookie files, wherever located.

      f.      Encrypted data/password protected files, where the key or password cannot be ascertained absent extraordinary efforts.

      g.      Data stored on printers, photocopiers, scanners, and fax machines.

      h.      Data stored as server, system, or network logs.

Nothing in this Protocol prevents any Party from asserting, in accordance with the Federal Rules of Civil Procedure, that other categories of ESI are not reasonably accessible within the meaning of Rule 26(b)(2)(B).

      4.      <u>Search Methodology</u>. The Parties recognize and agree that each Party may use one or more search methodologies to collect, review, and produce relevant and responsive, non-privileged documents and ESI and undertake reasonable efforts to locate Discoverable Information. There are many valid ways to search for and retrieve ESI, and the Parties agree that absent a showing of specific need and good cause, the Producing Party is best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing its own ESI. Each Producing Party shall design and implement the methods it uses to identify, cull, and review its potentially responsive ESI based on its knowledge and understanding of its own data, the facts and issues involved in this Action, and the discovery requests propounded by a Requesting

Party.  A Producing Party may apply reasonable search methodologies to appropriate sources and may also conduct a targeted collection of sources likely to contain responsive materials (*e.g.*, file folders on a given hard drive). For any reproduction of documents from prior litigation, and to the extent known, a Producing Party will within 21 days of such reproduction provide an explanation to the Requesting Party of the search methodologies used in the particular prior litigation to search for relevant ESI, including but not limited to ESI locations, custodians, and search terms used to assemble the prior document production. For any other production, such an explanation of ESI search methodologies shall be made by the Producing Party upon the request of the Requesting Party. If the Producing Party reasonably believes that for any particular production, such an explanation will be unduly burdensome, it may notify the Requesting Party and the Parties will meet and confer in good faith to resolve the issue in a less burdensome fashion, where possible.

## III.   FILTERING ESI

1.     De-duplication.  Each party may remove exact duplicate documents based on MD5 or SHA-1 hash values globally across custodial and non-custodial sources at the family level.  The parties shall include an "ALL CUSTODIANS" field in the load files accompanying each production to identify additional custodians who had a copy of the produced document.

2.     Email Threading.  The Parties may use industry standard analytic tools to employ "email thread suppression."  As used in this Protocol, email thread suppression means producing the most inclusive email in a conversation thread, as well as all attachments within the thread, and excluding emails constituting duplicate emails within the produced conversation thread.  Only email messages that are included within more complete, produced thread part will be considered appropriate for exclusion from production.  Agreed upon metadata will not be produced for email thread parts suppressed under this Paragraph.  Suppressed thread parts need not be reflected on the

Producing Party's privilege log as individual log entries.

3.      De-NISTing.   ESI collections will be De-NISTed, removing commercially available operating system and application file information contained on the current NIST file list.

4.      Zero-byte Files.  The Parties shall filter out files identified as zero bytes in size and any logo files.

## IV.   PRODUCTION FORMAT

1.      The production formats set forth in Section IV shall apply to documents that are not part of re-productions from prior litigation.

2.      Minor Production.     Any production by any Plaintiff totalling less than 300 pages may be made in pdf or native format without requirements for metadata.

3.      TIFF/Native File Format Production.   The default production format for unstructured discoverable ESI will be black-and-white Group IV single-page TIFF (300 DPI) with corresponding multi-page text and necessary load files, or PDF with an embedded text layer.  ESI will be produced in "last saved" or "last modified" format.  If, however, a color image is produced in black and white, the Receiving Party may request the Producing Party produce the original color image as a single page, 300 DPI JPEG or PDF file.  The Parties agree that they shall not unreasonably withhold production of any document in JPEG format where color is needed for interpretation of that document, to the extent the source document is reasonably accessible.  The Parties agree to produce native files of spreadsheet application files, database files, audio files, and video files, which shall be produced in native format, unless they contain privileged information or information subject to any other applicable protection.  ESI files that are presentation application files such as PowerPoint files need only be produced in native format if relevant information exists in the file in the form of formulas, animations, or embedded files.  If documents that the Parties

have agreed to produce in native format need to be redacted and cannot be redacted in TIFF in a readable manner, the Parties shall meet and confer regarding how to implement redactions while ensuring that proper formatting and usability are maintained.  If a Party has reason to believe the redacted TIFF image is not reasonably usable, the Parties agree to meet and confer regarding redactions for select native documents or categories of documents and to accommodate reasonable requests for producing documents in native format.  Native files should be produced within incrementally named "NATIVE" directories, separate from image directories. A Producing Party retains the option to produce ESI in alternative formats, which may include native format or a combination of native and alternate formats if it would be burdensome to produce a particular file in TIFF or PDF.

