# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| DAVID DYKEHOUSE, KRISTINA BOSKOVICH, and ELIZABETH HAMBLIN, on behalf of themselves and all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>THE 3M COMPANY, a Delaware Corporation, GEORGIA-PACIFIC LLC, a Delaware corporation,<br><br>*Defendants*. | Civil Action No. 1:18-cv-1225<br><br>Hon. Janet T. Neff<br><br>**ORAL ARGUMENT REQUESTED** |

## 3M COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS <u>MOTION TO DISMISS</u>

## **TABLE OF CONTENTS**

BACKGROUND ................................................................................................................. 1

ARGUMENT ...................................................................................................................... 2

I.    PLAINTIFFS FAIL TO STATE A NUISANCE CLAIM (COUNTS I & IV). ................. 3

II.    MEDICAL MONITORING IS NOT AVAILABLE TO PLAINTIFFS AS A MATTER OF MICHIGAN LAW. ...................................................................................... 6

CONCLUSION .................................................................................................................... 8

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Adkins v. Thomas Solvent Co.*,
   487 N.W.2d 715 (Mich. 1992) ...................................................................................................5

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...................................................................................................................2

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...................................................................................................................2

*Bickerstaff v. Lucarelli*,
   830 F.3d 388 (6th Cir. 2016) .....................................................................................................3

*Cloverleaf Car Co. v. Phillips Petrol. Co.*,
   540 N.W.2d 297 (Mich. App. 1995) ......................................................................................3, 4

*Cooper v. Comer*,
   2019 WL 1211853 (Mich. App. Mar. 14, 2019) .....................................................................5, 6

*Detroit Bd. of Educ. v. Celotex Corp.*,
   493 N.W.2d 513 (Mich. App. 1992) ......................................................................................4, 5

*Gelman Scis., Inc. v. Dow Chem. Co.*,
   508 N.W.2d 142 (Mich. App. 1993) ......................................................................................3, 5

*Hendricks v. DSW Shoe Warehouse, Inc.*,
   444 F. Supp. 2d 775 (W.D. Mich. 2006) ...................................................................................6

*Henry v. Dow Chem. Co.*,
   701 N.W.2d 684 (Mich. 2005) ...............................................................................................6, 7

*Johnson v. Indresco, Inc.*,
   124 F.3d 197, 1997 WL 468329 (6th Cir. 1997) .......................................................................7

*McCroy ex rel. Jones v. Ford Motor Co.*,
   1996 WL 33323948 (Mich. App. July 9, 1996) .........................................................................4

*People v. Woolfolk*,
   848 N.W.2d 169 (Mich. App. 2014) ..........................................................................................6

*Sholberg v. Truman*,
   852 N.W.2d 89 (Mich. 2014) .................................................................................................3, 4

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)................................................................................................2

Plaintiffs David Dykehouse, Kristina Boskovich, and Elizabeth Hamblin bring this putative class action against 3M Company ("3M") and Georgia-Pacific LLC ("Georgia-Pacific") to recover for the alleged contamination of the City of Parchment's drinking water system by chemicals known as per- and polyfluoroalkyl substances ("PFAS"). Several of Plaintiffs' claims against 3M fail as a matter of law and should be dismissed with prejudice.

## BACKGROUND

PFAS are a family of synthetic chemicals with a wide range of properties and industrial and commercial applications. Plaintiffs allege that certain PFAS or PFAS-containing products manufactured and sold by 3M were used "in products applied to paper, such as waxed and food contact paper," at a paper mill (the "Mill") operated by Georgia-Pacific and its predecessor entities. ECF No. 36 ("FAC") ¶¶ 27, 31-32, 93-95, PageID.275, 284. The Mill then allegedly disposed of its PFAS-containing waste at the Crown Vintage Landfill ("Landfill"), which was constructed, operated, and maintained by Georgia-Pacific and its predecessors. *Id*. ¶¶ 96-138, PageID.284-289. There are no allegations that 3M ever operated or exercised control over the Landfill, disposed of PFAS or PFAS-containing wastes there, or otherwise released PFAS directly into Michigan's environment.

