# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| DAVID DYKEHOUSE, KRISTINA BOSKOVICH, and ELIZABETH HAMBLIN, on behalf of themselves and all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>THE 3M COMPANY, a Delaware Corporation, GEORGIA-PACIFIC LLC, a Delaware corporation,<br><br>*Defendants*. | Civil Action No. 1:18-cv-1225<br><br>Hon. Janet T. Neff<br><br>**ORAL ARGUMENT REQUESTED** |

**3M COMPANY'S REPLY BRIEF IN SUPPORT OF ITS<br>
<u>MOTION TO DISMISS</u>**

## **TABLE OF CONTENTS**

**Page**

I.   PLAINTIFFS HAVE DISMISSED THEIR NUISANCE CLAIMS AGAINST 3M, LEAVING ONLY PRODUCT LIABILITY CLAIMS .............................................. 1

II.  HENRY BARS CLAIMS FOR MEDICAL MONITORING WHEN, AS HERE, PLAINTIFFS DO NOT ALLEGE A PRESENT, PHYSICAL INJURY .......................... 1

    A.   Henry's Rationale Precludes Awarding Medical Monitoring as a Remedy .......... 2

    B.   Plaintiffs Fail to Allege a Present Physical Injury as Required to Support a Request for Medical Monitoring, Whether as a Cause of Action or as a Remedy ............................................................................................................... 4

III. THE COURT SHOULD NOT ALLOW PLAINTIFFS' REQUESTS FOR MEDICAL MONITORING WHERE NO MICHIGAN COURT HAS DONE SO ....... 11

CONCLUSION .................................................................................................................. 13

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Baker v. Saint-Gobain Performance Plastics Corp.*,
   232 F. Supp. 3d 233 (N.D.N.Y. 2017) ................................................................. 9, 10

*Baker v. Saint-Gobain Performance Plastics Corp.*,
   No. 17-3942 (2d Cir.) ............................................................................................... 10

*Berrington v. Wal-Mart Stores, Inc.*,
   799 F. Supp. 2d 772 (W.D. Mich. 2011) ................................................................ 12

*Berrios v. Miles, Inc.*,
   574 N.W.2d 677 (Mich. App. 1997) ........................................................................ 8

*Burns v. Jaquays Mining Corp.*,
   752 P.2d 28 (Ariz. App. 1987) .................................................................................. 3

*Burton v. Mich. Sugar Co.*,
   2019 WL 1211455 (Mich. App. Mar. 14, 2019) ....................................................... 6

*Caronia v. Philip Morris USA, Inc.*,
   5 N.E.3d 11 (N.Y. 2013) ........................................................................................ 10

*Cmtys. For Equity v. Mich. High Sch. Ath. Ass'n*,
   2002 U.S. Dist. LEXIS 14220 (W.D. Mich. Aug. 1, 2002) .................................... 10

*Combs v. Int'l Ins. Co.*,
   354 F.3d 568 (6th Cir. 2004) .................................................................................. 12

*Creech v. W.A. Foote Mem'l Hosp., Inc.*,
   2006 WL 2380825 (Mich. App. Aug. 17, 2006) ....................................................... 6

*Cross v. Wal-Mart Stores E., L.P.*,
   2013 WL 141137 (E.D. Mich. Jan. 11, 2013) ......................................................... 11

*Dimmitt & Owens Fin., Inc. v. Deloitte & Touche (ISC), L.L.C.*,
   752 N.W.2d 37 (Mich. 2008) .................................................................................... 6

*Hecht v. Nat'l Heritage Acads., Inc.*,
   886 N.W.2d 135 (Mich. 2016) .................................................................................. 5

*Henry v. Dow Chem. Co.*,
   701 N.W.2d 684 (Mich. 2005) .......................................... 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 13

*Lexington Ins. Co. v. Rugg & Knopp, Inc.*,
 165 F.3d 1087 (7th Cir. 1999) ...............................................................................12

*Multiplex Concrete Machinery Co. v. Saxer*,
 17 N.W.2d 169 (Mich. 1945)..................................................................................10

