**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN**

DAVID DYKEHOUSE, KRISTINA
BOSKOVICH, and ELIZABETH HAMBLIN, on
behalf of themselves and all others similarly
situated,

          *Plaintiffs*,

    v.

THE 3M COMPANY, GEORGIA-PACIFIC LLC,
and GEORGIA-PACIFIC CONSUMER
PRODUCTS LP,

          *Defendants*.

Case No. 1:18-cv-1225-HYJ-SJB

Hon. Hala Y. Jarbou

**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT**

Plaintiffs David Dykehouse, Kristina Boskovich, and Elizabeth Hamblin, on behalf of

themselves and all others similarly situated, respectfully move this Court for entry of an order that

will allow for the implementation of the Settlement Agreement reached in this class action, by: (1)

conditionally certifying the Class solely for the purpose of settlement; (2) preliminarily approving

the Settlement Agreement (attached hereto as **Exhibit 1**); (3) directing notice to the Class; (4)

setting schedule and a Fairness Hearing for approval of the Settlement; and (5) appointing Class

Counsel, Class Representatives, and the Class Administrator. In support of this motion, Plaintiffs

state as follows:

1.      On November 1, 2018, Plaintiffs filed this case as a class action against Defendants

The 3M Company ("3M") and Georgia-Pacific LLC, bringing claims of public nuisance, private

nuisance, trespass, unjust enrichment, negligence, gross negligence, product liability – defective

design, product liability – failure to warn, and battery. The Complaint alleged that per- and

i

polyfluoro alkyl substances ("PFAS") had migrated from a nearby former paper mill and its associated facilities into Parchment's municipal water system, which supplied Plaintiffs and the Class with water. (**ECF No. 1**).

2.     On June 5, 2019, Plaintiffs filed their First Amended Complaint, asserting claims for public nuisance, private nuisance, and negligence against Georgia-Pacific LLC (while adding similar claims against Georgia-Pacific Consumer Products LP) and products liability claims for defective design and failure to warn against 3M. As with the original Complaint, the First Amended Complaint sought money damages for, *inter alia*, property damage or diminution in property value, stigma damages, interference with use and enjoyment of real property, non-economic damages, exposure to certain PFAS, and medical monitoring. (**ECF No. 36**).

3.     On November 12, 2019, Defendants each filed Motions to Dismiss Plaintiffs' request to obtain medical monitoring (**ECF Nos. 68, 76**). These motions were fully briefed, and the Court denied them on January 4, 2021. (**ECF No. 95**). In its Order denying the motions on procedural grounds, the Court opined that portions of *Henry v. Dow Chemical Co*., 701 N.W.2d 684 (Mich. 2005) "strongly indicate that medical monitoring would not be an attainable remedy in this case[]" and that "Plaintiffs' prospects for acquiring medical monitoring as a remedy may be dim[.]" (**ECF No. 95,** PageID.1228-29).

4.     In an effort to avoid the cost, risk, and expense of further litigation, the Parties engaged in lengthy settlement discussions to determine whether a resolution of the case could be reached prior to briefing on Plaintiffs' Motion for Class Certification. This included participation

in two full days of mediation conducted on February 26 and March 3, 2021, with the assistance of court-approved mediator Frederick Dilley. (Coulson Decl.,[1] ¶ 15-16).

5.      Based upon their investigation, and evaluation of the facts and law relating to the matters alleged in the action, Plaintiffs (on behalf of themselves and the proposed Class) and Class Counsel have agreed to settle the lawsuit, pursuant to the terms of the Settlement Agreement. (Coulson Decl., ¶16).

6.      The terms of the proposed settlement are fully set forth in the Settlement Agreement. (**Ex. 1**). Defendants have agreed to pay $11,900,000.00 in full settlement of the litigation.  (**Ex. 1**, pg. 5 of 21). The payment shall be made by Defendants collectively within seventy-five (75) days of the final approval of the Settlement by the Court into a Qualified Settlement Fund. (*Id.*) The Settlement Fund will be distributed pursuant to the Class Settlement Allocation Plan. (attached hereto as **Exhibit 2**, entitled "Claim Processing and Payment Guidelines").

7.      The Parties have agreed to a Class, for purposes of the Settlement only, consisting of the following:

> All Persons who (i) owned, leased, rented, or resided in homes or residential properties serviced by the Parchment Water System as of July 26, 2018; and (ii) have not brought individual actions for personal injury or illness based on exposure to PFAS present in the Parchment Water System; provided, however, that the "Class" shall not include (i) Defendants, their corporate officers, or their legal counsel in this Action; (ii) Class Counsel, including its partners, members, and shareholders; or (iii) the judge to whom this Action is assigned, any member of the judge's immediate family, or any other judicial officer assigned to this case.

---

[1] The Declaration of Nicholas A. Coulson is attached herewith and will be referenced throughout as "Coulson Decl."

8.     As part of the proposed Settlement Agreement, the Parties have agreed to the appointment of Steven Liddle and Nicholas Coulson of Liddle & Dubin, P.C. as Class Counsel and the appointment of Plaintiffs as the Class Representatives. (**Ex. 1**, pg. 2 of 21).

9.     The proposed Settlement was achieved in good faith and without any undue influence.  Each side has zealously represented its interests. (Coulson Decl., ¶ 15).

10.     The proposed Settlement was achieved by counsel experienced in similar litigation. (Coulson Decl., ¶ 6-11).

11.     To effectuate the Settlement, the parties request that the Court enter an Order:

a.     Conditionally certifying this case for settlement purposes only as a class action pursuant to Federal Rule 23;

b.     Defining the Class as described herein;

c.     Appointing Steven D. Liddle and Nicholas A. Coulson as Class Counsel;

d.     Appointing Plaintiffs as the Class Representatives;

e.     Appointing KCC as the Class Administrator;[2]

e.     Approving the Class Notices attached as **Exhibits 3 and 4** and the manner of providing the Class Notice by first class mail and publication as being in compliance with Federal Rule 23(e) (**Ex. 1**, pgs. 10-11 of 21);

f.     Approving the Claim Form attached as **Exhibit 5** which will be sent with the Class Notice via first class mail to the Class;

---

[2] Plaintiffs have attached hereto a declaration from Vice President of KCC Class Action Services, LLC, Lana Lucchesi, which attests to KCC's experience and capabilities to administer the proposed settlement. This declaration will be referenced throughout as "Lucchesi Decl." or "KCC Decl."

g.      Preliminarily approving the Settlement Agreement and the Class Settlement

Allocation Plan as fair, reasonable, and adequate; and

h.      Scheduling a Notice Date by which delivery of the Class Notice must

commence, an Objection Deadline by which Class Members may submit objections

to the Settlement, an Opt Out Deadline by which Class Members may exclude

themselves from the Settlement, and a Fairness Hearing to hear any objections from

Settlement Class members and to consider final approval of the proposed

Settlement.

12.     A proposed Preliminary Approval Order is attached as **Exhibit 6**.[3]

WHEREFORE Plaintiffs, on behalf of themselves and the proposed Class respectfully

request that the Court grant this Motion and enter the proposed Preliminary Approval Order

(Exhibit 2).

