Exhibit 1- Settlement Agreement

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| DAVID DYKEHOUSE, KRISTINA BOSKOVICH, and ELIZABETH HAMBLIN, on behalf of themselves and all others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 1:18-cv-01225 |
| vs. | ) ) ) | Hon. Hala Y. Jarbou |
| THE 3M COMPANY, GEORGIA-PACIFIC LLC, and GEORGIA-PACIFIC CONSUMER PRODUCTS LP, | ) ) ) ) | |
| Defendants. | ) ) | |

## CLASS SETTLEMENT AGREEMENT

This Class Settlement Agreement is entered into as of the 22nd day of April, 2021, by and among Plaintiffs, on behalf of themselves and the Class Members, and Defendants.

## RECITALS

WHEREAS, Plaintiffs have asserted claims against Defendants in this Action on behalf of a putative but not certified class of residents serviced by the Parchment Water System;

WHEREAS, Plaintiffs allege that Defendants are liable under various tort theories for various damages and other relief based on the presence of certain PFAS in the Parchment Water System;

WHEREAS, Plaintiffs allege that PFAS present in the Parchment Water System came from the Site, which Plaintiffs allege Georgia-Pacific or affiliates formerly owned or operated;

WHEREAS, Plaintiffs allege that 3M manufactured certain PFAS-containing products used at the Site;

WHEREAS, Defendants have denied and continue to deny any wrongdoing in connection with any PFAS present in the Parchment Water System and any liability in connection with Plaintiffs' claims, and they dispute the scientific, factual, legal, and other bases for Plaintiffs' claims and the appropriateness of certifying a class action for litigation; and

WHEREAS, after carefully considering the facts and applicable law and the risks, costs, delay, and uncertainty of continued litigation, and after engaging in extensive, arm's-length negotiations, with the assistance of a Court-appointed mediator, the Parties desire to settle the

Action and the related claims of Plaintiffs and the Class on the terms and conditions stated herein, which Plaintiffs and Class Counsel believe are fair, reasonable, adequate, and beneficial to and in the best interests of the Class Members;

NOW THEREFORE, subject to approval by the Court pursuant to Federal Rule of Civil Procedure 23, the Parties hereby agree that, in consideration of the promises and mutual covenants set forth in this Agreement and upon occurrence of the Effective Date, the Action and the related claims of Plaintiffs and the Class shall be settled, compromised, dismissed, and released on the following terms and conditions:

1. **Definitions**

   a. **"3M"** means the 3M Company.

   b. **"Action"** means the putative class action lawsuit captioned *David Dykehouse et al. v. 3M Company et al.*, No. 1:18-cv-01225, currently pending in the Court.

   c. **"Agreement"** means the Class Settlement Agreement between and among the Parties, including all exhibits thereto.

   d. **"CAFA Notice"** means the notice to be disseminated to appropriate federal and state officials pursuant to the requirements of 28 U.S.C. § 1715(b) and in accordance with Section 8 of this Agreement.

   e. **"Class"** means all Persons who (i) owned, leased, rented, or resided in homes or residential properties serviced by the Parchment Water System as of July 26, 2018; and (ii) have not brought individual actions for personal injury or illness based on exposure to PFAS present in the Parchment Water System; provided, however, that the "Class" shall not include (i) Defendants, their corporate officers, or their legal counsel in this Action; (ii) Class Counsel, including its partners, members, and shareholders; or (iii) the judge to whom this Action is assigned, any member of the judge's immediate family, or any other judicial officer assigned to this case.

   f. **"Class Administrator"** means the Person or Persons that will perform duties related to dissemination of Class Notice and administration of the Settlement Fund and the Settlement Class Allocation Plan in accordance with this Agreement.

   g. **"Class Counsel"** means Liddle & Dubin, P.C.

   h. **"Class Member"** means a member of the Class.

   i. **"Class Notice"** means the notice of the Settlement that will be provided to Class Members in accordance with Section 9 of this Agreement, which notice will be proposed in substantially the same form as the Exhibit 1 to this Agreement.

   j. **"CMS"** means Centers for Medicare and Medicaid Services.

k. **"Court"** means the United States District Court for the Western District of Michigan, the Honorable Hala Y. Jarbou presiding.

l. **"Defendants"** means 3M and Georgia-Pacific.

m. **"Effective Date"** means the date on which all opportunities for appellate review of the Final Approval Order have expired or been exhausted without the Final Approval Order having been reversed, vacated, or otherwise overturned in whole or in part.

n. **"Fairness Hearing"** means the hearing at which the Court will consider whether to give final approval to the Settlement and make such other rulings as are contemplated for the Final Approval Order.

o. **"Final Approval Order"** means the Court's order (a) granting final approval to the Settlement; (b) directing that the Agreement be implemented in accordance with its terms; (c) dismissing the Action with prejudice; (d) ruling that each of the Releasing Parties has expressly, intentionally, fully, finally, and forever released, waived, compromised, settled, and discharged all Released Claims; (e) barring each of the Releasing Parties from asserting any of the Released Claims against any of the Released Parties; (f) awarding any attorneys' fees, costs, and expenses payable in connection with the Settlement or the Action; (g) finding that the Class Notice complied with Federal Rule of Civil Procedure 23 and the U.S. Constitution; (h) establishing and approving the Settlement Fund; and (i) reserving exclusive and continuing jurisdiction over the Settlement Fund and the interpretation, performance, implementation, administration, and enforcement of this Agreement and the Court's orders in the Action; which such order will be proposed in substantially the same form as agreed upon by the Parties and attached as an exhibit to Plaintiffs' motion for preliminary approval of the Settlement.

p. **"Georgia-Pacific"** means Georgia-Pacific LLC and Georgia-Pacific Consumer Products LP.