4.      Document Text.  For documents that were originally created and stored as electronic files and which do not have redactions, where reasonably available, the Producing Party will produce the extracted full text (not OCR) from the body of each document in individual document-level TXT files. OCR text will be provided for documents without available extracted text (*e.g.*, non-searchable PDFs).  Image cross-reference files will also be produced whether the text is extracted or OCR.  For documents that were originally stored as electronic files and which have redactions, the OCR text from the redacted image(s) associated with each document will be produced, in individual document-level TXT files.  "TEXT" folder directories will group 1,000 document text files each, separate from image directories.

5.      Database Production.  Discoverable Information that is stored in a database (*e.g.*, structured data) will be produced in reasonably usable standard report formats available in the ordinary course of business.  Upon review of the report(s), the Requesting Party may, on a showing of particularized need, request from the Producing Party additional information to explain any

codes, abbreviations, or other information necessary to ensure the report is reasonably usable.  In the event of such a request, the Producing Party will determine the most reasonable means to provide the relevant and proportional information requested.

6.      <u>Numbering/Endorsement</u>.   All produced Discoverable Information will have a unique Control ID assigned, regardless of the format of the Discoverable Information, and the file produced will be named with the unique Control ID.  For Discoverable Information produced in TIFF image format, each TIFF image will have a legible, unique page identifier ("Bates Number") electronically "burned" onto the image at a location that does not obliterate or obscure any information from the source document.  A Producing Party should use a consistent format for the Bates Numbers it uses across its productions. Every 10,000 TIFF images will be grouped into a new folder; separate folders will not be created for each document.

a.      In the case of materials deemed confidential in accordance with any applicable federal, state, or common law, and/or designated as such pursuant to a separate Protective Order that the Parties intend to negotiate and seek to enter governing the production of confidential materials in this Action, documents and ESI should be marked in accordance with that separate Protective Order.

b.      The Parties agree to meet and confer if there are any disputes regarding the specific details of numbering and endorsement format.

7.      <u>Scanned Documents</u>.   The Parties agree that paper documents that contain Discoverable Information may be scanned and produced in an imaged format set forth in Paragraph IV.1.

a.      When scanning paper documents, the Parties shall undertake reasonable efforts to ensure that distinct documents are not merged into a single record, and single

documents are not split into multiple records (*i.e.*, the Parties shall attempt to logically unitize scanned hard copy documents).

b.     All pages now stapled or fastened together shall be scanned with all attachments currently or previously appended to each document, regardless of whether such attachments themselves would be independently responsive.

c.     The Producing Party agrees to produce every copy of a document on which there appears to be a notation or marking of any sort that not appearing on any other copy or any copy containing different attachments from any other copy.

8.     <u>Native Files</u>.  The Parties agree that any Discoverable Information may be produced in the imaged format set forth in Paragraph IV.1.  Subsequent to the Production of image formats, however, the Requesting Party may within a reasonable time and upon a showing of particularized need, request from the Producing Party that certain imaged files be produced in native format according to the following protocol:

a.     The Requesting Party shall provide a list of Bates numbers of the imaged documents sought to be produced in native file format.

b.     The Producing Party shall either produce the native files, or object to the demand for any particular file as unreasonable as follows:

i.     The Producing Party will respond in writing, setting forth its objection(s) to the production of the requested native format files.

ii.    The Parties will meet and confer regarding the request and corresponding objection(s), and if the Parties are unable to agree as to the production of the requested files in native format, the Parties shall submit the matter to the Court.

9.    Encrypted Files.  The Producing Party shall take reasonable efforts to ensure that all encrypted files are decrypted prior to processing, search, and production.

10.   Production Media.  The Producing Party may produce documents via a secure file transfer mechanism and/or on readily accessible, computer or electronic media including:  CD-ROM; DVD; or external hard drive (with standard PC compatible interface) ("Production Media"). All Production Media will be encrypted prior to production and the Producing Party will provide a decryption key to the Requesting Party in a communication separate from the production itself.

11.   Metadata.  The Parties agree to produce a load file containing the available metadata fields below, to the extent the metadata fields exist in the ordinary course of business or are automatically created in the processing of the documents:

| Field | Data Type | Paper | eDocs & Email Attachments | Email |
|---|---|---|---|---|
| ProdBeg | Integer - Text | Starting Bates # | Starting Bates # | Starting Bates # |
| ProdEnd | Integer - Text | Ending Bates # | Ending Bates # | Ending Bates # |
| ProdBegAttach | Integer - Text | Starting bates # of document family | Starting bates # of document family | Starting bates # of document family |
| ProdEndAttach | Integer - Text | Ending bates # of document family | Ending bates # of document family | Ending bates # of document family |
| Custodian | Text | Name of person the document was collected from | Name of person the document was collected from | Name of person the document was collected from |
| Additional Custodians | Text | | Name of additional persons the document was collected from that was suppressed during deduplication | Name of additional persons the document was collected from that was suppressed during deduplication |
| From | Text - paragraph | | | Sender of message |
| To | Text – paragraph Separate entries with ";" | | | Recipients of message |
| CC | Text – paragraph Separate entries with ";" | | | Copied recipients |
| BCC | Text – paragraph Separate entries | | | Blind copied recipients |