Plaintiffs allege that PFAS from the Landfill subsequently contaminated the City of Parchment's municipal water supply due to Georgia-Pacific's supposed failure to operate the Landfill "in a safe and responsible manner." *Id*. ¶¶ 3, 138-57, PageID.272, 289-292. Plaintiffs further allege that PFAS has certain deleterious health effects and that 3M purportedly knew of these effects and tried to conceal them. *Id*. ¶¶ 33-89, PageID.276-283. Plaintiffs claim that PFAS are hazardous substances and that Plaintiffs' purported exposure to PFAS in drinking water warrants medical monitoring. *Id*. ¶¶ 158-69, PageID.292-294.

Plaintiffs originally asserted claims against 3M and Georgia-Pacific for public and private nuisance, trespass, unjust enrichment, negligence, gross negligence, defective design, failure to warn, and battery. ECF No. 1. Following a pre-motion conference with the Court, Plaintiffs amended their complaint and now assert only four claims against 3M: public and private nuisance, design defect, and failure to warn. In both their original and amended complaints, Plaintiffs have sought medical monitoring as part of all of their claims. None of the named Plaintiffs claims any present bodily injury or disease due to alleged exposure to PFAS.

Consistent with the Court's procedures, 3M filed a pre-motion conference request in anticipation of moving to dismiss Plaintiffs' nuisance and medical-monitoring claims. ECF No. 42. Plaintiffs filed a response, arguing that dismissal is not warranted. ECF No. 43. In lieu of holding a conference, the Court set a briefing schedule on 3M's proposed motion to dismiss. ECF No. 44. The instant motion and brief are filed pursuant to that Order. Because Plaintiffs' nuisance and medical-monitoring claims against 3M fail as a matter of settled Michigan law, and because further pleading could not cure the defects, the Court should dismiss these claims with prejudice under Rule 12(b)(6) for failure to state a claim.

**ARGUMENT**

To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This standard requires more than a "sheer possibility" that a defendant has acted unlawfully. *Id*. In deciding whether a complaint states a claim, the Court should disregard "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id*. Thus, the complaint "must contain either direct or inferential allegations with respect to all material elements necessary

to sustain a recovery under some viable legal theory." *Bickerstaff v. Lucarelli*, 830 F.3d 388, 396 (6th Cir. 2016).

I.   **Plaintiffs Fail To State A Nuisance Claim (Counts I & IV).**

Plaintiffs assert both public and private nuisance claims in their amended complaint. As an initial matter, Plaintiffs fail to state a nuisance claim of either variety because, as a matter of Michigan law, manufacturers and sellers lack the necessary control of their products after the point of sale and therefore may not be held liable in nuisance for post-sale events.

"In general, even though a nuisance may exist, not all actors are liable for the damages stemming from the condition." *Sholberg v. Truman*, 852 N.W.2d 89, 92 (Mich. 2014) (quoting *Cloverleaf Car Co. v. Phillips Petrol. Co.*, 540 N.W.2d 297, 300 (Mich. App. 1995)). "'A defendant held liable for the nuisance must have possession or control'" of the source of the nuisance. *Id.* (citation omitted). When, as here, "a commercial transaction is involved, control of the nuisance at the time of injury is required." *Gelman Scis., Inc. v. Dow Chem. Co.*, 508 N.W.2d 142, 144 (Mich. App. 1993). In *Gelman Sciences*, for example, the Michigan Court of Appeals rejected a nuisance claim against the seller of an industrial solvent that allegedly contaminated the plaintiff's land after the plaintiff purchased the solvent and used it in a manufacturing process. *Id.* at 143. "Because a seller in a commercial transaction relinquishes ownership and control of its products when they are sold," the court held, "it lacks the legal right to abate whatever hazards its products may pose" and therefore may not be held liable in nuisance. *Id.* at 144. The court accordingly held that "the trial court erred in denying defendants' motions for the summary disposition of plaintiff's claim[] of nuisance." *Id.* Here, of course, Plaintiffs are not purchasers or users of the products in question and thus are even further removed from the situation found insufficient in *Gelman.*

3

Nor is the control requirement limited to nuisance claims by the purchaser of the product at issue, as Plaintiffs suggested in their pre-conference letter. ECF No. 43 at 3, PageID.333. Michigan courts routinely hold that manufacturers cannot be liable in nuisance as a matter of law even to third parties not involved in the sale of the product. *E.g.*, *Cloverleaf Car*, 540 N.W.2d at 301 (seller of gasoline to service station not liable in nuisance for contamination of neighboring property by gasoline leak because seller "had no control over what happened to the gasoline after it was delivered"); *Detroit Bd. of Educ. v. Celotex Corp.*, 493 N.W.2d 513, 521-22 (Mich. App. 1992) (asbestos manufacturer not liable to school boards in nuisance because "manufacturers, sellers, or installers of defective products may not be held liable on a nuisance theory for injuries caused by the defect"); *McCroy ex rel. Jones v. Ford Motor Co.*, 1996 WL 33323948, at *1 (Mich. App. July 9, 1996) (sellers of transformers that leaked PCBs onto nearby residential properties were not liable in nuisance because sellers "gave up ownership and control of the products when they were sold").