*Price v. High Pointe Oil Co.*,
 828 N.W.2d 660 (Mich. 2013)..................................................................9, 10, 11, 12

*Matter of Rhone-Poulenc Rorer, Inc.*,
 51 F.3d 1293 (7th Cir. 1995) ....................................................................................8

*Robarge v. Tecumseh Prods. Co.*,
 2011 WL 668011 (Mich. App. Feb. 22, 2011) .........................................................6

*Roberts v. Kathryn Salmi, LPC*,
 866 N.W.2d 460 (2014) ............................................................................................5

*Rosado-Martinez v. Jackson*,
 2017 WL 2544189 (W.D. Mich. June 13, 2017) ....................................................11

*Rupersburg v. Etkin Skanska Constr. Co.*,
 2006 WL 3458177 (Mich. App. Nov. 30, 2006) ....................................................11

*Snable v. ACandS, Inc.*,
 959 F.2d 236, 1992 WL 65024 (6th Cir. Apr. 2, 1992) ............................................8

*Stone v. Williamson*,
 753 N.W.2d 106 (2008) ............................................................................................5

*Strickland v. Johns-Manville Int'l Corp.*,
 461 F. Supp. 215 (S.D. Tex. 1978) ......................................................................7, 9

*Todd v. Societe Bic, S.A.*,
 21 F.3d 1402 (7th Cir. 1994) ..................................................................................12

*In re Welding Fume Prods. Liab. Litig.*,
 245 F.R.D. 279 (N.D. Ohio 2007) ...................................................................2, 3, 5

*Youngs v. West*,
 27 N.W.2d 88 (Mich. 1947)....................................................................................10

No Michigan court has approved the medical monitoring that Plaintiffs seek nor recognized their alleged physical harms as cognizable tort injuries. On the contrary, the Michigan Supreme Court could not have been clearer in rejecting Plaintiffs' theories: "[A] medical monitoring claim" "does *not* exist in Michigan," and "mere exposure to a toxic substance and the increased risk of future harm" do *not* "constitute[] an 'injury' *for tort purposes*." *Henry v. Dow Chem. Co.*, 701 N.W.2d 684, 688-89, 693 (Mich. 2005) (additional emphasis added). So it is no surprise that Plaintiffs cannot cite a single Michigan case recognizing the sort of medical monitoring that they propose. Relying instead on decisions from other jurisdictions applying the laws of other states, Plaintiffs urge the Court to expand Michigan tort law drastically so they can pursue their claims against Defendant 3M Company ("3M"). Where no Michigan court has done what Plaintiffs ask, this Court should not be the first.

**I.     Plaintiffs Have Dismissed Their Nuisance Claims Against 3M, Leaving Only Product Liability Claims.**

Plaintiffs have voluntarily dismissed their public and private nuisance claims against 3M (Counts I & IV). Dkt. 60. Thus, the only claims against 3M that remain are product liability claims for defective design (Count IX) and failure to warn (Count X).

**II.    *Henry* Bars Claims For Medical Monitoring When, As Here, Plaintiffs Do Not Allege A Present, Physical Injury.**

3M's motion to dismiss showed, and Plaintiffs concede, that "'a medical monitoring claim' 'does *not* exist in Michigan.'" Mot. to Dismiss 6 (quoting *Henry*, 701 N.W.2d at 693) ("MTD"); Resp. to MTD 7 (*Henry* "foreclosed standalone medical monitoring claims") ("Resp."). Yet Plaintiffs contend they can plead around *Henry* merely by calling medical monitoring a remedy rather than a cause of action. Plaintiffs are wrong for two reasons. *First*, *Henry*'s rationale for rejecting medical monitoring applies regardless of whether it is a cause of action or a remedy.

1

*Second*, even if medical monitoring were a remedy, Plaintiffs' failure to plead a present physical injury is fatal to their claims.