Respectfully submitted,

Dated: April 23, 2021

**LIDDLE & DUBIN, P.C.**
by: /s/ Nicholas A. Coulson
Steven D. Liddle (P45110)
Nicholas A. Coulson (P78001)
975 E. Jefferson Avenue
Detroit, Michigan  48207
(313) 392-0025
sliddle@ldclassaction.com
ncoulson@ldclassaction.com

---

[3] Plaintiffs also provide the Court with a Proposed Final Approval Order, which is attached hereto as **Exhibit 7**.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN**

|  |  |
|---|---|
| DAVID DYKEHOUSE, KRISTINA BOSKOVICH, and ELIZABETH HAMBLIN, on behalf of themselves and all others similarly situated,<br><br>    *Plaintiffs*,<br><br>  v.<br><br>THE 3M COMPANY, GEORGIA-PACIFIC LLC, and GEORGIA-PACIFIC CONSUMER PRODUCTS LP,<br><br>    *Defendants*. | Case No. 1:18-cv-1225-HYJ-SJB<br><br>Hon. Hala Y. Jarbou |

**BRIEF IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
<u>APPROVAL OF CLASS ACTION SETTLEMENT</u>**

## Table of Contents

Page

INDEX OF AUTHORITIES..................................................................... iii

INDEX OF EXHIBITS ........................................................................ vii

I.     INTRODUCTION AND FACTUAL BACKGROUND ....................................................1

II.    LEGAL STANDARD AND PROCEDURE FOR CLASS SETTLEMENT AND CERTIFICATION ..........................................................................4

III.   THE COURT WILL LIKELY BE ABLE TO CERTIFY THE SETTLEMENT  CLASS UNDER RULE 23 ...............................................................6

    A.    The Settlement Class is So Numerous That Joinder of All Members is Impracticable. ...................................................................7

    B.    The Settlement Class Shares Common Questions of Law and Fact......................7

    C.    The Claims of the Named Plaintiffs are Typical of the Class's Claims .................8

    D.    The Named Plaintiffs and Class Counsel will Continue to Fairly and Adequately Protect the Class's Interests. ...................................................9

    E.    This Case is Appropriate for Certification Under Rule 23(b)(3). ........................11

        i.    Common questions predominate over questions affecting only individual members...........................................................11

        ii.   Class litigation is superior to other available methods of adjudication. ..........12

IV.   THE COURT WILL LIKELY BE ABLE TO APPROVE THE SETTLEMENT AS FAIR, ADEQUATE, AND REASONABLE....................................................12

    A.    The Settlement Satisfies the Rule 23(e)(2) Factors ...............................13

        i.    Plaintiffs and Proposed Class Counsel have zealously and adequately represented the Class........................................................13

        ii.   The Settlement Agreement Was Reached as a Result of Extensive Arms' Length Negotiations, Including through the Use of a Court-Approved Neutral Mediator. ...........................................................14

        iii.  The proposed relief is adequate as defined by Rule 23(e)(2)(c). ..................14

i

a.   The Costs, Risks and Delay of Trial and Appeal Weigh in Favor of Approval. ........................................................................................15

b.   The Effectiveness of the Proposed Method of Distributing Relief to the Class, including Class Members Claims, Weighs in Favor of Approval. ........................................................................................19

c.   The Terms of the Proposed Award of Attorney's Fees, including Timing of Payment Weigh in Favor of Approval. ..............................20

d.   There Are No Agreements Between the Parties other than the Settlement Agreement. ......................................................................20

iv.    The Proposal Settlement Treats Class Members Equitably Relative to One Another. .......................................................................................................21

B.    The Settlement Also Satisfies the Traditional Sixth Circuit Factors for Approval .........................................................................................................23

V.    THE NOTICE PLAN IS APPROPRIATE ......................................................................24

VI.    CONCLUSION.......................................................................................................25

## <u>Table of Authorities</u>

**Page**

**Cases**

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ............................................................6, 11

*Armstrong v. Bd. of Sch. Directors*, 616 F.2d 305 (7th Cir. 1980) ) ...........................................16

*Berry v. Sch. Dist.*, 184 F.R.D. 93 (W.D. Mich. 1998) .................................................................16

*Clark Equip. Co. v. Int'l Union, Allied Indus. Workers*, 803 F.2d 878 (6th Cir. 1986) ...............16

*Daffin v. Ford Motor Co*., 458 F.3d 549 (6th Cir. 2006) .................................................................7

*Day v. AMC Corp*., 2019 U.S. Dist. LEXIS 143021, 2019 WL 3977253 (E.D. Ky. July 26, 2019) ........................................................................................................................................................13

*Demmick v. Cellco P'ship*, Civil Action No. 06-2163 (JLL), 2015 U.S. Dist. LEXIS 192723 (D.N.J. Apr. 30, 2015) ................................................................................................................22

*Donnelly v. EquityExperts.org, LLC*, No. 4:13-CV-10017-TGB-RSW, 2014 U.S. Dist. LEXIS 142050 (E.D. Mich. Sep. 26, 2014) ...........................................................................................19

*Epstein v. Wittig*, 2005 U.S. Dist. LEXIS 31078, 2005 WL 3276390 (D. Kan. Dec. 2, 2005) ....13

*Fitzgerald v. P.L. Mktg.*, No. 2:17-cv-02251-SHM-cgc, 2020 U.S. Dist. LEXIS 25672 (W.D. Tenn. Feb. 13, 2020) .............................................................................................................20, 22, 25

*Garner Props. & Mgmt., LLC v. City of Inkster*, No. 17-cv-13960, 2020 U.S. Dist. LEXIS 146655 (E.D. Mich. Aug. 14, 2020) ............................................................................................23

*Gen. Tel. Co. v. EEOC*, 446 U.S. 318 (1980) .................................................................................7

*Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075 (6th Cir. 1984) ............................................16

*Gonzalez v. Cassidy*, 474 F.2d 67 (6th Cir. 1973) ..........................................................................9

*Hadix v. Johnson*, 322 F.3d 895 (6th Cir. 2003) ..........................................................................22

*Henry v. Dow Chemical Co.*, 701 N.W.2d 684 (Mich. 2005) ........................................................2

*In re American Medical Systems, Inc.*, 75 F.3d 1069 (6th Cir. 1996) ....................................7, 8, 9

*In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 2021 U.S. Dist. LEXIS 16470 (D.S.C., January 25, 2021) .........................................................................................................................15

*In re Cardizem CD Antitrust Litigation*, 218 F.R.D. 508 (E.D. Mich. 2003) ..................12, 16, 18

*In re Se. Milk Antitrust Litig.,* No. 2:07-cv-208, U.S. Dist. LEXIS 131855, 2012 WL 12875983 (E.D. Tenn. July 11, 2012) ........................................................................................20

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720 (MKB) (JO), 2019 U.S. Dist. LEXIS 217583 (E.D.N.Y. Dec. 16, 2019) ................................................22

*In re Skechers Toning Shoe Products Liability Litigation*, 2012 WL 3312668 (W.D.K.Y. 2012) ........................................................................................................9

*In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-md-2807, 2019 U.S. Dist. LEXIS 135573 (N.D. Ohio Aug. 12, 2019) ..................................................................................23

*In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570 (S.D.N.Y. 2008) ................................................21

*In re Whirlpool Corp. Front-Loading Washer Products Liability*, 678 F.3d 409 (6th Cir. 2012) .8

*Int'l Union v. Robert Bosch Corp.*, 2009 U.S. Dist. LEXIS 1424830 (W.D. Mich., Nov. 3, 2009) ........................................................................................13, 14

*Isby v. Bayh*, 75 F.3d 1191 (7th Cir. 1996) ........................................................................16, 17

*Kis v. Covelli Enters.*, No. 4:18-cv-54, 2020 U.S. Dist. LEXIS 93929 (N.D. Ohio May 29, 2020) ........................................................................................................................20, 21

*Macy v. GC Servs. Ltd. P'ship*, Civil Action No. 3:15-cv-819-DJH-CHL, 2019 U.S. Dist. LEXIS 210632 (W.D. Ky. Dec. 6, 2019) ................................................................................23

*Osman v. Grube, Inc.,* No. 3:16-cv-00802, 2018 U.S. Dist. LEXIS 78222, 2018 WL 2095172 (N.D. Ohio May 4, 2018) ........................................................................................22