q. **"Net Settlement Fund"** means the portion of the Settlement Fund available for payment to the Settlement Class Members after the payment of notice costs, administration costs, attorneys' fees, any tax-related expenses, and other costs and expenses payable from the Settlement Fund.

r. **"Notice Date"** means the date by which the Class Administrator must commence delivery of the Class Notice.

s. **"Opt Out"** means the choice of a Class Member to exclude himself, herself, or itself from the Settlement in accordance with Section 10 of this Agreement.

t. **"Opt Out Deadline"** means the deadline to Opt Out set by the Court or, if the Court sets no such deadline, forty-five (45) days after the Notice Date.

u. **"Objection"** means a challenge to the Settlement asserted by a Class Member pursuant to Section 11 of this Agreement.

v.  **"Objection Deadline"** means the deadline to submit an Objection set by the Court or, if the Court sets no such deadline, forty-five (45) days after the Notice Date.

w.  **"Parchment Water System"** mean the municipal water system for the City of Parchment, Michigan, including the sources of water for the system.

x.  **"Party"** means any one of the Plaintiffs or any one of the Defendants.

y.  **"Parties"** means all of the Plaintiffs, on behalf of themselves and the Class Members, and all of the Defendants.

z.  **"Person"** means a natural person, corporation, association, limited liability company, partnership, limited partnership, joint venture, affiliate, any other type of private entity, states, counties, municipalities, any other public or quasi-public entity, or their respective spouses, heirs, predecessors, successors, executors, administrators, representatives, or assigns.

aa.  **"PFAS"** means, for purposes of this Agreement only, any fluorinated organic substance that contains one or more carbon atoms on which at least one of the hydrogen substituents has been replaced by a fluorine atom. For purposes of this Agreement, the definition of "PFAS" is intended to be as broad and inclusive as possible and includes, without limitation, all per- and poly-fluoroalkyl substances and their chemical precursors and degradants, as well as all products manufactured with or containing such substances, precursors, or degradants.

bb.  **"Plaintiffs"** means David Dykehouse, Kristina Boskovich, and Elizabeth Hamblin.

cc.  **"Preliminary Approval Order"** means the Court's order (i) granting preliminary approval to the Settlement; (ii) approving the Class Notice; (iii) certifying the Settlement Class under Federal Rule of Civil Procedure 23; (iv) appointing Plaintiffs as class representatives; (v) appointing Class Counsel to represent the Settlement Class; and (vi) setting the Opt Out Deadline, the Objection Deadline, the date and time for the Fairness Hearing, and other appropriate deadlines; which such order will be proposed in substantially the same form as agreed upon by the Parties and attached as an exhibit to Plaintiffs' motion for preliminary approval of the Settlement.

dd.  **"Released Claims"** shall have the meaning set forth in Section 4(b) of this Agreement.

ee.  **"Released Parties"** means Defendants and their parents, subsidiaries, divisions, affiliated business entities, predecessors, successors, and all of their agents, employees, officers, directors, partners, shareholders, owners, members, promoters, representatives, distributors, trustees, attorneys, insurers, subrogees, and assigns, individually or in their corporate or personal capacity.

ff.  **"Releasing Parties"** means the Settlement Class Members and their parents, subsidiaries, divisions, affiliated business entities, predecessors, successors, and all of their agents, employees, officers, directors, partners, shareholders, owners,

members, promoters, representatives, trustees, executors, heirs, attorneys, insurers, subrogees, and assigns, individually or in their corporate or personal capacity, and anyone acting on their behalf, including in a representative or derivative capacity.

gg. **"Settlement"** means the settlement and compromise reflected in this Agreement.

hh. **"Settlement Class"** means Class Members that do not Opt Out.

ii. **"Settlement Class Allocation Plan"** means the plan for allocating and distributing the Net Settlement Fund to and among Settlement Class Members.

jj. **"Settlement Class Members"** means members of the Settlement Class.

kk. **"Settlement Fund"** means the fund or account established pursuant to and approved by an order of the Court to resolve and satisfy the Released Claims as a qualified settlement fund within the meaning of 26 C.F.R. § 1.468B-1(a) and (c), at Class Counsel's expense (subject to Court-approved reimbursement from the Settlement Fund), to receive the Total Settlement Payment and make payments authorized by this Agreement.

ll. **"Site"** means the paper mill, landfills, wastewater treatment system (including lagoons and/or detention ponds), disposal areas, surface and/or subsurface drainage pathways, and all associated facilities, formerly owned or operated by Crown Vantage and/or its predecessors, in Parchment and/or Cooper Township, Michigan.

mm. **"Total Settlement Payment"** means the total payment that the Defendants collectively are to make in accordance with Section 2(a) of this Agreement.

2. **Settlement Payment and Settlement Fund**

a. Within seventy-five (75) days after the Effective Date, Defendants shall pay or cause to be paid a total of $11,900,000.00 into the Settlement Fund.

b. In connection with the motion for preliminary approval of the Settlement, Class Counsel shall develop and propose a Settlement Class Allocation Plan for approval by the Court.

c. Class Counsel shall select an independent, third-party Class Administrator to administer the Settlement Fund and the Settlement Class Allocation Plan.

d. All fees, costs, and expenses incurred in the administration of the Settlement Fund and the Settlement Class Allocation Plan, including fees, costs, and expenses of the Class Administrator, shall be paid solely from the Settlement Fund.

e. In no event shall Defendants or their counsel have any liability for the administration of the Settlement Fund or the Settlement Class Allocation Plan or for acts or omissions of the Class Administrator.