| Field | Data Type | Paper | eDocs & Email Attachments | Email |
|---|---|---|---|---|
| | with ";" | | | |
| Subject | Text - paragraph | | | Subject of message |
| Date_Sent | Date (mm/dd/yyyy) | | | Date message sent |
| Time_Sent | Time (hh:mm:ss) | | | Time message sent |
| Date_Rcvd | Date (mm/dd/yyyy) | | | Date message received |
| Time_Rcvd | Time (hh:mm:ss) | | | Time message received |
| FileName | Text - paragraph | | Name of original file including extension | Name of original file including extension |
| FileExtension | Text | | Extension of original file | Extension of original file |
| Date_Created | Date/Time (mm/dd/yyyy) | | Date file was created | |
| Date_Modified | Date/Time (mm/dd/yyyy) | | Last modified date | |
| Author | Text - paragraph | | Document author from metadata | |
| | | | | |
| Confidentiality | Text | Any confidentiality designation asserted on the document | Any confidentiality designation asserted on the document | Any confidentiality designation asserted on the document |
| Hash | Text | | MD5 or SHA-1 Hash Value of document | MD5 or SHA-1 Hash Value of document |
| Time Zone Field | Text | | Time Zone used to process data | Time Zone used to process data |
| NativeLink | Text - paragraph | | Path including filename to the associated native file if produced (Relative Path) | Path including filename to the associated native file if produced (Relative Path) |
| TextLink | Text - paragraph | Path including filename to the associated searchable text file (Relative Path) | Path including filename to the associated searchable text file (Relative Path) | Path including filename to the associated searchable text file (Relative Path) |

     a.     No Party has an obligation to create or manually code metadata fields that

are not automatically generated by the processing of the ESI or that do not exist as part of

the original metadata of the electronic document except for: BegBates; EndBates; BegAttach; EndAttach; Confidentiality; and Custodian.  Custodians should be identified using the convention "Last Name, First Name."

12.     Load Files. The following load files may be combined to address all content provided within a single production (*i.e.*, all documents produced on a single piece of media or through a single file transfer).

        a.     Image Cross-Reference Load File.  Provide a comma-delimited image load file that contains document boundary reference data, page counts, and media volume information.

        b.     Text Cross-Reference Load File.  For all TXT files created in accordance with Paragraph IV.2., provide a comma-delimited load file with each document's beginning Bates Number along with the full path to the associated extracted text/OCR text file.

        c.     Native Cross-Reference Load File.  For all native files, provide a comma-delimited load file with each document's Bates Number along with the full path to the produced native file.

        d.     Structured ESI Cross-Reference Load File.  For all reports produced under Paragraph IV.3., provide a comma-delimited load file with each document's Bates Number along with the full path to the produced report.

## V.     **PRIVILEGE**

1.     Privilege.  Each Party may review documents (both ESI and paper documents) for privileged information, or other information subject to a recognized immunity from discovery prior to production.  Each Party may, in their judgment, withhold documents, in whole or in part, based

upon a claim of privilege, work product, or other immunity from discovery (a "Withholding Party").

2.      Fed. R. Evid. 502(e).  In regards to matters raised in Rule 26(f)(3)(D), the Parties agree that pursuant to Federal Rule of Evidence 502(e), no disclosure, production, or exchange of information in this Action constitutes a waiver of attorney-client privilege or of any work product protection in this or any other federal or state proceeding.  The Parties intend to negotiate and seek entry of a separate Protective Order invoking the protections of Federal Rule of Evidence 502(d) in a timely manner.

3.      Redactions.  Documents that contain both privileged and non-privileged information will be produced with the privileged information redacted in such a way as to show the location of the redaction within the document and the reason therefore (*e.g.*, "Privilege," "Attorney Work Product," "PII," or equivalent).  Redactions need not be included initially on the privilege log in accordance with Paragraph V.6.d., provided that bibliographic information (*e.g.*, a document's sender(s), recipient(s), date, and subject or title) is viewable on the redacted document. However, any Receiving Party can make reasonable requests for additional privilege basis information on any document redacted for privilege.