Under these authorities, Plaintiffs fail to state either a public or private nuisance claim against 3M.[1] Their claims rest on a conclusory allegation that Defendants "caus[ed] PFAS contaminated water to be delivered to the homes of Plaintiffs" and purportedly "substantially and unreasonably interfered with Plaintiffs' comfortable living and ability to use and enjoy their homes, constituting a nuisance." FAC ¶¶ 181-82, 208-09, PageID.296, 299. But as discussed above, the amended complaint does not allege that 3M disposed of PFAS or PFAS-containing wastes at the Landfill and exercised control over its products (or any decisions on disposal or use of any landfill) after selling them to intermediaries for use at the Mill. To the contrary, the amended

---

[1] The control requirement applies equally to public-nuisance claims. *See Sholberg*, 852 N.W.2d at 92.

4

complaint alleges only that, *after* 3M sold the PFAS-containing products, those products "were used" at the Mill, and disposed of at the Landfill, by others. *Id.* ¶ 93, PageID.284. On the face of the amended complaint, there is no allegation that 3M controlled its PFAS products after sale, and 3M cannot be liable in nuisance for alleged contamination caused by the use or disposal of those products by purchasers or third-parties. *Gelman Scis.*, 508 N.W.2d at 144; *Detroit Bd. of Educ.*, 493 N.W.2d at 522.

Besides this fundamental defect, Plaintiffs' public nuisance claim fails for the additional reason that they have not (and cannot) plead that they suffered any harm different from the general public. Plaintiffs' claim is based upon alleged exposure to PFAS in the "City of Parchment's water system." FAC ¶¶ 2, 181-84, PageID.271, 296. But the Michigan Supreme Court has recognized that "[a]lthough the contamination of ground water may give rise to an action for public nuisance," to make out such a claim, "the plaintiffs must show harm of a kind different from that suffered by other members of the general public exercising the right common to the general public that was the subject of interference." *Adkins v. Thomas Solvent Co.*, 487 N.W.2d 715, 721 n.11 (Mich. 1992). Plaintiffs allege no such unique harm. They do not allege that they were affected differently than "other individuals in the community" serviced by Parchment's municipal water system. *Cooper v. Comer*, 2019 WL 1211853, at *17 (Mich. App. Mar. 14, 2019). Indeed, although each individual in the putative class has a unique medical history and each property is or may be unique, the amended complaint alleges that Plaintiffs' public nuisance claim arises from the alleged contamination "of an entire municipal water system that services more than 3,000 people." FAC ¶ 1, PageID.271. According to their own allegations, then, Plaintiffs cannot show that they suffered harm different from the other "over 3100 users" they allege "are served by Parchment's municipal water system." *Id.* ¶¶ 16-17, PageID.274.

5

The amended complaint essentially concedes this defect. In their public nuisance count against 3M, Plaintiffs offer only the conclusory allegation, not that they suffered some unique harm, but that they somehow suffered the same harm to a greater degree. *See* FAC ¶ 185, PageID.296 (describing alleged contamination as "*especially injurious*" to Plaintiffs compared with the rest of the public) (emphasis added). This is not enough. A public nuisance claim cannot survive when "the only variance identified [is] in regard to the degree the same damages were suffered by other members of the community." *Cooper*, 2019 WL 1211853, at *16.