### A. *Henry*'s Rationale Precludes Awarding Medical Monitoring as a Remedy.

As 3M showed, *Henry* rejected medical monitoring for several reasons that apply whether it is a cause of action or a remedy, including that it will "'create a potentially limitless pool of plaintiffs,' 'drain resources needed to compensate those with manifest physical injuries and a more immediate need for medical care,' and 'wreak enormous harm on Michigan's citizens and its economy.'" MTD 6-7 (quoting *Henry*, 701 N.W.2d at 694, 697). Ignoring these points, Plaintiffs claim that *Henry* nonetheless approved medical monitoring "as a form of relief . . . where there is also a present injury to person or property." Resp. 11.

Plaintiffs do not (because they cannot) cite any part of *Henry* for this proposition, and instead rely on decisions from other jurisdictions. *See id.* at 11-12. For instance, Plaintiffs cite a federal district court decision from Ohio to argue that Michigan law "allows for 'medical monitoring as an element of damages when liability is otherwise established' and 'require[s] proof of a present, physical injury to obtain medical monitoring.'" *Id.* at 2 (quoting *In re Welding Fume Prods. Liab. Litig.*, 245 F.R.D. 279, 291-92 (N.D. Ohio 2007)). But *Welding Fume* involved no claims under Michigan law, and in fact expressly acknowledged that "Michigan does *not*" "recognize[] a claim for medical monitoring." *Welding Fume*, 245 F.R.D. at 295 & n.89 (emphasis added). Furthermore, this part of Plaintiffs' argument conflates two different approaches to medical monitoring and is drawn from California and Louisiana law. *Welding Fume*, 245 F.R.D. at 291-92 & nn.68, 70. The Court should reject this improper attempt to import other states' laws because, as 3M's motion explained, the Sixth Circuit has made clear that "reliance on cases from other jurisdictions based on other substantive law . . . is irrelevant." MTD 7-8 n.2 (quoting *Johnson v. Indresco, Inc.*, 124 F.3d 197 (Table), 1997 WL 468329, at *5 n.2 (6th Cir. 1997)).

2

As a fallback, Plaintiffs argue that even if *Henry* did not affirmatively approve medical monitoring as a remedy, the case at least gave no "indication that the form of relief itself was problematic." Resp. 13. But that is not true either, as *Henry* expressly *rejected* decisions from other jurisdictions allowing medical monitoring as a remedy. 701 N.W.2d at 701 n.26 (declining to follow, among others, *Burns v. Jaquays Mining Corp.*, 752 P.2d 28 (Ariz. App. 1987) ("regular medical testing and evaluation" "is a compensable item of damages"), and *Ayers v. Jackson Twp.*, 525 A.2d 287 (N.J. 1987) ("the cost of medical surveillance is a compensable item of damages")).

Moreover, as 3M showed (and Plaintiffs do not dispute), *Henry* recognized that medical monitoring in all forms threatens to flood the courts, drain limited resources, and undermine Michigan's economy. MTD 7. Indeed, the Michigan Supreme Court warned that a "medical monitoring program" of any sort "would necessarily impose huge clerical burdens on a court system lacking" not only "the resources to effectively administer such a regime," but also "the technical expertise necessary to effectively administer a program heavily dependent on scientific disciplines such as medicine, chemistry, and environmental science." *Henry*, 701 N.W.2d at 699. Such serious "practical questions" and administrative difficulties, which are not limited to medical monitoring as a cause of action, are "more appropriate for the legislative branch than the judiciary." *Id.* at 698-99. Where the Michigan Supreme Court deferred to the legislative branch—which notably has not taken up *Henry*'s invitation to provide for a civil medical monitoring remedy or claim—a federal district court sitting in diversity should be even more reluctant to make the drastic change to Michigan law that Plaintiffs advocate.

"[J]udicial deference" to "the policy-making branch of [Michigan's] government" is particularly appropriate "where, as here, the Legislature has already created a body of law that provides plaintiffs with a remedy." *Id.* at 699, 701. As *Henry* observed, "the Legislature has already

3

provided a method for dealing with the negligent emission of toxic substances" by "empower[ing] the MDEQ [Michigan Department of Environmental Quality] to deal with the environmental and health effects of toxic pollution." *Id.* at 698-99. And as Plaintiffs acknowledge, the MDEQ (now known as the Michigan Department of Environment, Great Lakes & Energy) is already exercising this statutory authority to respond to the alleged contamination in Parchment. Am. Compl. ¶¶ 121-35, 141-42, 148-55, PageID.287-292 (Dkt. 36). Allowing Plaintiffs to seek medical monitoring in the courts would therefore subvert legislative intent by "creat[ing] an alternate remedy . . . that may be pursued in lieu of the remedy selected by [Michigan's] Legislature." *Henry*, 701 N.W.2d at 699. For reasons that apply to all forms of medical monitoring, *Henry* requires this Court to "decline to create this alternative remedial regime." *Id.* at 701.