*Petrovic v. Amoco Oil Co.*, 200 F.3d 1140 (8th Cir. 1999) ........................................................16

*Salinas v. U.S. Express Enters., Inc.*, No. 1:13-cv-00245, 2018 U.S. Dist. LEXIS 50800, 2018 WL 1477127 (E.D. Tenn. Mar. 8, 2018) ..................................................................................22

*Senter v. Gen. Motors Corp.*, 532 F.2d 511 (6th Cir. 1976) ........................................................9

*Shy v. Navistar Int'l Corp.*, 1993 U.S. Dist. LEXIS 21291 (S.D. Ohio 1993) ............................16

*Sprague v. Gen. Motors Corp.*, 133 F.3d 388 (6th Cir. 1998) ........................................................7

*Stout v. J.D. Byrider*, 228 F.3d 709 (6th Cir. 2000) ........................................................................9

*Taifa v. Bayh*, 846 F. Supp. 723 (N.D. Ind. 1994) ........................................................................17

*Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559 (6th Cir. 2001) ........................5

*UAW v. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007) ................................10, 12, 23

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ...............................................7

*Walters v. Reno*, 145 F.3d 1032 (9th Cir. 1998) ...........................................................8

*Williams v. Vukovich*, 720 F.2d 909 (6th Cir. 1983) ....................................................16

**Rules**

Fed. R. Civ. P. 23(a) ...........................................................................................6, 7

Fed. R. Civ. P. 23(a)(1) ...........................................................................................7

Fed. R. Civ. P. 23(a)(3) ...........................................................................................8

Fed. R. Civ. P. 23(a)(4) ...........................................................................................9

Fed. R. Civ. P. 23(b) ...........................................................................................6

Fed. R. Civ. P. 23(b)(3) ...........................................................................6, 11, 24

Fed. R. Civ. P. 23(c)(2)(B) ...........................................................................................24

Fed. R. Civ. P. 23(c)(3) ...........................................................................................25

Fed. R. Civ. P. 23(e) ...........................................................................5, 13, 23

Fed. R. Civ. P. 23(e)(1)(B) ...........................................................................................6

Fed. R. Civ. P. 23(e)(2) ...........................................................................13, 14, 23

Fed. R. Civ. P. 23(e)(2)(C) ...........................................................................14, 15

Fed. R. Civ. P. 23(g)(1) ...........................................................................................10

**Other Authorities**

*Manual for Complex Litigation* (4th ed.) (2004) ...............................................5, 14, 16

*2 Newberg on Class Actions* ...............................................................................9, 14, 16

4 *Newberg on Class Actions* 4th ed. 2002)  ..................................................................................13

### Index of Exhibits

Exhibit 1 – Settlement Agreement

Exhibit 2 – Claim Processing and Payment Guidelines or "Class Settlement Allocation Plan"

Exhibit 3 – Class Notice

Exhibit 4 – Publication Notice

Exhibit 5 – Claim Form

Exhibit 6 – Proposed Preliminary Approval Order

Exhibit 7 – Proposed Final Approval Order

Coulson Declaration

Lucchesi Declaration

## I.     INTRODUCTION AND FACTUAL BACKGROUND

Pursuant to Fed. R. Civ. P. 23(e), Plaintiffs seek the Court's required approval of the Settlement reached in this matter after more than 2.5 years of litigation. Plaintiffs brought this case against Defendants as a class action on behalf of their fellow users of Parchment, Michigan's municipal water system as of July 26, 2018. (ECF No. 1, PageID.23, ¶175). That date is when the State of Michigan announced that it discovered that Parchment's municipal wellfield had been contaminated with per- and poly-fluoroalkyl substances ("PFAS"), a family of chemicals that are known to be persistent in the environment and alleged to have toxic effects. (PageID.19, ¶140). Plaintiffs allege that the PFAS in their water supply migrated from a nearby former paper mill and its associated facilities (including a series of landfills). (PageID.13-16, ¶¶89-119). They allege that one or more predecessors of Georgia-Pacific Consumer Products LP at various times owned the mill and/or deposited waste in the landfills, and that Georgia-Pacific LLC was responsible for certain aspects of closing the last actively used landfill under an agreement with the Michigan Department of Environmental Quality. (PageID.17-19, ¶¶120-137). They also allege that 3M developed, created, and sold the products containing PFAS (notably including a product known as Scotchban) to the owners and operators of the mill. (PageID.5, ¶¶28-31; PageID.13, ¶¶91-94). It is alleged that PFAS-containing products were used at the mill and disposed of at the landfill before migrating into the wellfields that provided Parchment's water. (*Id*.; PageID.17, ¶126).

The Parchment water system serviced residents of Parchment and portions of Cooper Township. (PageID.4, ¶¶15-17). Within about a month of the contamination's discovery, those residents were connected to the City of Kalamazoo's water system. (PageID.20, ¶146). Plaintiffs sought damages for impacts to their property, including any impacts to property value and/or lost use, non-economic damages, as well as the creation of a fund or program to monitor Class

Members for potential health impacts based on their exposure to PFAS. (PageID.23, ¶173; PageID.25, ¶¶186, 188).

This case was originally assigned to Chief Judge Robert J. Jonker. (ECF No. 2, PageID.38). While it was assigned to Judge Jonker, both 3M and Georgia-Pacific, LLC filed motions to dismiss. (ECF Nos. 12, 15). On January 17, 2021, the case was reassigned to Judge Janet T. Neff. (ECF No. 17). Judge Neff promptly ordered that briefing on the motions to dismiss be held in abeyance and then denied them without prejudice, requiring pre-motion conference requests to be filed in compliance with her procedures. (ECF No. 19, 20). Each Defendant filed such a request, Plaintiffs responded in opposition, and the Court held a premotion conference on May 3, 2019. (ECF Nos. 21, 24, 28, 29, 35). As a result of the Court's guidance, the parties narrowed the contested issues, and Plaintiffs filed their Amended Complaint on June 5, 2019. (ECF No. 36). Defendants then filed new pre-motion conference requests to move to dismiss medical monitoring from Plaintiffs' complaints. (ECF Nos. 41, 42).

Defendants each served motions to dismiss which asserted, among other things, that medical monitoring, as a form of relief, is not available under Michigan law. (ECF No. 68; ECF No. 76). Those motions were fully briefed and filed on November 12, 2019. (ECF Nos. 68-81). On September 28, 2020, the case was reassigned to Judge Hala Y. Jarbou, at which time the motions to dismiss remained pending. (ECF No. 94). The Court then denied Defendant's motions on procedural grounds. (ECF No. 95). However, in its Order, the Court opined that portions of *Henry v. Dow Chemical Co*., 701 N.W.2d 684 (Mich. 2005) "strongly indicate that medical monitoring would not be an attainable remedy in this case[]" and that "Plaintiffs' prospects for acquiring medical monitoring as a remedy may be dim[.]" (ECF No. 95, PageID.1228-29).

During the time before and after Defendant's medical monitoring motions were filed, the Parties engaged in discovery. This included the exchange of tens of thousands of pages of documents, as well as service of and response to interrogatories, and a briefed but ultimately withdrawn motion to compel. (ECF No. 83; Coulson Decl., ¶14). With the benefit of this discovery, once the Court denied Defendants' motions, the parties engaged in voluntary facilitative mediation in order to attempt to avoid the costs, delays, and risks associated with further litigation of class certification, further written discovery, motions related to discovery issues, depositions, expert testimony, and a trial set for early 2022. (ECF No. 100, 105; Coulson Decl., ¶15-16). The parties engaged the services of Frederick D. Dilley, with whom mediation sessions were held on February 26, 2021 and March 1, 2021. (*Id.*). The arm's-length mediation sessions resulted in agreement on the principal terms of a class-wide resolution, the details of which were negotiated between the parties until April 22, 2021. (ECF No. 106).