f. The Settlement Fund at all times is intended to be a "qualified settlement fund" within the meaning of United States Treasury Regulation § 1.468B-1, 26 C.F.R. § 1.468B-1 and shall be established pursuant to an order of the Court and will be subject to the continuing jurisdiction of Court for the life of the Settlement Fund. Neither the Parties nor the Class Administrator shall take a position in any filing or before any tax authority that is inconsistent with such treatment. Each of the Defendants is a "transferor" within the meaning of United States Treasury Regulation § 1.468B-1(d)(1) to the Settlement Fund. The Class Administrator shall be the "administrator" of the Settlement Fund within the meaning of United States Treasury Regulation § 1.468B-2(k)(3) and, as the administrator, the Class Administrator shall: (a) timely make or join in any and all filings or elections necessary to make the Settlement Fund a qualified settlement fund at the earliest possible date (including, if requested by any of the Defendants, a relation-back election within the meaning of United States Treasury Regulation § 1.468B-1(j)); (b) timely file all necessary or advisable tax returns, reports, or other documentation required to be filed by or with respect to the Settlement Fund; (c) timely pay any taxes (including any estimated taxes, and any interest or penalties) required to be paid by or with respect to the Settlement Fund; and (d) comply with any applicable information reporting or tax withholding requirements imposed by applicable law, in accordance with United States Treasury Regulation § 1.468B-2(l). Any such taxes, as well as all other costs incurred by the Class Administrator in performing the obligations created by this subsection, shall be paid out of the Settlement Fund. The Defendants shall have no responsibility or liability for paying such taxes and no responsibility to file tax returns with respect to the Settlement Fund or to comply with information -reporting or tax -withholding requirements with respect thereto. Defendants shall provide the Class Administrator with the combined statement described in United States Treasury Regulation § 1.468B-3(e)(2)(ii).

g. Defendants are making no representations to Class Members concerning any tax consequences or treatment of any allocation or distribution of funds to Class Members pursuant to this Agreement, the Settlement, or the Settlement Class Allocation Plan.

h. The Total Settlement Payment constitutes remediation (as defined in 26 U.S.C. § 162(f)) for the claims alleged by Plaintiffs on behalf of themselves and the Class Members. No portion of the Total Settlement Payment constitutes a fine, penalty, punitive damages, disgorgement of profits, reimbursement for investigation or litigation costs, or an amount paid in settlement of any claim for any of the foregoing; and if a determination were made to the contrary, the amounts paid would qualify under the exceptions in Subsections 162(f)(2) and (3).

i. The Total Settlement Payment shall not be used, in whole or in part, to fund or create any medical monitoring program for Class Members.

**3. Attorneys' Fees, Costs, Expenses, and Incentive Awards**

    a.  Class Counsel may request an award of attorneys' fees, costs, or expenses related to the Action and the Settlement

    b.  No later than twenty-one (21) days prior to the Objection Deadline, Class Counsel shall file with the Court any request for an award of attorneys' fees, costs, or expenses related to the Action and the Settlement.

    c.  A decision by the Court to grant less than the requested amount of attorneys' fees, costs, or expenses does not provide grounds for termination or amendment of this Agreement, does not prevent entry of a Final Approval Order, and does not provide grounds for opposing or challenging final approval of the Settlement.

    d.  Plaintiffs may request, and Defendants will not oppose, incentive awards of no more than $5,000 for each class representative.

    e.  Any award of attorneys' fees, costs, expenses, or incentive awards related to the Action or the Settlement shall be paid solely from the Settlement Fund.

    f.  Beyond their obligations to make the Total Settlement Payment, in no event shall any of the Defendants have any liability for any attorneys' fees, costs, expenses, or incentive awards related to the Action or the Settlement, aside from that Defendant's own attorneys' fees, costs, or expenses.

**4. Dismissal, Release of Claims, and Related Provisions**

    a.  <u>Dismissal.</u> In the motion for final approval of the Settlement, Plaintiffs, on behalf of themselves and the Class, shall request that the Final Approval Order dismiss the Action with prejudice.

    b.  <u>Release.</u> Upon the Effective Date, the Releasing Parties shall have expressly, intentionally, voluntarily, fully, finally, irrevocably, and forever released, waived, compromised, settled, and discharged the Released Parties from each and every past, present, and future claim and cause of action—whether direct or indirect, in law or in equity, or for compensatory damages, consequential damages, incidental damages, statutory damages, punitive or exemplary damages, nominal damages, disgorgement, restitution, indemnity, contribution, penalties, injunctive relief, declaratory relief, attorneys' fees, court costs, or expenses—that were or could have been asserted in the Action (the "Released Claims"), including but not limited to any claims or causes of action (i) arising from or related to the alleged presence of any chemical in the environment (including in any municipal water system) that is currently known or alleged to be related in any way to the Site, including any such chemical present as a result of disposal at the Site's landfills or any other area in the vicinity of the Site, and any exposure of any Settlement Class Member to such chemicals through drinking water or otherwise; (ii) for any type of relief with respect to the installation, maintenance, or operation of, and cost associated with, whole-house filters, point-of-use filters, municipal water, alternative water supplies, or remediation for any

Settlement Class Member or any residential property serviced by the Parchment Water System; (iii) for property damage or property-value diminution purportedly attributable to the alleged presence of PFAS in Parchment Water System or on property in or around Parchment, Michigan; and (iv) based on exposure to PFAS, including PFAS in the blood or tissue of any Settlement Class Member; provided, however, that the "Released Claims" do not include any individual claims of the Releasing Parties (i) for any damages whatsoever (including for screenings, tests, examinations, and/or diagnostic procedures) related to past, present, or future manifested bodily injuries that have resulted in a medically diagnosed condition; or (ii) to enforce the terms of this Agreement or the Final Approval Order.