4.      Exemption from Privilege Logging.  The Parties agree that certain privileged communications or documents need not be included in a privilege log:  (a) attorney-client communications and work product that are created after November 1, 2018 in direct connection with this Action; (b) attorney-client privileged communications which contain or seek legal advice made to or from the Parties' employees, agents, and representatives and from or to the Parties' in-house or outside legal counsel made in the course of the litigation of this Action or other similar litigation, including related to alleged PFAS contamination; (c) to the extent produced in

connection with production made in a prior litigation, attorney-client communications, work product, or other privileged materials that were agreed to be non-loggable materials in such prior litigation; (d) any work product of in-house or outside counsel relating to this Action or other similar litigation; (e) any internal communications among only a Party's in-house counsel relating to this Action or other similar litigation; (f) any internal communications within a law firm relating to this Action or other similar litigation; and (g) any communications regarding litigation holds or preservation, collection, or review in direct connection with this Action.

5.     _Privilege Logs_.   The Parties agree that, except as limited in Paragraph V.4., preceding, they will produce privilege logs and will exchange information regarding claims of privilege and/or work product protection in an efficient manner.   The Parties agree that a Withholding Party shall identify in a privilege log each document being withheld, and with respect to each document so identified, state:

   a.     A unique sequential document number/identifier associated with each privilege log record (_e.g._, "Def_Priv_00001");

   b.     The beginning Bates number, if the document has been assigned any such document numbers;

   c.     Whether the document was stored in paper in the ordinary course of business or as ESI;

   d.     Author(s) / Sender

   e.     All recipients of the document, including those carbon copied or blind carbon copied;

   f.     Date the document was sent, including for email attachments, or last modified;

15

g.      Subject, filename, or title of the document;

h.      Number of, and filename(s) / title(s) of, any attachments to the withheld and logged document, provided the log entry is at the family level;

i.      An identifier for the privilege being asserted (*e.g.,* "ACP" for attorney-client privilege, "WP" for work product, or other descriptions as necessary based on the specific privilege being claimed);

j.      A description of the exact basis, legal or otherwise, for the Withholding Party's claim that such document is not discoverable.

To reduce burden and costs, a party need include only one entry on the privilege log to identify withheld emails that constitute an uninterrupted dialogue between or among individuals. To further reduce burden and costs, each document "family" (*e.g*., an email with one or more attachments) may, but is not required to, have a single, family-level entry for the parent and the "child(ren)" so long as the description provided reflects the privilege claim for each withheld family member and the number and filename(s) / title(s) of the withheld attachments.

6.      <u>Scope of Logging Obligations.</u>   The Parties make the following agreements concerning the scope of withheld documents or portions thereof that will be subject to logging:

a.      The Withholding Party may include only a single privilege log entry for multiple email messages in the same email thread to the extent such messages are included within one individual email thread and subject to the same claim of privilege.  The email that will be logged will be the most inclusive thread.

b.      Redacted documents need not be logged provided the basis for the redaction is made plain on the face of the redacted document, and that the bibliographic information for that document (to/from/cc/date/subject) is provided in the metadata load file and not

redacted.

*       *       *       *       *

SO STIPULATED, THROUGH COUNSEL OF RECORD.

Dated this 15 day of October, 2019.


  /s/ Steven D. Liddle
Steven D. Liddle
Nicholas A. Coulson
LIDDLE & DUBIN PC
975 E. Jefferson Avenue
Detroit, MI 48207
(313) 392-0015
sliddle@ldclassaction.com
ncoulson@ldclassaction.com

Counsel for Named Class Plaintiffs


  /s/ Douglas M. Garrou
Douglas M. Garrou
George P. Sibley
Michael R. Shebelskie
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 E. Byrd Street
Richmond, VA 23219
(804) 788-8200
dgarrou@hunton.com
gsibley@hunton.com
mshebelskie@hunton.com


Janet L. Ramsey
Dean F. Pacific
WARNER NORCROSS & JUDD LLP
111 Lyon Street, NW
Suite 900
Grand Rapids, MI
(616) 752-2144
jramsey@wnj.com
dpacific@wnj.com

  /s/ Daniel L. Ring
Michael A. Olsen
Daniel L. Ring
Richard Bulger
Peter B. Baumhart
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
molsen@mayerbrown.com
dring@mayerbrown.com
rbulger@mayerbrown.com
pbaumhart@mayerbrown.com


Joseph M. Infante (P68719)
Robert L. DeJong (P12639)
MILLER, CANFIELD, PADDOCK AND
STONE, P.L.C.
99 Monroe Avenue NW, Suite 1200
Grand Rapids, MI 49503
(616) 454-8656
infante@millercanfield.com
dejong@millercanfield.com

Counsel for Defendant 3M Company


  /s/ Douglas M. Garrou
Douglas M. Garrou
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 E. Byrd Street
Richmond, VA 23219
(804) 788-8200
dgarrou@hunton.com

17

*Counsel for Defendant*
*Georgia-Pacific LLC*

*Counsel for Defendant*
*Georgia-Pacific Consumer Products LP*

ORDER

IT IS SO ORDERED.

Dated: November 6, 2019

Sally J. Berens
SALLY J. BERENS
U.S. Magistrate Judge

18

732942813