## II.     Medical Monitoring Is Not Available To Plaintiffs As A Matter Of Michigan Law.

Plaintiffs' medical-monitoring claim, contained in a section of the amended complaint entitled "**Necessity of Medical Monitoring**" (FAC ¶¶ 158-69, PageID.292-294) that is incorporated in all of the counts, is contrary to Michigan law. The Michigan Supreme Court has squarely considered, and rejected, claims for medical monitoring, holding that "a medical monitoring claim" "does *not* exist in Michigan." *Henry v. Dow Chem. Co.*, 701 N.W.2d 684, 693 (Mich. 2005). The court explained that such a claim could "create a potentially limitless pool of plaintiffs," "drain resources needed to compensate those with manifest physical injuries and a more immediate need for medical care," and "wreak enormous harm on Michigan's citizens and its economy." *Id.* at 694, 697; *see People v. Woolfolk*, 848 N.W.2d 169, 198 (Mich. App. 2014) (*Henry* "declin[ed] to recognize a cause of action for medical monitoring"); *accord Hendricks v. DSW Shoe Warehouse, Inc.*, 444 F. Supp. 2d 775, 783 (W.D. Mich. 2006).

Against this backdrop, Plaintiffs do not dispute—and in fact concede—that *Henry* "foreclose[s] the availability of an independent medical monitoring cause of action." ECF No. 43 at 1, PageID.331. Yet Plaintiffs try to sidestep *Henry* by arguing that they are seeking medical monitoring as a form of relief, rather than asserting a separate cause of action. *See id.*

This attempted end-run around *Henry* should be rejected. For one thing, the Michigan Supreme Court's explicit rejection of medical-monitoring claims would be meaningless if a plaintiff could simply recast the claim as a request for relief in the absence of present physical injury. The concerns the court identified in *Henry* apply whether medical monitoring is asserted as a separate cause of action or a form of relief. More fundamentally, though, *Henry* did not merely foreclose medical monitoring as a cause of action; it also articulated which harms constitute cognizable tort injuries under Michigan law. And in this respect, the Michigan Supreme Court expressly rejected "the proposition that mere exposure to a toxic substance and the increased risk of future harm constitutes an 'injury' for tort purposes." 701 N.W.2d at 688-89. Because these were the only "injuries" alleged in *Henry*, the plaintiffs were not entitled to any relief—medical monitoring or otherwise.

So too here. Plaintiffs claim no actual, present physical injury or disease. As in *Henry*, "expos[ure] to . . . hazardous substances" and an "increased risk of contracting one or more diseases" are the only putative harms Plaintiffs allege in support of their medical-monitoring claim. FAC ¶ 160, PageID.292. Like the *Henry* plaintiffs, then, they have failed to allege a cognizable tort injury, meaning that medical monitoring is not available as a matter of law.[2]

---

[2] Plaintiffs contend that the mere presence of PFOA and PFOS in their bodies is a cognizable tort injury. *See* ECF No. 43 at 2, PageID.332. As an initial matter, the amended complaint alleges at most that two (of three) Plaintiffs show unspecified "elevated concentrations of PFOA and PFOS" in their blood. FAC ¶ 159, PageID.292. But even if each named Plaintiff had alleged this asymptomatic presence of PFOA and PFOS at unspecified levels in their blood, that would not be actionable. Indeed, *Henry* held that the plaintiffs' exposure to dioxin was not a cognizable injury even though, according to the dissent, dioxin "stays indefinitely in a person's blood and body fat." *Henry*, 701 N.W.2d at 707 (Cavanagh, J., dissenting). Similarly, it is not actionable to assert that Plaintiffs "*may* develop [contaminant]-related illnesses in the future." *Id.* at 691. There is no factual basis for any such increased risk in the amended complaint; even if there were, Michigan law does not recognize such a claim under *Henry*. It is therefore no surprise that Plaintiffs have yet to cite a single *Michigan* case to support their argument. *Cf. Johnson v. Indresco, Inc.*, 124 F.3d 197

## CONCLUSION

For the foregoing reasons, Plaintiffs' nuisance and medical-monitoring claims against 3M fail as a matter of law and should be dismissed with prejudice.

Dated:  August 30, 2019                                    Respectfully submitted,

                                                      s/Richard Bulger_____

Joseph M. Infante (P68719)
Robert L. DeJong (P12639)
MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.
99 Monroe Avenue NW, Suite 1200
Grand Rapids, MI 49503
(616) 454-8656

Michael A. Olsen
Daniel L. Ring
Richard Bulger
Peter B. Baumhart
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606

*Counsel for Defendant 3M Company*

---

(Table), 1997 WL 468329, at *5 n.2 (6th Cir. 1997) ("[R]eliance on cases from other jurisdictions based on other substantive law . . . is irrelevant.").