> **B. Plaintiffs Fail to Allege a Present Physical Injury as Required to Support a Request for Medical Monitoring, Whether as a Cause of Action or as a Remedy.**

*Henry* forecloses Plaintiffs' medical monitoring request for a second reason: Plaintiffs do not allege a cognizable physical injury as required to support such a request, whether framed as a cause of action or as a remedy. As 3M explained (*see* MTD 7), *Henry* bars medical monitoring in cases such as this one, where Plaintiffs lack a "present physical injury." *Henry*, 701 N.W.2d at 688. Plaintiffs acknowledge this present-injury requirement (*e.g.*, Resp. 1, 8), but argue that it does not defeat their claim for two reasons. First, Plaintiffs assert, with no meaningful support, that *Henry* does not apply to any of their claims other than negligence. *Id.* at 8-11. And second, Plaintiffs contend that they have alleged the requisite injuries in any event. *Id.* at 13-17. Plaintiffs are wrong on both counts.

**1.** The gist of Plaintiffs' first argument is that *Henry* involved only negligence and therefore its holding does not extend to other tort claims. To be sure, the Michigan Supreme Court classified the *Henry* plaintiffs' medical monitoring claim as "one of negligence" "at its core." *Henry*, 701

4

N.W.2d at 688. But *Henry* made clear that the "question presented" was whether the "plaintiffs ha[d] stated a claim" of *any* kind by "seeking a court-supervised medical monitoring program for future dioxin-related illnesses." *Id.* Correspondingly, the court announced the present-injury requirement as a general rule of *tort law*. "The logic behind this injury requirement," the court held, is the "very logic of *tort law*," and accordingly "an individual is entitled to relief under a *tort* theory only when he has suffered a present injury." *Id.* at 689 & n.6 (emphases added); *see id.* at 689 (plaintiffs' alleged "losses are not derived from an injury that is cognizable under Michigan *tort law*") (emphasis added). The court also listed "a number of important ends" that the "requirement of a present physical injury" serves "for the legal system" as a whole: The present-injury requirement (i) "defines more clearly who actually possesses a cause of action," (ii) "reduces the risks of fraud[] by setting a clear minimum threshold . . . before a plaintiff can proceed on a claim," and (iii) "avoids compromising the judicial power" by " establish[ing] a clear standard by which judges can determine which plaintiffs have stated a valid claim, and which plaintiffs have not." *Id.* at 690-91. Of course, none of these ends is confined to negligence claims. By its own terms, then, *Henry* applies to all of Plaintiffs' tort causes of action.

The present-injury requirement clearly extends to Plaintiffs' product liability claims against 3M. *Henry* drew "the requirement of a present physical injury in the toxic tort context" specifically from a *product liability* case. *Henry*, 701 N.W.2d at 688 (citing *Larson v. Johns-Manville Sales Corp.*, 399 N.W.2d 1 (Mich. 1986) (consolidated appeal of "asbestos-related products liability cases")). Tellingly, none of the cases Plaintiffs cite in trying to limit *Henry* to negligence claims involved a product liability claim. Resp. 9-10 & nn.6-7.[1] Regardless of *Henry*'s

---

[1] *See Roberts v. Kathryn Salmi, LPC*, 866 N.W.2d 460 (2014) (improper therapy practices); *Hecht v. Nat'l Heritage Acads., Inc.*, 886 N.W.2d 135 (Mich. 2016) (racial discrimination); *Stone v. Williamson*, 753 N.W.2d 106, 132 (2008) (solo concurring opinion in medical malpractice case);

application to other torts, then, Plaintiffs' only live claims against 3M are subject to the present-injury requirement.[2]