The Settlement Agreement provides the Class with excellent relief for the claims asserted in this action. (Coulson Decl., ¶17-21). This case does not involve and has never involved claims for personal injury or illness, and the Settlement therefore does not release such claims. (Ex. 1, pg. 2 of 21, ¶1(e); pg. 7-8 of 21, ¶4(b)). Instead, the Settlement Agreement requires Defendants to pay $11,900,000 into a fund for the benefit of Settlement Class Members, to be paid to those who had property interests and/or resided in homes serviced by Parchment's municipal water system as of the date the contamination was discovered. (*Id.*, pg. 5 of 21, ¶2(a)). In general, the funds are to be allocated to Class Members pro-rata in one of three amounts, depending on whether they (i) owned, rented, or leased a property that received water from Parchment's system; (ii) resided in such a property (and were therefore presumptively exposed to the water); or (iii) both (i) and (ii). (**Ex. 2**, pg. 4, ¶ 10-12). There were approximately 1,174 relevant residential properties and approximately

3

3,100 residents at the relevant time. After final approval and the deduction of such attorneys' fees, costs, and expenses (including the costs of notice and administration) and incentive payments as the Court may award, the Settlement Fund will be allocated as set forth in **Exhibit 2**.

Pursuant to the Settlement Agreement and in accordance with Fed. R. Civ. P. 23, once the Settlement is preliminarily approved, a third-party class action settlement administrator (the "Class Administrator") will begin providing notice to the Settlement Class pursuant to the Notice Plan. (**Ex. 1**, pg. 10-11 of 21, ¶9; Lucchesi Decl., pg. 2, ¶4-8). Notice will include (i) mailing the lonf-form Class Notice, along with a Claim Form to each reasonably identifiable address within the class area; (ii) a Michigan-wide media campaign comprised of 1/8-page ads in the *Grand Rapids Press*, *Detroit News & Detroit Free Press Combo*, *Lansing State Journal*, *Kalamazoo Gazette* and *Flint Journal;* (iii) internet banner ads creating approximately 1,308,050 impressions on websites and Facebook over a 30-day duration; and (iv) the establishment and maintenance of a case website that will contain relevant case documents, important dates, and frequently asked questions and allow class members to file claims online. (Lucchesi Decl., pg. 2-4).

Class Members will have the opportunity to make claims, opt-out, or object to the Settlement. (**Ex. 1**, pg. 11-12). The Class Administrator will provide live telephone support to handle any Class Member inquiries and notice packet requests, and Class Counsel will also be available to answer questions. (Lucchesi Decl., pg. 12). Prior to the required Fairness Hearing, Class Counsel will file all objections with the Court, as well as a list of those who have opted out and will therefore be excluded from the Class. (**Ex. 1**, pg. 11 of 21, ¶11(a)). Plaintiffs will then seek final approval of the Settlement, at which time the Court can consider the Class's response thereto. (*Id.*, pg. 12 of 21, ¶12).

## II.   LEGAL STANDARD AND PROCEDURE FOR CLASS SETTLEMENT AND CERTIFICATION

Rule 23(e) provides that "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). Approval of a class action settlement is a two-step process. "First, counsel submit the proposed terms of [the] settlement and the judge makes a preliminary fairness evaluation. . . Once the judge is satisfied as to the . . . results of the initial inquiry into the fairness, reasonableness, and adequacy of the settlement, notice of a formal Rule 23(e) fairness hearing is given to the class members." *Manual for Complex Litigation* (4th ed.) §§ 21.632-.633 (2004); *see also Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559, 565-66 (6th Cir. 2001).

At this preliminary approval stage, the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). Once the class has been notified and its input received, the Court finally conducts a hearing to determine whether the settlement is fair, reasonable, and adequate after considering whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

## III.   THE COURT WILL LIKELY BE ABLE TO CERTIFY THE SETTLEMENT CLASS UNDER RULE 23.

Before ordering notice, the Court must find that it will "likely be able to… certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). A class action may be maintained if each of the prerequisites of Rule 23(a) is satisfied along with one of the three categories in Rule 23(b). Rule 23(a)'s prerequisites mandate findings that:

1) the class is so numerous that joinder of all members is impracticable;
2) there are questions of law or fact common to the class;
3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Plaintiffs seek certification under Rule 23(b)(3), which requires that, "questions of law or fact common to class members predominate over any questions affecting only individual members," (the predominance requirement) "and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy" (the superiority requirement). Fed. R. Civ. P. 23(b)(3). The matters pertinent to these findings include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;
(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
(D) the likely difficulties in managing a class action.

*Id.* However, where, as here, certification is sought in the context of a settlement, final Rule 23(b)(3) factor ("manageability") is rendered irrelevant. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district

court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there be no trial.").

### A. The Settlement Class is So Numerous That Joinder of All Members is Impracticable.

The first requirement of Rule 23(a) is that the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). As the Sixth Circuit has explained, "[t]here is no strict numerical test for determining impracticability of joinder." *In re American Medical Systems, Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). Rather, "[t]he numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel. Co. v. EEOC*, 446 U.S. 318, 330 (1980). But while the numerosity requirement is not tied to any fixed numerical threshold, "substantial" numbers usually satisfy this requirement. *See Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006).

Here, the proposed Class consists of approximately 1,174 residential properties and approximately 3,100 residents. The number of Class Members is orders of magnitude greater than what normally satisfies the numerosity prerequisite. To join more than three thousand people to this action would clearly pose a strong litigation hardship or inconvenience, such that joinder of all Class Members is impracticable, and Rule 23(a)(1) is satisfied.

### B. The Settlement Class Shares Common Questions of Law and Fact.

Rule 23(a)(2) requires a showing of the existence of questions of law or fact common to the class. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2548 (2011). "[Class members'] claims must depend upon a common contention of such a nature that it is capable of class-wide resolution which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. at 2551; *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998) (en banc) (the court must look for "a common issue the

resolution of which will advance the litigation"). "The commonality test is qualitative rather than quantitative, that is, there need be only a single issue common to all members of the class." *In re Am. Medical Syst., Inc.*, 75 F.3d at 1080 (internal quotation and citation omitted). The Sixth Circuit has instructed that class certification is appropriate "'if class members complain of a pattern or practice that is generally applicable to the class as a whole. Even if some class members have not been injured by the challenged practice, a class may nevertheless be appropriate.'" *In re Whirlpool Corp. Front-Loading Washer Products Liability*, 678 F.3d 409, 420 (6th Cir. 2012) (quoting *Walters v. Reno*, 145 F.3d 1032, 1047 (9th Cir. 1998)).

For purposes of this Settlement, Plaintiffs' claims, and those of the Class, arise from common questions at the heart of the case involving Defendant 3M's alleged development, manufacture, and sale of certain products containing PFAS and the Georgia-Pacific Defendants' alleged failure to prevent chemicals from migrating from the landfill to the City of Parchment's water system. Plaintiffs thus rely on a common nucleus of operative facts that gives rise to functionally identical legal claims, which require nearly identical evidence to prove. The commonality prerequisite is satisfied.

### C. The Claims of the Named Plaintiffs are Typical of the Class's Claims.

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). A plaintiff's claim "is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *In re Am. Medical Sys., Inc.*, 75 F.3d at 1082.