c. <u>No Waiver of Defenses.</u> Defendants do not waive or forfeit any defenses or arguments that they could assert as to any claims or causes of action that are outside the definition of "Released Claims."

d. <u>Exclusive Remedy.</u> The relief provided for in this Agreement shall be the sole and exclusive remedy for all Releasing Parties with respect to any Released Claims, and the Released Parties shall not be subject to liability or expense of any kind with respect to any Released Claims other than as set forth in this Agreement.

e. <u>Covenant Not To Sue.</u> Each of the Releasing Parties shall forever refrain from instituting, maintaining, prosecuting, or continuing any suit, action, or proceeding against any of the Released Parties with respect to the Released Claims.

f. <u>Waiver of Statutory Rights.</u> To the extent the provisions apply, the Releasing Parties expressly, knowingly, and voluntarily waive the provisions of Section 1542 of the California Civil Code, which provides as follows:

> **A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.**

To the extent the provisions apply, the Releasing Parties likewise expressly, knowingly, and voluntarily waive the provisions of Section 20-7-11 of the South Dakota Codified Laws, which provides:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.**

To the extent the laws apply, the Releasing Parties expressly waive and relinquish all rights and benefits that they may have under, or that may be conferred upon them by, Section 1542 of the California Civil Code, Section 20-7-11 of the South Dakota Codified Laws, and all similar laws of other States, to the fullest extent that they may lawfully waive such rights or benefits pertaining to the Released Claims. In

connection with such waiver and relinquishment, the Releasing Parties acknowledge that they are aware that they or their attorneys may hereafter discover claims or facts in addition to or different from those that they now know or believe to exist with respect to the Released Claims, but that it is their intention to accept and assume that risk and fully, finally, and forever release, waive, compromise, settle, and discharge all of the Released Claims against Released Persons. The release thus shall remain in effect notwithstanding the discovery or existence of any additional or different claims or facts.

## 5.  No Admission of Wrongdoing or Liability

a.  Defendants do not admit or concede any liability or wrongdoing, acknowledge any validity to the claims asserted in the Action, acknowledge that certification of a litigation class is appropriate as to any claim, or acknowledge any weakness in the defenses asserted in the Action, and nothing in this Agreement, the Preliminary Approval Order, or the Final Approval Order shall be interpreted to suggest anything to contrary.

b.  Nothing in this Agreement, any negotiations, statements, communications, proceedings, filings, or orders relating thereto, or the fact that the Parties entered the Agreement and settled the Action shall be construed, deemed, or offered as an admission or concession by any of the Parties or Class Members or as evidentiary, impeachment, or other material available for use or subject to discovery in any suit, action, or proceeding (including this Action), except (i) as required or permitted to comply with or enforce the terms of this Agreement, the Preliminary Approval Order, or the Final Approval Order, or (ii) in connection with a defense based on *res judicata,* claim preclusion, collateral estoppel, issue preclusion, release, or other similar theory asserted by any of the Released Parties.

## 6.  Preliminary Approval

a.  No later than April 16, 2021, and following conferral with Defendants, Plaintiffs shall file a motion for preliminary approval of the Settlement and entry of the Preliminary Approval Order, which Defendants will not oppose.

b.  The motion for preliminary approval shall ask the Court to enter the following schedule: (i) a Notice Date of no more than twenty-eight (28) days after entry of the Preliminary Approval Order; (ii) an Opt Out Deadline of forty-five (45) days after the Notice Date; (iii) an Objection Deadline of forty-five (45) days after entry of the Preliminary Approval Order; (iv) a deadline for Class Counsel to file any requests for attorneys' fees, costs, or expenses related to the Action or the Settlement of twenty-one (21) days prior to the Objection Deadline; (v) a deadline for filing a motion for final approval of fourteen (14) days prior to Fairness Hearing; (vi) a Fairness Hearing to be held as early as practicable but no earlier than one-hundred-twenty (120) days after entry of the Preliminary Approval Order.

    c. Plaintiffs shall provide Defendants with a draft of the motion for preliminary approval at least seven (7) days before it is filed.

**7. Class Certification**

    a. In the motion for preliminary approval of the Settlement, Plaintiffs shall propose certification of the Class, solely for purposes of the Settlement, pursuant to Federal Rules of Civil Procedure 23(b)(3) and 23(e), with Plaintiffs as the proposed class representatives, which Defendants will not oppose.

    b. If this Agreement is terminated or the Court (or an appellate court) declines to approve the Settlement as proposed by the Plaintiffs, Defendants shall retain all of the rights to oppose class certification (and assert all other arguments and defenses) that they had prior to execution of this Agreement.

    c. Nothing in this Agreement, the Settlement, or the orders, filings, proceedings, or negotiations related to this Agreement or the Settlement (i) may be used as evidence or argument concerning whether the Action or any other lawsuit may be certified as a class action for purposes of litigation; or (ii) shall prejudice Defendants' rights to oppose class certification, for purposes of litigation, in the Action or any other lawsuit.

**8. CAFA Notice**

    a. Within ten (10) days after Plaintiffs file the motion for preliminary approval of the Settlement, each Defendant shall provide CAFA Notice to the appropriate officials of the United States and the State of Michigan.

    b. When each Defendant provides CAFA Notice in accordance with Section 8(a) of this Agreement, it shall provide copies of the CAFA Notice to Plaintiffs.