**2.** Plaintiffs argue next that their alleged harms are present physical injuries under Michigan law. Resp. 13-17. But Michigan courts have affirmatively rejected most of Plaintiffs' alleged harms—exposure, increased risk, presence of an alleged toxin in the body—as present physical injuries. That just leaves alleged property damage, but as Plaintiffs concede, the Michigan Supreme Court has limited recovery for Plaintiffs' alleged property damage to the cost of replacement or repair. Resp. 18. Accordingly, none of Plaintiffs' alleged harms can support medical monitoring. The following paragraphs address each of these purported harms in turn.

***Exposure & Increased Risk.*** It is undisputed that Plaintiffs' alleged "expos[ure] to . . . hazardous substances" and "increased risk of contracting one or more diseases" (Am. Compl. ¶ 160, PageID.292) are not present physical injuries under Michigan law. Leaving aside whether Plaintiffs have provided a sufficient factual basis for such allegations of increased risk (they have not), 3M explained that *Henry* expressly rejected "the proposition that mere exposure to a toxic substance and the increased risk of future harm constitutes an 'injury' for tort purposes" (MTD 7 (quoting *Henry*, 701 N.W.2d at 688-89)), and Plaintiffs do not argue otherwise.

Notably, this concession defeats Plaintiffs' dubious assertion, based on an unpublished Michigan Court of Appeals decision, that *Henry* "provides no guidance as to what constitutes an actual physical injury." Resp. 1 & n.3, 8, 15-16 (quoting *Creech v. W.A. Foote Mem'l Hosp., Inc.*,

---

*Burton v. Mich. Sugar Co.*, 2019 WL 1211455 (Mich. App. Mar. 14, 2019) (nuisance and negligence based on odors); *Dimmitt & Owens Fin., Inc. v. Deloitte & Touche (ISC), L.L.C.*, 752 N.W.2d 37 (Mich. 2008) (accounting malpractice); *Robarge v. Tecumseh Prods. Co.*, 2011 WL 668011 (Mich. App. Feb. 22, 2011) (nuisance).

2    Because Plaintiffs have dismissed their nuisance claims against 3M (Part I, *supra*), it is irrelevant whether nuisance is exempt from the present-injury requirement. *See* Resp. 10.

2006 WL 2380825, at *1 (Mich. App. Aug. 17, 2006)). At the very least, *Henry* made clear what does *not* constitute an actual physical injury: exposure, increased risk, and, as discussed below, the mere presence of an allegedly toxic substance in the body.

***Presence of PFAS in Plaintiffs' Bodies.*** Plaintiffs next contend that "the accumulation of toxic substances within their bodies" is a "present injury." Resp. 14-16. But *Henry* rejected precisely this argument. As 3M showed, "*Henry* held that the plaintiffs' exposure to dioxin was not a cognizable injury even though, according to the dissent, dioxin 'stays indefinitely in a person's blood and body fat.'" MTD 7 n.2 (quoting *Henry*, 701 N.W.2d at 707 (Cavanagh, J., dissenting)). Plaintiffs respond that, because this statement—which the *Henry* majority did not dispute—is from a dissent, the majority somehow "did not have the opportunity to consider whether accumulation in the blood constitutes a present physical injury." Resp. 16. This is wishful thinking.

As an initial matter, a dissent is not a collection of issues that the majority did not consider; it represents a position the majority *rejected*. That was certainly true in *Henry*, for the majority expressly based its present-injury requirement on *Larson v. Johns-Manville Sales Corp.*, which held that the presence of an alleged toxin in the body, standing alone, is not a present injury. *Henry*, 701 N.W.2d at 688. In *Larson*, the Michigan Supreme Court considered when a plaintiff exposed to asbestos suffers an injury such that a cause of action accrues. 399 N.W.2d at 2. Although the diseases at issue—asbestosis, lung cancer, and mesothelioma—are caused by "inhaled asbestos fibers," *i.e.*, asbestos fibers that are *present in the body* (*id.* at 3-4), the court nevertheless held that there is "*no injury*" until a plaintiff knows or reasonably should know that she has developed one of those diseases. *Id.* at 5, 7-8 (emphasis added) (quoting *Strickland v. Johns-Manville Int'l Corp.*, 461 F. Supp. 215, 217 (S.D. Tex. 1978)). In short, *Larson* held that a plaintiff with a toxin in her

7

body suffers a present tort injury only when a disease results. So by relying on *Larson*, *Henry* not only considered, but *embraced* the rule that an alleged toxin's presence in the body is not a present injury.