The claims of the class representatives in this case are the exact same claims as those advanced on behalf of the proposed class – public nuisance, private nuisance, and negligence

8

against Georgia-Pacific, and for "Product Liability - Defective Design" and "Product Liability - Failure to Warn" against 3M.  Plaintiffs, like all putative class members, allege that they have been impacted by PFAS that originated at former Crown Vantage paper mill and landfill site in Parchment, Michigan and seek money damages for, *inter alia*, property damage or diminution in property value, stigma damages, interference with use and enjoyment of real property, non-economic damages, and exposure to certain PFAS. Those allegations make Plaintiffs' claims typical of the claims of their fellow Settlement Class Members, in satisfaction of the Rule 23(a)(3) typicality requirement.

### D.   The Named Plaintiffs and Class Counsel will Continue to Fairly and Adequately Protect the Class's Interests.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "There are two criteria for determining this element: 1) the representative must have common interests with the unnamed class members, and 2) it must appear that the representatives will vigorously prosecute the class action through qualified counsel." *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 524-25 (6th Cir. 1976) (citing *Gonzalez v. Cassidy*, 474 F.2d 67, 73 (6th Cir. 1973)). The adequacy element tests "the experience and ability of counsel for the plaintiffs and whether there is any antagonism between the interests of the plaintiffs and other members of the class they seek to represent." *In re Am. Medical Syst., Inc.,* 75 F.3d at 1083 (internal quotation marks and citation omitted). "Interests are antagonistic when there is evidence that the representative plaintiffs appear unable to vigorously prosecute the interests of the class." *Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000) (internal quotation omitted). Adequate representation is usually presumed in the absence of contrary evidence. *See* 2 Newberg on Class Actions §7.24 at pp. 7-81-82. "Courts have previously approved class counsel with experience in conducting class actions as adequate." *In re Skechers Toning Shoe Products Liability Litigation*, 2012 WL 3312668, at *5 (W.D.K.Y. 2012) (citation omitted). "Class representatives are adequate when it appears that they will vigorously prosecute the interest of the class through

qualified counsel, ... which usually will be the case if the representatives are part of the class and possess the same interest and suffer the same injury as the class members." *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 626 (6th Cir. 2007) (internal quotation marks and citations omitted).

The named Plaintiffs in this case have pursued claims that are entirely typical of the claims of the absent class members. There is no evidence that they have any conflict of interest with their neighbors. They are residents of the neighborhoods serviced by the Parchment municipal water system seeking redress for contamination that has impacted their homes and entered their bodies. Plaintiffs and their chosen counsel have prosecuted and will continue to prosecute the action vigorously on behalf of the class.

Plaintiffs respectfully request that their chosen counsel, Steven Liddle and Nicholas Coulson, from the Firm of Liddle & Dubin, P.C., be appointed class counsel. Rule 23(g)(1)(C) sets forth the factors for the Court to consider in making a determination regarding class counsel:

In appointing class counsel, the court

    (A) must consider:
        (i)    the work counsel has done in identifying or investigating potential claims in the action,
        (ii)   counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action,
        (iii)  counsel's knowledge of the applicable law, and
              the resources counsel will commit to representing the class; [and]
    (B) may consider other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class;
    (C) may direct potential class counsel to provide information on any subject pertinent to the appointment and to propose terms for attorney fees and nontaxable costs; and
    (D) may make further orders in connection with the appointment.

Fed. R. Civ. P. 23(g)(1). Plaintiffs' counsel has performed a great deal of work in both identifying and investigating the claims in this action. (Coulson Decl. ¶ 12). Plaintiffs' counsel, Liddle & Dubin, P.C., has significant experience in complex litigation and class actions involving claims of the type asserted in this action, including cases arising from environmental contamination.

(Coulson Decl. ¶ 4, 6-10).  Counsel are knowledgeable in the applicable law, and are able, willing, and planning to commit the resources necessary to zealously represent the class as they have done throughout the litigation. (Coulson Decl. ¶ 11). Plaintiffs therefore respectfully request that the Court find that they and their counsel have adequately represented the Class's interests and appoint their counsel as Class Counsel.

### E.      This Case is Appropriate for Certification Under Rule 23(b)(3).

To be certified under Rule 23(b)(3), a proposed class action must have "questions of law or fact common to the members of the class [that] predominate over any questions affecting only individual members," and certification of a class must be "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

#### i.      Common questions predominate over questions affecting only individual members.

The predominance factor "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623. The objective of Rule 23(b)(3) is to promote economy and efficiency in actions that are primarily for money damages. Where common questions "predominate," a class action can achieve economies of time, effort, and expense as compared to separate lawsuits, permit adjudication of disputes that cannot be economically litigated individually, and avoid inconsistent outcomes, because the same issue can be adjudicated the same way for the entire class. *See* Fed. R. Civ. P. 23(b)(3), advisory committee's note (1966).

In this case, the claims of Plaintiffs and the Class rely on the same legal theories and indeed the same evidence. Given the nature of analyzing environmental contamination in a single water system common to the proposed class, making a determination about the source of the contamination of Parchment's water supply resolves that issue for one Class Member just as

11

clearly as it resolves that issue for their neighbor. As such, Plaintiffs maintain that the common questions in this case, such as whether and how PFAS migrated from the mill property into Parchment's municipal wellfields, what Defendants might have done or failed to do in controlling the PFAS contamination, what acts caused Plaintiffs' and the Class's exposure to PFAS, what the Defendants knew about the risks of the PFAS at the mill, and many more, predominate over any less significant questions that might apply only to individual Class Members.

> **ii.    Class litigation is superior to other available methods of adjudication.**

Rule 23(b)(3) sets forth the requirement that a class action be "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). The alternative to class settlement of these claims is costly, wasteful litigation by individual Class Members. The economic realities of such litigation would mean that many Class Members might not bring claims, though hundreds or more could, needlessly wasting the resources of the parties and the courts. By contrast, the proposed Class Settlement provides relief for all Class Members without any need for further litigation beyond the typically straightforward settlement approval process. The Court will likely be able to certify the Settlement Class for purposes of implementing the Settlement Agreement.

## IV.    THE COURT WILL LIKELY BE ABLE TO APPROVE THE SETTLEMENT AS FAIR, ADEQUATE, AND REASONABLE

The Sixth Circuit has long recognized that the law favors the settlement of class action lawsuits. *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007) (noting "the federal policy favoring settlement of class actions"). "[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *In re Cardizem CD Antitrust Litigation*, 218 F.R.D. 508, 530 (E.D. Mich. 2003) (citations omitted). Since its 2018 amendment,

Fed. R. Civ. P. 23(e) directs courts evaluating whether a settlement is fair, reasonable, and adequate to consider "(1) whether the proposed class was adequately represented; (2) whether the proposed settlement was reached through an arm's length negotiation; (3) whether the proposed relief to the class is adequate; and (4) whether the proposed settlement treats class members equitably." *Day v. AMC Corp.*, 2019 U.S. Dist. LEXIS 143021, *10, 2019 WL 3977253 (E.D. Ky. July 26, 2019). The Settlement Agreement is more than fair, reasonable, and adequate because it delivers nearly 12 million dollars in financial relief to the Class, which compares favorably to the few salient comparable cases that exist.

### A. The Settlement Satisfies the Rule 23(e)(2) Factors.

#### i. Plaintiffs and Proposed Class Counsel have zealously and adequately represented the Class.

Beyond the adequacy of representation considerations addressed in Sec. III(D) above, "the nature and amount of discovery in this or other cases, or the actual outcomes of other cases, may indicate whether counsel negotiating on behalf of the class had an adequate information base." Fed. R. Civ. P. 23(e)(2) Advisory Committee's Note (2018 Amendment). "In evaluating the proposed settlement, this Court need not possess sufficient 'evidence to decide the merits of the issue, because the compromise is proposed in order to avoid further litigation.'" *Int'l Union v. Robert Bosch Corp.*, 2009 U.S. Dist. LEXIS 142483, *10 (W.D. Mich., Nov. 3, 2009) (quoting 4 *Newberg on Class Actions* § 11:45 (4th ed. 2002)). Instead, the Court need only have "sufficient facts before [it] to intelligently approve or disapprove the settlement." *Id.* (quoting *Epstein v. Wittig*, 2005 U.S. Dist. LEXIS 31078, 2005 WL 3276390, at *7 (D. Kan. Dec. 2, 2005) (unpublished)).