**9. Class Notice**

    a. In the motion for preliminary approval of the Settlement, Plaintiffs shall ask the Court to approve a proposed Class Notice for dissemination through the means described in the motion and accompanying exhibits.

    b. Unless the Court orders otherwise, the Class Notice shall fairly and adequately: (i) describe the terms of this Agreement and the Settlement; (ii) give notice of the time and place of the Fairness Hearing; (iii) describe how a Class Member may submit an Objection and the deadline for doing so; (iv) describe how a Class Member may Opt Out and the deadline for doing so; and (v) otherwise satisfy the notice requirements of Federal Rule of Civil Procedure 23(e) and the U.S. Constitution.

    c. Unless the Court orders otherwise, the Class Administrator shall commence issuing the Class Notice to Class Members pursuant to the Class Notice plan no later than twenty-eight (28) days after entry of the Preliminary Approval Order.

d.  The costs of Class Notice, including the related fees, costs, and expenses of the Class Administrator, shall be paid solely from the Settlement Fund, either directly or through reimbursement for any payments advanced by Class Counsel for such costs.

## 10. Opt Outs

a.  A Class Member may Opt Out by submitting to the Class Administrator a timely and valid request that complies with the Opt Out procedure described in the Class Notice.

b.  Any Class Member that submits a timely and valid Opt Out request shall not (i) be bound by any orders or judgments entered in the Action; (ii) be entitled to any of the relief or other benefits provided under this Agreement; (iii) gain any rights by virtue of this Agreement; or (iv) be entitled to submit an Objection.

c.  Any Class Member that does not submit a timely and valid Opt Out request submits to the jurisdiction of the Court and shall be bound by the terms of this Agreement and by all orders and judgments in the Action.

d.  To be timely and valid, an Opt Out request must have a verified submission date on or before the Opt Out Deadline and must include (i) the full name, current address, and telephone number of the requestor; (ii) a statement of the facts that make the requestor a Class Member; (iii) a statement requesting exclusion from the Class; and (iv) the signature of the requestor.

e.  No "mass" or "class" Opt Out requests shall be valid, and no Class Member may submit an Opt Out request on behalf of any other Class Member.

f.  Any Class Member that submits an Opt Out request may revoke the request by submitting to the Class Administrator a statement of revocation with a verified submission date no later than forty-two (42) days before the Fairness Hearing; provided, however, that Class Counsel shall have discretion to extend this deadline on a case-by-case basis.

g.  As soon as practicable and no later than thirty (35) days before the Fairness Hearing, the Class Administrator shall furnish the Parties with a final list of all Class Members that have submitted timely and valid Opt Out requests.

## 11. Objections

a.  A Class Member may make an Objection by serving on the Parties a timely and valid statement of Objection that complies with the Objection procedure described in the Class Notice. Class Counsel shall file all such Objections with the Court at least 14 days prior to the Fairness Hearing.

b.  To be timely and valid, a statement of Objection must be postmarked or received on or before the Objection Deadline and must include (i) the full name, current address, and telephone number of the objector; (ii) a statement of the facts that make the objector a Class Member; (iii) a statement describing all of the objector's challenges

to this Agreement or the Settlement and the reasons for those challenges; (iv) all of the papers and evidence the objector intends to submit in support of those challenges; (v) a statement of whether the objector intends to appear at the Fairness Hearing; (vi) the signature of the objector; (vii) a statement that the objector is willing to be deposed, upon request, on a mutually acceptable date at least ten (10) days before the Fairness Hearing; (viii) the caption of each case in which the objector or counsel representing the objector have objected to a class action settlement within the preceding five years and a copy of all orders related to or ruling upon those objections; and (ix) all agreements that relate to the Objection, whether written or verbal, between or among the objector, counsel for the objector, and/or any other Person.

c.  No "mass" or "class" Objections shall be valid, and no Class Member may submit a statement of Objection on behalf of any other Class Member.

d.  Unless the Court orders otherwise, only those Class Members whose statements of Objection express an intention to appear at the Fairness Hearing shall have the right to present their Objections orally at the Fairness Hearing.

e.  A Class Member that does not submit a timely and valid Objection shall have waived, and shall be foreclosed from making, any challenge to this Agreement or the Settlement in the Action or any other proceeding.

## 12. Final Approval

a.  Unless the Court orders otherwise or the Agreement has been terminated under Section 16 of this Agreement, no later than fourteen (14) days before the Fairness Hearing, and following conferral with Defendants, Plaintiffs shall file a motion for final approval of the Settlement and entry of the Final Approval Order, which Defendants will not oppose.

b.  Plaintiffs shall provide Defendants with a draft of the motion for final approval at least seven (7) days before it is filed.

c.  At the Fairness Hearing, the Parties will use their reasonable best efforts to support approval of the Settlement and entry of the requested Final Approval Order.

d.  If the Court enters the requested Final Approval Order without material change, the Parties will use their reasonable best efforts to defend Final Approval Order from challenge on appeal or otherwise.

e.  If the Court enters the requested Final Approval Order without material change, no Party will institute, support, or encourage any appeal from the Final Approval Order.

## 13. Representations and Warranties

a.  Plaintiffs represent and warrant to Defendants as follows:

     i.   Each of the Plaintiffs is a Class Member.

    ii.   Each of the Plaintiffs has received legal advice from Class Counsel regarding the advisability of entering into this Agreement and the legal consequences of this Agreement.

   iii.   No portion of any of the Released Claims possessed by any of the Plaintiffs and no portion of any relief under this Agreement to which any of the Plaintiffs may be entitled has been assigned, transferred, or conveyed by or for any of the Plaintiffs to any other Person, except pursuant to any contingency fee agreement with Class Counsel.

   iv.   None of the Plaintiffs is relying on any statement, representation, omission, inducement, or promise by any of the Defendants, their agents, or their representatives, except those expressly stated in this Agreement.

    v.   Each of the Plaintiffs, through Class Counsel, has investigated the law and facts pertaining to the Released Claims and the Settlement.

   vi.   Each of the Plaintiffs has carefully read, and knows and understands, the full contents of this Agreement and is voluntarily entering into this Agreement after having consulted with Class Counsel or other attorneys.