Plaintiffs try to evade this dispositive authority by arguing that *Berrios v. Miles, Inc.*, 574 N.W.2d 677 (Mich. App. 1997), a pre-*Henry* decision involving a plaintiff with HIV, ruled that "the presence of a disease-causing agent in the blood constitutes a present physical injury." Resp. 16. But *Berrios* held no such thing, and in fact is fully consistent with *Henry* and *Larson*.

Plaintiffs' attempt to characterize HIV—the human immunodeficiency *virus*—as merely a "disease-causing agent" is frivolous. HIV is an "infection," as *Berrios* acknowledged repeatedly. 574 N.W.2d at 472-73, 474 n.3, 475, 478-79, 481. And although HIV, like asbestosis, may not immediately manifest in physical symptoms (*see* Resp. 15), that does not change its essential character as a disease. *See Larson*, 399 N.W.2d at 3; *Berrios*, 574 N.W.2d at 678; *see generally Matter of Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1295-96 (7th Cir. 1995). Properly understood, *Berrios* stands only for the unremarkable proposition that, as *Larson* also held, a diagnosable disease is a present physical injury for tort purposes.[3]

Nor is it true that "the trier of fact" must determine whether the alleged, undisputedly asymptomatic presence of PFAS is a present injury. Resp. 17 (quoting *Werlein v. United States*, 746 F. Supp. 887, 901 (D. Minn. 1990)). *Werlein* did not apply Michigan law, which has rejected such presence as a present physical injury. Furthermore, the *Werlein* plaintiffs' exposure to trichloroethylene had caused "chromosomal breakage" and what amounted to claimed sub-cellular

---

[3] *Snable v. ACandS, Inc.*, 959 F.2d 236 (Table), 1992 WL 65024 (6th Cir. Apr. 2, 1992) (cited at Resp. 16), like *Larson*, merely recognized that an asbestosis claim accrues when the plaintiff "discover[s] or should have discovered their disease," rather than when the plaintiff actually "receive[s] a definitive diagnosis." *Id.* at *1 (quoting *Larson*, 399 N.W.2d at 9).

8

"damage to the cardiovascular and immunal systems," which the court deemed present physical injuries. 746 F. Supp. at 901. Plaintiffs, of course, allege nothing of the sort.

No one disagrees that, in general, diseases and diagnosable conditions—such as HIV, asbestosis, and actual cardiovascular damage—would be present physical injuries under *Henry*. But it is undisputed that Plaintiffs *do not have* any such condition, nor have they alleged anything similar. Plaintiffs plead at most that an allegedly toxic substance (PFAS) is asymptomatically present in their bodies. And even crediting this allegation, Plaintiffs are in the same position as a "worker" who, with "no signs of developing asbestosis," "files suit" after "breathing asbestos dust": "Such a suit" may "be readily dismissed since there has been *no injury*." *Larson*, 399 N.W.2d at 5 (emphasis added) (quoting *Strickland*, 461 F. Supp. at 217).

***Property Damage***. Finally, Plaintiffs briefly suggest that "alleged injury to their properties" can support a medical monitoring claim. Resp. 14. 3M's motion pointed out that Plaintiffs have cited no Michigan authority supporting such an argument (MTD 7 n.2), and Plaintiffs marshal none in their response brief. On the contrary, Plaintiffs concede that the Michigan Supreme Court has restricted recovery for "injury to property" to "repair or replacement costs." Resp. 18 (citing *Price v. High Pointe Oil Co.*, 828 N.W.2d 660, 671 (Mich. 2013)).