Here, the Parties engaged in extensive formal discovery, allowing all Parties and counsel to have "all information necessary to assess the merits of the [P]arties' respective claims and the

merits of the final settlement." *Int'l Union v. Robert Bosch Corp.*, 2009 U.S. Dist. LEXIS 142483, *11 (W.D. Mich., Nov. 3, 2009); (Coulson Decl., ¶13-16). "In short, …[the p]arties were fully informed and were in possession of all information, documents and data necessary to make an informed decision regarding the future of the litigation." *Id.*

### ii.  The Settlement Agreement Was Reached as a Result of Extensive Arms' Length Negotiations, Including through the Use of a Court-Approved Neutral Mediator.

"There is usually an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval." 2 *Newberg On Class Actions*, Herbert B. Newberg and Alba Conte, §11.41, at 11-88 (3d ed. 1992). "[T]he involvement of a neutral or court-affiliated mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests." Fed. R. Civ. P. 23(e)(2) Advisory Committee's Note (2018 Amendment).

The Settlement Agreement was reached after months of prolonged negotiations, including two full days of mediation with the assistance of court-appointed mediator, Frederick Dilley. (Coulson Decl., ¶15-16). Counsel are experienced litigators who negotiated this settlement following significant discovery, ensuring the protection and furtherance of the Class's interests. (*Id.*, ¶11-14). The settlement is clearly the product of arm's length negotiations which adequately protected the Class's interests.

### iii.  The proposed relief is adequate as defined by Rule 23(e)(2)(c).

Rule 23(e)(2)(C) requires the Court to ensure "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of

payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(c). Consideration of these factors readily supports preliminary approval.

### a. The Costs, Risks, and Delay of Trial and Appeal Weigh in Favor of Approval.

Plaintiffs are represented by counsel with significant experience in litigating environmental class and mass actions, including environmental contamination cases, who were adequately informed of both the strengths and weaknesses of Plaintiffs' case. (Coulson Decl., ¶6-16). This experience provides Plaintiffs' counsel with a foundation for evaluating the Settlement in light of the possible outcomes of continued litigation. Plaintiffs' counsel has fully considered the risks of attempting to obtain class certification over Defendants' objection and proving this case on the merits, including damages. (*Id.* ¶ 18-20).  This Settlement avoids that risk and provides significant relief for an immediate and ongoing concern. To jeopardize this satisfactory settlement as a gamble to seek a greater monetary award would not be in the best interests of the Class. (*Id.*, ¶ 21)

Plaintiffs and their counsel believe that Plaintiffs and the Class have an excellent case, and that is reflected in the result. (*Id.*, ¶17). The Settlement Agreement compares very favorably with recent settlements in other environmental contamination class actions. For example, the MDL transferee Court overseeing a case arising from PFAS pollution in Wisconsin recently granted preliminary approval of a settlement of $17,500,000 in cash to compensate class members for their alleged exposure to PFAS-contaminated water. *See In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 2021 U.S. Dist. LEXIS 16470 (D.S.C., January 25, 2021).  Importantly, that settlement involved a class definition that extended 35 years in the past, the contamination of privately owned wells (as opposed to a former source of municipal water), and the release of personal injuries. *Id.* at *4, *9. These key differences highlight the excellent result provided by the instant settlement. The instant Settlement provides for $11,900,000 in cash, includes a Class defined based on

15

occupancy or property interests on only a single day in 2018, does not involve the contamination of private wells, and does not release any individual claims of class members for past, present, or future manifested bodily injuries that have resulted in a medically diagnosed condition.  Thus, this Agreement represents an excellent result for the Class.

A significant factor in the Court's evaluation of a proposed settlement is the likelihood of success on the merits weighed against the relief offered in the settlement. *See Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984); *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1150 (8th Cir. 1999); *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996); *see also* 2 NEWBERG § 11:44 (3d ed. 1992). Although this factor requires "'some evaluation of the merits of the dispute, the district court must refrain from reaching conclusions upon issues which have not been fully litigated.'" *Berry v. Sch. Dist.*, 184 F.R.D. 93, 98 (W.D. Mich. 1998) (quoting *Armstrong v. Bd. of Sch. Directors*, 616 F.2d 305, 314 (7th Cir. 1980)). The ultimate question, rather, is "'whether the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued.'" *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 522 (E.D. Mich. 2003) (quoting Manual for Complex Litig. ("MCL") § 30.42 at 238 (3d ed. 1995)); *see also Shy v. Navistar Int'l Corp.*, 1993 U.S. Dist. LEXIS 21291, *11 (S.D. Ohio 1993) ("It is neither required, nor is it possible for a court to determine that the settlement is the fairest possible resolution of the claims of every individual class member; rather, the settlement, taken as a whole, must be fair, adequate and reasonable.") (citing *Clark Equip. Co. v. Int'l Union, Allied Indus. Workers*, 803 F.2d 878 (6th Cir. 1986)). Settlements should represent "a compromise which has been reached after the risks, expense and delay of further litigation have been assessed." *Williams v. Vukovich*, 720 F.2d 909, 922 (6th Cir. 1983).

An evaluation of the relief achieved in the Settlement Agreement considered against the costs, risks, and delay of prosecuting this action through a trial and possible appeal(s) strongly counsels in favor of preliminary approval. The difficulties of continued litigation in a case of this nature are difficult to overstate. Litigating environmental contamination class actions is inherently costly and time consuming given the involvement of highly specialized experts and the need for extensive documentary and testimonial evidence. (Coulson Decl., ¶20). The class certification stage alone typically lasts for a period of years and involves costs, particularly expert costs, that regularly reach six figures. (*Id.*, ¶ 19). Litigating beyond the class certification stage would necessarily involve additional voluminous discovery and likely hundreds of thousands of dollars of additional expert testimony. Such litigation could proceed for several years through trial and possibly appeal(s), including potential appeals of the class certification decision itself. (*Id.*, ¶ 21).

Here, the continuation of the litigation "would require the resolution of many difficult and complex issues," would "entail considerable additional expense," and would "likely involve weeks, perhaps months, of trial time." *Isby*, 75 F.3d at 1199 (quoting *Taifa v. Bayh*, 846 F. Supp. 723, 727 (N.D. Ind. 1994)). As discussed previously, the Settlement Agreement represents "an outcome at least comparable, if not far superior, to that which plaintiffs might achieve by proceeding to trial." *Id*.

The Settlement achieves substantial benefits for the class without expending additional resources and without delay. The Class will obtain immediate relief, as opposed to waiting years for an uncertain outcome which would in any event be diminished by the costs of protracted litigation. (Coulson Decl., ¶21). That the settlement lacks deficiencies and falls within the range of reasonableness weighs heavily in favor of approval.