   vii.   Each of the Plaintiffs has all necessary competence and authority to enter into this Agreement on his or her own behalf and on behalf of the Class.

  viii.   None of the Plaintiffs will Opt Out or file an Objection.

b.  Class Counsel represents and warrants to Defendants as follows:

    i.   Class Counsel believes the Settlement is fair, reasonable, adequate, and beneficial to each Class Member and that participation in the Settlement would be in the best interests of each Class Member.

   ii.   Class Counsel does not currently represent any client or clients that plan to, or are considering whether to, Opt Out, file an Objection, or otherwise challenge the Settlement.

  iii.   Class Counsel recognizes the risk that they could have a conflict of interest if they represented (directly or indirectly) any client in connection with an effort to Opt Out, file an Objection, or otherwise challenge the Settlement.

  iv.   Because Class Counsel believes that the Settlement is in the best interests of each Class Member, Class Counsel will not solicit, or assist others in soliciting, Class Members to Opt Out, file an Objection, or otherwise challenge the Settlement.

     v.   Class Counsel has all necessary authority to enter into and execute this Agreement on behalf of Plaintiffs and the Class.

     vi.   Each of the Plaintiffs has approved and agreed to be bound by this Agreement.

     vii.  The representations in Section 13(a) of this Agreement are true and correct to the best of Class Counsel's knowledge.

c.   Defendants represent and warrant to Plaintiffs as follows:

     i.   Each of the Defendants has received legal advice from its attorneys regarding the advisability of entering into this Agreement and the legal consequences of this Agreement.

     ii.  None of the Defendants is relying on any statement, representation, omission, inducement, or promise by Plaintiffs, Class Members, or Class Counsel, except those expressly stated in this Agreement.

     iii.  Each of the Defendants, with the assistance of its attorneys, has investigated the law and facts pertaining to the Released Claims and the Settlement.

     iv.  Each of the Defendants has carefully read, and knows and understands, the full contents of this Agreement and is voluntarily entering into this Agreement after having consulted with its attorneys.

     v.   Each of the Defendants has all necessary authority to enter into this Agreement, has authorized the execution and performance of this Agreement, and has authorized the Person signing this Agreement on its behalf to do so.

## 14. Liens and Medicare Obligations

a.   Any liens or subrogation interests as to any damage to real property or other property of a Settlement Class Member shall be the responsibility of that Settlement Class Member.

b.   Any liens or subrogation interests as to any costs, expenses, or fees incurred by a Settlement Class Member in connection with any alleged exposure to PFAS shall be the responsibility of that Settlement Class Member.

c.   Nothing in this Agreement is intended to create or give rise to any liens or subrogation claims not otherwise provided by law or contract.

d.   Due to the nature of the claims at issue in the Action and the Released Claims, the Parties agree that the Settlement does not give rise to any reporting requirements under Section 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007, and therefore that no party will make any such report.

e.  The Parties have sought to draft this Settlement to avoid any impacts to the rights of any public or private program (e.g. Medicare) or to Settlement Class Members' rights thereunder. However, by choosing to not Opt Out, Settlement Class Members acknowledge that (i) the Settlement could impact, limit, or preclude their rights to receive certain future Medicare benefits arising out of the allegations in this lawsuit ; and (ii) they want to proceed with the Settlement and voluntarily waive any and all claims against Defendants for denial of Medicare benefits related to the Settlement.  It is understood that the intent of this Agreement is that the Releasing Parties will protect, defend, and hold the Released Parties harmless from any future or further payments or exposure with regard to the matters addressed in this Settlement, including but not limited to claims for reimbursement of public or private medical insurance benefits paid on behalf of the Releasing Parties. The Releasing Parties voluntarily waive any and all claims of any nature against Defendants related to any effort by Medicare or a Medicare Advantage Organization to demand payment of covered medical expenses that are asserted to be related to this Settlement, including but not limited to a private cause of action under 42 U.S.C. § 1395y(b)(3)(A).

f.  The Parties have considered Medicare's interest in any potential Medicare covered medical expenses occurring before or after the Effective Date. The Parties are satisfied that no allocation for expenses to protect Medicare's interest now or in the future is necessary and will not allocate any amount of the proceeds of this Settlement for past or future medical expenses, but reserve the right to do so in the future if necessary and appropriate in the sole discretion of the Class Administrator.

## 15. Amendment of Agreement

a.  The Parties may agree to amend this Agreement for any reason at any time.

b.  Prior to entry of the Final Approval Order, this Agreement may be amended only by a writing executed by all Parties.

c.  After entry of the Final Approval Order, this Agreement may be amended only by a writing executed by all Parties and approved by the Court.

## 16. Termination of Agreement

a.  Any of the Parties may terminate this Agreement if any of the following events happen: (i) the Court declines to approve any part of the Settlement; (ii) the Court declines to approve or changes a material term of the requested Preliminary Approval Order or the requested Final Approval Order; (iii) an appellate court reverses, vacates, or otherwise overturns the Final Approval Order in whole or in part; or (d) another of the Parties materially breaches this agreement before the Effective Date and fails to promptly cure the breach after receiving written notice of the breach; provided, however, that none of the Parties may terminate this Agreement because the Court or any appellate court awards less than the requested amount of attorneys' fees, costs, and expenses.

b.  Any Defendant may terminate this Agreement if more than twenty (20) Class Members Opt Out (according to the Opt Out list provided by the Class Administrator pursuant to Section 10(g) of this Agreement).

c.  In order to exercise a right to terminate this Agreement, a Party must deliver written notice of termination to counsel for all other Parties within ten (10) days after the later of the event creating the right to terminate or the Party learning of the event creating the right to terminate, unless that deadline is extended by written consent of counsel for all Parties.