Confronted once more with dispositive Michigan authority, Plaintiffs again try to import foreign law by citing *Baker v. Saint-Gobain Performance Plastics Corp.*, 232 F. Supp. 3d 233 (N.D.N.Y. 2017), which held that property damage may support medical monitoring under New York law. *See* Resp. 18. Because "reliance on cases from other jurisdictions based on other substantive law . . . is irrelevant," however, *Baker* cannot save Plaintiffs' claims. *Johnson*, 124 F.3d 197 (Table), 1997 WL 468329, at *5 n.2. Indeed, *Baker* is especially inapposite because it turned on New York decisions that the court interpreted to hold that (i) "plaintiffs may receive

9

medical monitoring as consequential damages . . . for an 'already existing tort,'" and (ii) "medical monitoring can be recovered as consequential damages associated with a separate tort alleging property damage." 232 F. Supp. 3d at 250, 252 (quoting *Caronia v. Philip Morris USA, Inc.*, 5 N.E.3d 11, 18-19 (N.Y. 2013); *Ivory v. IBM.*, 983 N.Y.S.2d 110, 118 (App. Div. 2014)).[4] No Michigan court has allowed medical monitoring as consequential damages, much less as a remedy for property damage. In fact, *Price* held the opposite: that "the appropriate measure of damages for negligently damaged property is the cost of replacement or repair." 828 N.W.2d at 673 (rejecting attempt to expand relief available for property damage).

Plaintiffs admit that, under *Price*, "their injuries to property . . . do not" "give rise to damages for medical monitoring." Resp. 18. Nevertheless, Plaintiffs suggest that, as with *Henry*, they can simply plead around *Price* by casting medical monitoring as *equitable* relief. Resp. 18-22. But again, Plaintiffs have no Michigan authority for this formalistic result, and it conflicts with *Henry*. In fact, none of the Michigan decisions Plaintiffs cite concerning equitable relief even involved medical monitoring. *See id.* at 20 (citing *Cmtys. For Equity v. Mich. High Sch. Ath. Ass'n*, 2002 U.S. Dist. LEXIS 14220 (W.D. Mich. Aug. 1, 2002) (sex discrimination); *Multiplex Concrete Machinery Co. v. Saxer*, 17 N.W.2d 169 (Mich. 1945) (replevin of personal property); *Youngs v. West*, 27 N.W.2d 88 (Mich. 1947) (cancellation of deed and preventing property transfer)). Not that it matters, but none of the *Ohio* decisions Plaintiffs cite awarded medical monitoring for property damage, either. *See id.* at 18, 21 (citing cases).

And to the extent that Plaintiffs purport to extend this argument to any alleged *personal* injuries, the distinction between compensatory damages and equitable relief is immaterial. Because

---

[4] Plaintiffs' reliance on *Baker* is questionable for the additional reason that the decision is currently on appeal on the ground that the court misinterpreted New York law. *See Baker v. Saint-Gobain Performance Plastics Corp.*, No. 17-3942 (2d Cir.).

Plaintiffs have suffered no present physical injury, they cannot recover medical monitoring "regardless of whether the relief [they] seek is equitable or legal in nature." *Henry*, 701 N.W.2d at 702.

In sum, *Henry* and *Larson* held that Plaintiffs' alleged physical harms (exposure, increased risk, and presence of PFAS in Plaintiffs' bodies) are not present physical injuries as a matter of Michigan law, and *Price* held that Plaintiffs may recover at most the cost of replacement or repair for their alleged property damage. Because Plaintiffs fail to allege a present physical injury capable of supporting medical monitoring, their medical monitoring claims must be dismissed.