While Class Counsel maintains confidence in the strength of its merits arguments, the results of Defendants' previously filed motion on medical monitoring and likely future motions are anything but certain. (Coulson Decl., ¶18). The results of an adverse determination on such motions or appeals threatened to render Plaintiffs' claims worth somewhere between mere pennies on the dollar and worthless. Furthermore, following such determination, Plaintiffs would additionally face the challenge of class certification, summary judgment, and trial. And "the prospect of a trial necessarily involves the risk that Plaintiffs would obtain little or no recovery." *In Re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 523 (E.D. Mich. 2003). "Experience proves that, no matter how confident trial counsel may be, they cannot predict with 100% accuracy a jury's favorable verdict." *Id.* Defendants would be expected to mount substantial defenses on the legal and factual basis for all claims, and certification of a class, at all stages of this case, all with significant risk and costs to the relief sought by the Class. For example, Defendants would likely argue that the Class experienced no diminution in property value and that the market for home sales has not been materially impacted, and they likewise would assert that medical monitoring is not a viable remedy, but even if viable, not warranted given the science. (Coulson Decl., ¶18, 20). While Plaintiffs would dispute these arguments, they create serious risk for Plaintiffs' claims.

The Settlement Agreement avoids the risk, complexity, time, and cost of further litigation, and provides the Class with substantial guaranteed monetary relief on an immediate basis. After considering the range of possibilities, it is Plaintiffs' counsel's experienced opinion that, given the potential risks, rewards, and costs of continuing litigation, Settlement on the proposed terms is the most desirable course for Plaintiffs and the Class to take. (Coulson Decl., ¶17, 21). Those risks further counsel in favor of preliminarily approving the Settlement Agreement.

**b.  *The Effectiveness of the Proposed Method of Distributing Relief to the Class, including Class Members Claims, Weighs in Favor of Approval.***

Plaintiffs' request that KCC Class Action Services, LLC ("KCC" or the "Class Administrator") be appointed to administer the Settlement.  KCC is a reputable leading class action settlement administrator with more than 30 years of experience. (Decl. of Lana Lucchesi Regarding Administration Qualifications and Notice Plan Summary ("KCC Decl.") ¶ 2). A Settlement Administrator like KCC is typically appointed to conduct the administration of a class action settlement. *See, e.g., Donnelly v. EquityExperts.org, LLC*, No. 4:13-CV-10017-TGB-RSW, 2014 U.S. Dist. LEXIS 142050, at *4-5 (E.D. Mich. Sep. 26, 2014) (appointing KCC to administer class settlement and noting that "the class administrator will be responsible for mailing the approved class action notice and  settlement checks  to  the Class Members.").  After  providing notice to the Class as detailed below, KCC will administer the Settlement pursuant to the Claim Processing and Payment Guidelines (**Ex. 2**). Under those guidelines, after deducting of the amounts awarded to (a) Class Counsel for attorneys' fees and costs; (b) the Class Administrator for the costs of notice and administration; and (c) Plaintiffs/Class Representatives for their litigation efforts, the Settlement Fund will be distributed to Class Members based on the number and type of approved claims. (**Ex. 2**, ¶10; KCC Decl., ¶ 10). Specifically, each approved claiming Class Member who owned, rented, or leased a property serviced by Parchment's municipal water system as of July 26, 2018 will be awarded one Share. (**Ex. 2**, ¶10). Each approved claiming Class member who resided in such a property will be awarded two Shares. (*Id.*) Approved claiming Class Members who satisfy both categories will receive the combined three Shares. (*Id.*) KCC will administer the Settlement Fund and conduct all necessary work to issue checks to the approved claiming Class Members. (KCC Decl., ¶ 10). Because this is an environmental case involving people in a fixed geographic area and not, for example, a consumer financial case in which each

19

Class Member has an account with the defendant (and can therefore be paid electronically and/or automatically), this is the most effective practicable way to provide payment to Class Members.

### c.   The Terms of the Proposed Award of Attorney's Fees, including Timing of Payment Weigh in Favor of Approval.

While so called "clear-sailing" agreements to refrain from opposing Class Counsel's request for fees are permissible in this Circuit, the Settlement Agreement contains no such provision. *See Kis v. Covelli Enters.*, No. 4:18-cv-54, 2020 U.S. Dist. LEXIS 93929, at *11 (N.D. Ohio May 29, 2020) ("Absent evidence of improper incentives, a clear-sailing provision alone does not doom the settlement. Upon close inspection, the Court finds no cause for concern. Class Counsel seeks fees that are a percentage of the aggregate settlement amount, a common method of valuing attorney's fees in common fund settlements."). Instead, the Settlement Agreement simply provides for Class Counsel to apply for an award of attorneys' fees from the Court. (Ex. 1, pg. 7, ¶3).

Counsel will not seek more than 1/3 of the Settlement Fund, which is within the accepted range in the Sixth Circuit. "The one-third contingency fee arrangement reflected in the Settlement Agreement is 'certainly within the range of fees often awarded in common fund cases, both nationwide and in the Sixth Circuit.'" *Fitzgerald v. P.L. Mktg.*, No. 2:17-cv-02251-SHM-cgc, 2020 U.S. Dist. LEXIS 25672, at *31-32 (W.D. Tenn. Feb. 13, 2020) (quoting *In re Se. Milk Antitrust Litig.*, No. 2:07-cv-208, 2018 U.S. Dist. LEXIS 131855, 2012 WL 12875983, at *2 (E.D. Tenn. July 11, 2012)). Class Counsel will not be paid until the Defendants fund the Settlement Fund, near or around the same time Class Members begin to receive payments. This factor counsels in favor of approval.

### d.   There Are No Agreements Between the Parties other than the Settlement Agreement.

As stated by the Settlement Agreement's own terms, no other agreement between the Parties exists, and the Settlement Agreement expressly disclaims any other such agreement. (**Ex. 1**, pg. 17 of 21, ¶18).

### iv. The Proposed Settlement Treats Class Members Equitably Relative to One Another.

"When formulated by competent and experienced counsel, a plan for allocation of net settlement proceeds need have only a reasonable, rational basis. A reasonable plan may consider the relative strength and values of different categories of claims." *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 580 (S.D.N.Y. 2008) (internal quotations, citations, and marks omitted). "In assessing whether the Settlement Agreement treats Settlement Class Members fairly vis-a-vis one another, the Court considers whether the 'apportionment of relief among class members takes appropriate account of differences among their claims.'" *Kis v. Covelli Enters.*, No. 4:18-cv-54, 2020 U.S. Dist. LEXIS 93929, at *12 (N.D. Ohio May 29, 2020) (quoting Fed. R. Civ. P. 23(e)(2)(D), Advisory Committee Note 2018 Amendments).

Settlement Class Members who submit timely and valid claims will receive one of three amounts, depending on whether they 1) owned, rented, or leased a property in the Class area; 2) resided in such a property; or 3) both. (**Ex. 2**, ¶10). Class Members who only had a property interest but did not reside in their property will receive one half of what those who resided in a home but did not have a property interest receive, and one-third of what those who both had a property interest and resided at their property. (*Id.*) In Class Counsel's view, this is a reasoned reflection of the fact that individuals who owned and resided in a property have a different set of claims and potential damages than a person who simply owns property within the Class area. Due to the myriad of potential factors and the limited temporal nature of the Class, it would be impractical, burdensome, and inherently likely to cause conflict if Class Members within each of the three

21

categories received differing payments from one another.  This likewise simplifies the claims process and reduces its expense to the benefit of the Class.  Equal payments to Class Members who are generally similarly situated is an accepted form of equitable distribution. *See, e.g., Demmick v. Cellco P'ship*, Civil Action No. 06-2163 (JLL), 2015 U.S. Dist. LEXIS 192723, at *47 (D.N.J. Apr. 30, 2015) ("the Court approves [the] Plan as fair, reasonable and adequate for the following reasons. First, every eligible Settlement Class Member will receive the same amount of cash."); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720 (MKB) (JO), 2019 U.S. Dist. LEXIS 217583, at *226 (E.D.N.Y. Dec. 16, 2019) ([t]he Court also notes that for such large class action settlements that involve releases, it would be nearly administratively unfeasible to tailor a release to match the duration that a member had been in the class.").