d.  If a Party exercises a right to terminate this Agreement, (i) the Parties shall have thirty (30) days to resume settlement negotiations and determine if the Parties can reach an amended agreement; (ii) all deadlines under this Agreement shall be stayed for the duration of the negotiations; (iii) the Parties shall jointly request a stay of all Court deadlines for the duration of the negotiations; and (iv) the Parties shall jointly advise the Court of the status of this Agreement or any amendment to Agreement within seven (7) days after the conclusion of the thirty-day negotiation period.

e.  Unless the Parties agree otherwise in writing, thirty-one (31) days after a Party exercises a right to terminate this Agreement:

   i.  The Agreement (except for Sections 5(a), 5(b), 7(b), 7(c), 16(a)-16(e), 17(a), 17(c), 18(a)-18(p)) shall become null and void and of no further force and effect.

   ii.  The Action shall resume as if the Parties never entered into the Agreement.

   iii.  The Parties shall jointly move to vacate any orders entered in connection with the Settlement.

   iv.  The Parties shall jointly move for the entry of a scheduling order establishing procedures and deadlines for, among other things, discovery, class certification motions and hearing, dispositive motions, and trial;

   v.  The Agreement (except for Sections 5(a), 5(b), 7(b), 7(c), 16(a)-16(e), 17(a), 17(c), 18(a)-18(p)), any negotiations, statements, communications, or proceedings relating thereto, and the fact that the Parties agreed to the Agreement shall not be offered as an admission or concession by any of the Parties or Class Members or as evidentiary, impeachment, or other material available for use or subject to discovery in any suit, action, or proceeding (including this Action).

f.  If a Party breaches the Agreement after the Effective Date, none of the Parties may terminate the Agreement and any aggrieved Parties may seek relief only from the breaching Party. In no event shall any non-breaching Party have any liability arising out of or related to a breach of the Agreement by any other Party.

**17. Publicity and Confidentiality**

    a.   The Parties, Class Counsel, counsel for Defendants, and the Class Administrator shall keep strictly confidential and not disclose to any third party any non-public information received during litigation of the Action or negotiation or implementation of the Settlement.

    b.   No later than one-hundred-eighty (180) days after the Effective Date, Class Counsel, on behalf of Plaintiffs and the Class, and the Class Administrator shall return or destroy (and certify in writing that they have destroyed upon a request to so certify) Defendants' confidential documents produced in connection with the Action, settlement discussions, or the negotiation or performance of this Agreement.

    c.   Except as authorized by this Agreement or the Court, the Parties and their counsel shall issue no publicity, press release, or other public statement regarding the Settlement unless jointly agreed to in writing by all Parties; provided, however, that nothing in this provision shall limit (i) Defendants' ability to provide information about the Settlement to their employees, accountants, lawyers, insurers, customers, shareholders, or other stakeholders or in accordance with legal requirements (including the rules of securities exchanges); (ii) Plaintiffs' or Class Members' ability to provide information about the Settlement to their accountants, lawyers, or insurers, to Class Members, or in accordance with legal requirements; or (iii) Class Counsel's ability to provide information about the Settlement to Class Members (including through Class Counsel's website) or in accordance with legal requirements.

**18. Miscellaneous**

    a.   <u>Jurisdiction and Venue.</u> The United States District Court for the Western District of Michigan shall retain jurisdiction over the Parties and Class Members to interpret, implement, administer, and enforce the terms of this Agreement and resolve any dispute regarding this Agreement, the Settlement, the Preliminary Approval Order, or the Final Approval Order. All proceedings related to this Agreement, the Settlement, the Preliminary Approval Order, or the Final Approval Order shall be initiated and maintained in the United States District Court for the Western District of Michigan.

    b.   <u>Governing Law.</u> The Agreement shall be governed by and construed in accordance with the law of the State of Michigan without regard for conflict-of-laws principles.

    c.   <u>Entire Agreement.</u> This Agreement constitutes the entire agreement of the Parties with respect to the subject matter thereof, and it supersedes all prior and contemporaneous oral and written agreements and discussions among them on that subject matter (including any aspect of the draft Term Sheet partially negotiated among the Parties). The Settlement is not subject to any condition, representation, warranty, or inducement not expressly provided for herein, and there exist no collateral or oral agreements, promises, conditions, representations, warranties, or inducements among any of the Parties, Class Counsel, Defendants, or counsel for

Defendants relating to the subject matter of the Agreement that supersede or supplement the Agreement.

d.  <u>Construction.</u> This Agreement was drafted jointly by the Parties and, in construing and interpreting this Agreement, no provision of this Agreement shall be construed or interpreted against any of the Parties based upon the contention that this Agreement or a portion of it was purportedly drafted or prepared by one of the Parties.

e.  <u>Captions</u>. Any captions, titles, headings, or subheadings in this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

f.  <u>Deadlines.</u> If the last date for the performance of any action required or permitted by this Agreement falls on a Saturday, Sunday, or Court holiday, that action may be performed on the next business day as if it had been performed within the time period provided for performance of the action.

g.  <u>Reasonable Extensions.</u> Unless the Court orders otherwise, the Parties may agree in writing to any reasonable extensions of time to carry out any of the provisions of this Agreement.

h.  <u>Notices.</u> Any notice, demand, or other communication under this Agreement (other than the Class Notice) shall be in writing and shall be deemed duly given if it is addressed to the intended recipient as set forth below and personally delivered, sent by registered or certified mail (postage prepaid), sent by confirmed email, or delivered by reputable express overnight courier:

<u>To Plaintiffs or Class Members:</u>

Nicholas A. Coulson
Liddle & Dubin, P.C.
975 E. Jefferson Avenue
Detroit, MI 48007
Ncoulson@LDClassaction.com

<u>To 3M:</u>

Laura Hammargren
3M Legal Affairs
3M Center, 220-9E-02
St. Paul, MN 55144-1000
lhammargren@mmm.com

Dan Ring
Mayer Brown LLP
71 South Wacker Dr.
Chicago, IL 60606
dring@mayerbrown.com

To Georgia-Pacific:

Tye Darland
Senior Vice President, General Counsel
Georgia-Pacific LLC
133 Peachtree Street, 24th Floor
Atlanta, GA 30348
tdarland@gapac.com

Janet Ramsey
Warner Norcross + Judd
150 Ottawa Ave. NW, Suite 1500
Grand Rapids, MI 49503

Doug Garrou
Hunton Andrews Kurth LLP
951 E. Byrd St., Suite 200
Richmond, VA 23219

Any notice required to be sent to the Class Administrator shall be delivered to its official business address.

i.  Waiver. The provisions of this Agreement may be waived only by written agreement signed by the waiving party. The waiver by any Party of any breach of this Agreement shall not be deemed to be or construed as a waiver of any other breach of this Agreement.

j.  Duty to Cooperate. The Parties shall cooperate in good faith to take all actions reasonably necessary to effectuate this Agreement.

k.  Severability. The provisions of this Agreement are not severable, except as provided in the Agreement.

l.  Third-Party Beneficiaries. This Agreement does not create any third-party beneficiaries, except Settlement Class Members and the Released Persons other than Defendants, who are intended third-party beneficiaries.

m.  No Liability. No Person shall have any claim against any Plaintiffs, Class Members, Class Counsel, Released Persons, counsel for Defendants, or the Class Administrator based on actions that any Plaintiffs, Class Members, Class Counsel, Released Persons, counsel for Defendants, or the Class Administrator were required or permitted to take under this Agreement, the Preliminary Approval Order, or the Final Approval Order. No Person shall have any claim against any Released Persons or counsel for Defendants related to administration of the Settlement. No Person shall have any claim against Plaintiffs, Class Counsel, or the Class Administrator related to the administration of the Settlement (including making payments to Class Members), except for in the presence of proven willful misconduct.

n.  Force Majeure. The failure of any Party to perform any of its obligations hereunder shall not subject any Party to any liability or remedy for damages, or otherwise, where such failure is occasioned in whole or in part by Acts of God, fires, accidents, pandemics, other natural disasters, interruptions or delays in communications or transportation, labor disputes or shortages, shortages of material or supplies, governmental laws, rules or regulations of other governmental bodies or tribunals, acts or failures to act of any third parties, or any other similar or different circumstances or causes beyond the reasonable control of such Party.

o.  Binding Nature. This Agreement shall be binding upon and inure to the benefit of the Parties, the Class Members, and their respective agents, employees, representatives, heirs, executors, administrators, successors, and assigns.

p.  Execution. This Agreement may be executed in counterparts and shall be binding once all Parties have executed the Agreement.

[Remainder of Page Intentionally Blank]

APPROVED AND AGREED TO:

**Plaintiff David Dykehouse**

*David Dykehouse*
0EB39296B70C41E...

Date: 4/22/2021
_____

**Plaintiff Kristina Boskovich**

714E99A49AFE421...

Date: 4/22/2021
_____

**Plaintiff Elizabeth Hamblin**

D339E79A15844F7...

Date: 4/22/2021
_____

**Class Counsel**

_____
By:
Position:

Date: _____

**Defendant Georgia-Pacific LLC**

_____
By:
Position:

Date: _____

**Defendant Georgia-Pacific Consumer Products LP**

_____
By:
Position:

Date: _____

**Defendant The 3M Company**

_____
By:
Position:

Date: _____

APPROVED AND AGREED TO:

**Plaintiff David Dykehouse**

_____

Date: _____

**Plaintiff Kristina Boskovich**

_____

Date: _____

**Plaintiff Elizabeth Hamblin**

_____

Date: _____

**Class Counsel**

By: Nicholas A. Coulson

Position: Class Counsel

Date: 4/23/21

**Defendant Georgia-Pacific LLC**

_____

By:

Position:

Date: _____

**Defendant Georgia-Pacific Consumer Products LP**

_____

By:

Position:

Date: _____

**Defendant The 3M Company**

_____

By:

Position:

Date: _____

APPROVED AND AGREED TO:

**Plaintiff David Dykehouse**

_____

Date: _____

**Plaintiff Kristina Boskovich**

_____

Date: _____

**Plaintiff Elizabeth Hamblin**

_____

Date: _____

**Class Counsel**

_____

By:
Position:

Date: _____

**Defendant Georgia-Pacific LLC**

_____
By: _Tye Darland_
Position: _SVP/GC_

Date: _4/23/2021_

**Defendant Georgia-Pacific Consumer Products LP**

_____
By: _Tye Darland_
Position: _VP/GC_

Date: _4/23/2021_

**Defendant The 3M Company**

_____
By:
Position:

Date: _____

APPROVED AND AGREED TO:

**Plaintiff David Dykehouse**

_____

Date: _____

**Plaintiff Kristina Boskovich**

_____

Date: _____

**Plaintiff Elizabeth Hamblin**

_____

Date: _____

**Class Counsel**

_____

By:
Position:

Date: _____

**Defendant Georgia-Pacific LLC**

_____

By:
Position:

Date: _____

**Defendant Georgia-Pacific Consumer
Products LP**

_____

By:
Position:

Date: _____

**Defendant The 3M Company**

By: Laura Hammargren
Position: Director & Asst. Gen. Counsel, Litigation

Date: 4/22/2021