### III. The Court Should Not Allow Plaintiffs' Requests For Medical Monitoring Where No Michigan Court Has Done So.

Even if the Michigan Supreme Court had not affirmatively rejected Plaintiffs' medical monitoring claims, as it has, the total absence of authority supporting such a claim would be reason enough to grant 3M's motion to dismiss. Describing support for Plaintiffs' claims as "uncommon" and "sparse" is a gross understatement. Resp. 7, 15. Plaintiffs cannot cite a *single decision* allowing the medical monitoring they seek under Michigan law. And the decisions they do cite—noting the availability of "[m]edical and other costs of health care" for "established injuries"—say nothing about medical monitoring for Plaintiffs, who, as explained, have alleged no present physical injury. *Id*. at 19 (quoting MCL 600.6305); *see id.* at 15 n.11.[5]

Nor is it "irrelevant" "whether . . . cases have allowed medical monitoring." Resp. 15. The Michigan Supreme Court cautions against allowing claims, like Plaintiffs' here, that "no case ever

---

[5] *Cross v. Wal-Mart Stores E., L.P.*, 2013 WL 141137, at *1-2 (E.D. Mich. Jan. 11, 2013) (plaintiff "suffered injuries" to her "neck," "head," "spine," "back," "arms," "legs," "hands," and "feet" after "tripp[ing] over [a] plastic hang[e]r"); *Rupersburg v. Etkin Skanska Constr. Co.*, 2006 WL 3458177, at *1 (Mich. App. Nov. 30, 2006) (plaintiff struck by falling stanchion suffered "extensive injuries to his head, neck, shoulder, and back"); *Rosado-Martinez v. Jackson*, 2017 WL 2544189, at *2 (W.D. Mich. June 13, 2017) (car accident caused plaintiff's "ankle fracture").

11

in the history of the Michigan common law has approvingly discussed." *Price*, 828 N.W.2d at 667 (emphasis omitted). Michigan law thus recognizes that "the absence of even a single affirmative judicial decision in support of" Plaintiffs' medical monitoring claims lends "additional support" for the conclusion that such a claim simply does not exist. *Id.*

And federal courts construing state law must exercise even greater constraint. "[F]ederal courts 'must proceed with caution' when making pronouncements about state law." *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 577 (6th Cir. 2004) (quoting *Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1090 (7th Cir. 1999)) (rejecting novel interpretation of state law). Indeed, a federal court's "proper reluctance to speculate on any trends of state law applies with *special force* to a plaintiff in a diversity case, like this one, who has chosen to litigate his state law claim in federal court." *Id.* (emphasis added).

At bottom, this case presents "a choice between an interpretation of [state] law which reasonably restricts liability, and one which greatly expands liability." *Id.* (quoting *Todd v. Societe Bic, S.A.*, 21 F.3d 1402, 1412 (7th Cir. 1994) (en banc)). Even if Michigan law had not already decided the specific question presented here (and it has), binding Sixth Circuit precedent would require the Court to "choose the narrower and more reasonable path" and dismiss Plaintiffs' medical monitoring claims. *Id.* (quoting *Todd*, 21 F.3d at 1412). As this District has recognized, "the development of Michigan common law should be left to Michigan courts." *Berrington v. Wal-Mart Stores, Inc.*, 799 F. Supp. 2d 772, 776 (W.D. Mich. 2011) (declining to "modify and write state law"). That guidance is particularly apt here, where Michigan courts have already rejected Plaintiffs' claim and deferred to the Michigan Legislature.

## CONCLUSION

In *Henry*, the Michigan Supreme Court definitively rejected the sort of medical monitoring that Plaintiffs seek. Plaintiffs cannot plead around *Henry* merely by purporting to cast medical monitoring as a remedy, for such a remedy would raise the same administrative and separation-of-powers problems that *Henry* compels Michigan courts to avoid. And even if Plaintiffs could achieve such a formalistic result, Michigan courts have held that none of Plaintiffs' alleged harms are present tort injuries capable of supporting medical monitoring. In the face of this dispositive contrary authority, and without any supporting Michigan authority of their own, Plaintiffs cannot state a medical monitoring claim as a matter of law. The Court should grant 3M's motion to dismiss.

Dated:  November 12, 2019

Respectfully submitted,

s/Richard Bulger

Joseph M. Infante (P68719)
Robert L. DeJong (P12639)
MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.
99 Monroe Avenue NW, Suite 1200
Grand Rapids, MI 49503
(616) 454-8656

Michael A. Olsen
Daniel L. Ring
Richard Bulger
Peter B. Baumhart
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606

*Counsel for Defendant 3M Company*