The only other difference in the treatment of Class Members is that the named Plaintiffs will seek incentive awards of $5,000 each. (Ex. 1, pg. 7 of 21, ¶3(d)). Similar service awards are regularly granted to reward plaintiffs for the benefit they confer on their fellow class members. "[I]ncentive awards are efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Fitzgerald v. P.L. Mktg.*, No. 2:17-cv-02251-SHM-cgc, 2020 U.S. Dist. LEXIS 25672, at *33-34 (W.D. Tenn. Feb. 13, 2020) (quoting *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003)). "The proposed service payments are similar to other collective and class action incentive awards approved by courts in this Circuit. *See, e.g., Salinas v. U.S. Express Enters., Inc.*, No. 1:13-cv-00245, 2018 U.S. Dist. LEXIS 50800, 2018 WL 1477127, at *10 (E.D. Tenn. Mar. 8, 2018) (collecting cases in which courts approved service payments to named plaintiffs between $7,500 and $10,000), *adopted by* 2018 U.S. Dist. LEXIS 48946, 2018 WL 1475610 (E.D. Tenn. Mar. 26, 2018); *Osman v. Grube,*

*Inc.,* No. 3:16-cv-00802, 2018 U.S. Dist. LEXIS 78222, 2018 WL 2095172,*2 (N.D. Ohio May 4, 2018) (approving $7,500 service payment to named plaintiff in FLSA collective action).  The plan of allocation, like the Settlement Agreement as a whole, is fair, adequate, and reasonable.

### B.  The Settlement Also Satisfies the Traditional Sixth Circuit Factors for Approval.

Some courts continue to consider the factors used to evaluate settlement fairness prior to the Rule 23(e) amendments.[4] "In addition to the Rule 23(e)(2) factors, courts may also consider circuit-specific factors in the analysis. In the Sixth Circuit, those factors are '(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.'" *Garner Props. & Mgmt., LLC v. City of Inkster*, No. 17-cv-13960, 2020 U.S. Dist. LEXIS 146655, at *22-23 (E.D. Mich. Aug. 14, 2020) (citing *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)). "No single factor is determinative, and the Court should consider the factors relevant to the circumstances of each individual case." *Id.* (citation omitted).

Factors 1-5 are subsumed by the Rule 23(e)(2) factors. *See Macy v. GC Servs. Ltd. P'ship*, Civil Action No. 3:15-cv-819-DJH-CHL, 2019 U.S. Dist. LEXIS 210632, at *4-5 (W.D. Ky. Dec. 6, 2019) ("[Rule 23(e)] largely encompasses the factors that have been employed by the Sixth Circuit[.]"). The sixth factor, the reaction of absent Class Members, cannot be evaluated until notice has been delivered and the Class's feedback received. The seventh factor, the public interest, weighs overwhelmingly in favor of approval. This Settlement represents the resolution of an

---

[4] *See, e.g., In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-md-2807, 2019 U.S. Dist. LEXIS 135573, at *11 (N.D. Ohio Aug. 12, 2019) ("Before this Rule 23(e)(2) amendment, circuit courts had developed their own multi-factor inquiries. According to the 2018 Amendment's Advisory Committee Notes, so long as courts use the 23(e)(2) factors as the primary framework, courts may still consider circuit-specific factors in the analysis.").

alleged environmental impact to thousands of people which will provide meaningful relief to the community and certainty to each of the Defendants. Beyond the public interest in efficient resolution of litigation generally, the Settlement serves the important interest of encouraging responsible environmental stewardship. Thus, the only additional factor ripe for consideration further supports approval of the Settlement.

## V. THE NOTICE PLAN IS APPROPRIATE.

Pursuant to the Settlement Agreement and in accordance with Fed. R. Civ. P. 23, once the Settlement is preliminarily approved, the Class Administrator will begin providing notice to the Class pursuant to the Notice Plan. (**Ex. 1**, pg. 10-11, ¶9; KCC Decl., pgs. 2-4, ¶4-8). Notice will include (i) mailing the written Notice (**Ex. 3**), along with a Claim Form to each reasonably identifiable address within the class area (**Ex. 5**); (ii) a Michigan-wide media campaign comprised of 1/8-page ads in the *Grand Rapids Press*, *Detroit News & Detroit Free Press Combo*, *Lansing State Journal*, *Kalamazoo Gazette* and *Flint Journal* (**Ex. 4**); (iii) internet banner ads creating approximately 1,308,050 impressions on websites and Facebook over a 30-day duration; and (iv) the establishment and maintenance of a case website that will contain relevant case documents, important dates, frequently asked questions and allow class members to file claims online. (KCC Decl., pgs. 2-4, ¶4-8).

> When a class is conditionally certified under Rule 23(b)(3), the district court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. Fed. R. Civ. P. 23(c)(2)(B). The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means. ... The notice must clearly and concisely state in plain, easily understood language:
> (i)      the nature of the action;
> (ii)     the definition of the class certified;
> (iii)    the class claims, issues, or defenses;
> (iv)     that a class member may enter an appearance through an attorney if the member so desires;

24

> (v)    that the court will exclude from the class any member who requests exclusion;
>
> (vi)    the time and manner for requesting exclusion; and
>
> (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

*Fitzgerald v. P.L. Mktg.*, 2020 U.S. Dist. LEXIS 25672, at *35 (W.D. Tenn. Feb. 13, 2020).

The long-form and short-form Class Notices provide all of the salient information, clearly state that they contain only a summary of the Settlement Agreement, and describe how Class members can obtain additional information regarding the Settlement Agreement. The Notices also refer interested individuals to the Settlement website, where they may access relevant documents or seek further information. Class Members will have the opportunity to make claims, opt-out, or object to the Settlement. (**Ex. 1**, pgs. 10-12). The Class Administrator will provide live telephone support to handle any Class Member inquiries and notice packet requests, and Class Counsel will also be available to answer questions. (**Ex. 2**, ¶8-9). Plaintiffs ask that the Court order that Class Members must submit any opt-out requests or objections within 45 days of the Notice Date, and must submit any claims within 60 days of the Notice Date. (**Ex. 1**, pg. 3, ¶1(t), (v)). Prior to the required Fairness Hearing, Class Counsel will file all objections with the Court, as well as a list of those who have opted out and will therefore be excluded from the Class. Plaintiffs will then seek final approval of the Settlement, at which time the Court can consider the Class's response thereto. (**Ex. 1**, pg. 12, ¶12). The Class Notice and Notice Plan should therefore be approved.

## VI.    CONCLUSION

WHEREFORE, Plaintiffs request that this Honorable Court enter an order preliminarily approving the Settlement Agreement, substantially in the form attached to the Settlement Agreement as **Exhibit 6.**

Respectfully submitted,

Dated: April 23, 2021                                  *s/ Nicholas A. Coulson*

Steven D. Liddle
Nicholas A. Coulson
**LIDDLE & DUBIN PC**
975 E. Jefferson Avenue
Detroit, MI 48207
Tel: (313) 392-0015
Fax: (313) 392-0025
sliddle@ldclassaction.com
ncoulson@ldclassaction.com

*Attorneys for Plaintiffs and Proposed
Class Counsel*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that Plaintiffs' Unopposed Motion for Preliminary Approval complies with the type-volume limitation pursuant to W.D. Mich. LCivR 7.2(b)(i). The brief contains 8,106 words of 12-point type. The word processing software used to prepare this brief was Microsoft Word 365 version 1908.

Dated: April 23, 2021

/s/ Nicholas A. Coulson
Nicholas A. Coulson

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on April 23, 2021 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses denoted on the Electronic Mail notice list.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: April 23, 2021

/s/ Nicholas A. Coulson
Nicholas A. Coulson