**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| DAVID DYKEHOUSE, KRISTINA BOSKOVICH, and ELIZABETH HAMBLIN, on behalf of themselves and all others similarly situated, | |
| *Plaintiffs*, | Case No. 1:18-cv-1225-HYJ-SJB |
| v. | Hon. Hala Y. Jarbou |
| THE 3M COMPANY, GEORGIA-PACIFIC LLC, and GEORGIA-PACIFIC CONSUMER PRODUCTS LP, | |
| *Defendants*. | |

**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT**

Plaintiffs David Dykehouse, Kristina Boskovich, and Elizabeth Hamblin, on behalf of themselves and all others similarly situated, respectfully move this Court for entry of an order that will allow for the implementation of the Settlement Agreement reached in this class action, by finally certifying the Class solely for the purpose of settlement and finally approving the Settlement Agreement (attached hereto as **Exhibit 1**). In support of this motion, Plaintiffs state as follows:

1. On November 1, 2018, Plaintiffs filed this case as a putative class action against Defendants The 3M Company ("3M") and Georgia-Pacific LLC, bringing claims of public nuisance, private nuisance, trespass, unjust enrichment, negligence, gross negligence, product liability – defective design, product liability – failure to warn, and battery. The Complaint alleged that per- and polyfluoro alkyl substances ("PFAS") had migrated from a nearby former paper mill

and its associated facilities into Parchment's municipal water system, which supplied Plaintiffs and the Class with water. (**ECF No. 1**).

2.      On June 5, 2019, Plaintiffs filed their First Amended Complaint, asserting claims for public nuisance, private nuisance, and negligence against Georgia-Pacific LLC (while adding similar claims against Georgia-Pacific Consumer Products LP) and products liability claims for defective design and failure to warn against 3M. As with the original Complaint, the First Amended Complaint sought money damages for, *inter alia*, property damage or diminution in property value, stigma damages, interference with use and enjoyment of real property, non-economic damages, exposure to certain PFAS, and medical monitoring. (**ECF No. 36**).

3.      On November 12, 2019, Defendants each filed Motions to Dismiss Plaintiffs' request to obtain medical monitoring (**ECF Nos. 68, 76**). These motions were fully briefed, and the Court denied them on January 4, 2021. (**ECF No. 95**). In its Order denying the motions on procedural grounds, the Court opined that portions of *Henry v. Dow Chemical Co.*, 701 N.W.2d 684 (Mich. 2005) "strongly indicate that medical monitoring would not be an attainable remedy in this case[]" and that "Plaintiffs' prospects for acquiring medical monitoring as a remedy may be dim[.]" (**ECF No. 95,** PageID.1228-29).

4.      In an effort to avoid the cost, risk, and expense of further litigation, the Parties engaged in lengthy settlement discussions to determine whether a resolution of the case could be reached prior to briefing on Plaintiffs' Motion for Class Certification. This included participation in two full days of mediation conducted on February 26 and March 3, 2021, with the assistance of court-approved mediator Frederick Dilley. (**ECF No. 112-8,** ¶ 15-16).

5.      Based upon their investigation, and evaluation of the facts and law relating to the matters alleged in the action, Plaintiffs (on behalf of themselves and the proposed Class) and Class

Counsel have agreed to settle the lawsuit, pursuant to the terms of the Settlement Agreement. (*Id.*., ¶16).

6.      The terms of the proposed settlement are fully set forth in the Settlement Agreement. (**ECF No. 112-1**). Defendants have agreed to pay $11,900,000.00 in full settlement of the litigation.  (*Id.*, PageID.1426). The payment shall be made by Defendants collectively within seventy-five (75) days of the final approval of the Settlement by the Court into a Qualified Settlement Fund. (*Id.*) The Settlement Fund will be distributed pursuant to the Class Settlement Allocation Plan. (**ECF No. 112-2,** "Claim Processing and Payment Guidelines").

7.      The Parties have agreed to a Class, for purposes of the Settlement only, consisting of the following:

> All Persons who (i) owned, leased, rented, or resided in homes or residential properties serviced by the Parchment Water System as of July 26, 2018; and (ii) have not brought individual actions for personal injury or illness based on exposure to PFAS present in the Parchment Water System; provided, however, that the "Class" shall not include (i) Defendants, their corporate officers, or their legal counsel in this Action; (ii) Class Counsel, including its partners, members, and shareholders; or (iii) the judge to whom this Action is assigned, any member of the judge's immediate family, or any other judicial officer assigned to this case.

8.      As part of the proposed Settlement Agreement, the Parties have agreed to the appointment of Steven Liddle and Nicholas Coulson of Liddle & Dubin, P.C. as Class Counsel and the appointment of Plaintiffs as the Class Representatives. (**ECF No. 112-1**, PageID.1423).

9.      The proposed Settlement was achieved in good faith and without any undue influence.  Each side has zealously represented its interests. (**ECF No. 112-8, ¶** 15).

10.      The proposed Settlement was achieved by counsel experienced in similar litigation. (**ECF No. 112-8, ¶** 6-11).

11.      To effectuate the Settlement, Plaintiffs request that the Court enter an Order Finally Certifying the Class and Granting Final Approval of the Settlement Agreement.

12.    In support of their Motion, Plaintiffs submit and rely on the attached brief in support thereof.

13.    A proposed Final Approval Order is attached as **Exhibit 1**.

WHEREFORE Plaintiffs, on behalf of themselves and the Settlement Class respectfully request that the Court grant this Motion and enter the proposed Final Approval Order (Exhibit 1).

Respectfully submitted,

Dated: August 25, 2021

**LIDDLE & DUBIN, P.C.**
by: /s/ Nicholas A. Coulson
Steven D. Liddle (P45110)
Nicholas A. Coulson (P78001)
975 E. Jefferson Avenue
Detroit, Michigan  48207
(313) 392-0025
sliddle@ldclassaction.com
ncoulson@ldclassaction.com

*Attorneys for Plaintiffs and the Settlement Class*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| DAVID DYKEHOUSE, KRISTINA BOSKOVICH, and ELIZABETH HAMBLIN, on behalf of themselves and all others similarly situated, | |
| *Plaintiffs*, | Case No. 1:18-cv-1225-HYJ-SJB |
| v. | Hon. Hala Y. Jarbou |
| THE 3M COMPANY, GEORGIA-PACIFIC LLC, and GEORGIA-PACIFIC CONSUMER PRODUCTS LP, | |
| *Defendants*. | |

## BRIEF IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

**<u>Table of Contents</u>**

**Page**

INDEX OF AUTHORITIES............................................................................ iii

INDEX OF EXHIBITS ................................................................................. vi

I.      INTRODUCTION AND FACTUAL BACKGROUND .....................................1

II.     LEGAL STANDARD AND PROCEDURE FOR CLASS SETTLEMENT AND
        CERTIFICATION ................................................................................3

III.    CERTIFICATION OF THE SETTLEMENT CLASS REMAINS APPROPRIATE
        UNDER RULE 23 ...............................................................................3

IV.     THE SETTLEMENT SHOULD BE APPROVED AS FAIR, ADEQUATE, AND
        REASONABLE ...................................................................................5

        A.      The Settlement Satisfies the Rule 23(e)(2) Factors ................................6

              i.      Plaintiffs and Proposed Class Counsel have zealously and adequately
                      represented the Class..................................................................6

              ii.     The Settlement Agreement Was Reached as a Result of Extensive Arms'
                      Length Negotiations, Including through the Use of a Court-Approved
                      Neutral Mediator. ....................................................................7

              iii.    The proposed relief is adequate as defined by Rule 23(e)(2)(c). ...................7

                    a.      The Costs, Risks and Delay of Trial and Appeal Weigh in Favor
                            of Approval. .......................................................................8

                    b.      The Effectiveness of the Proposed Method of Distributing Relief
                            to the Class, including Class Members Claims, Weighs in Favor
                            of Approval. .....................................................................11

                    c.      The Terms of the Proposed Award of Attorney's Fees, including
                            Timing of Payment Weigh in Favor of Approval. ..............................12

                    d.      There Are No Agreements Between the Parties other than the
                            Settlement Agreement. .......................................................13

              iv.     The Proposed Settlement Treats Class Members Equitably Relative to One
                      Another. ..........................................................................13

       B.     The Settlement Also Satisfies the Traditional Sixth Circuit Factors for Approval .................................................................................................15

V.     CONCLUSION.............................................................................................16

ii

## <u>Table of Authorities</u>

**Page**

**Cases**

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) .................................................................4

*Armstrong v. Bd. of Sch. Directors*, 616 F.2d 305 (7th Cir. 1980) ) ............................................9

*Berry v. Sch. Dist.*, 184 F.R.D. 93 (W.D. Mich. 1998) ...................................................................9

*Clark Equip. Co. v. Int'l Union, Allied Indus. Workers*, 803 F.2d 878 (6th Cir. 1986) .................9

*Day v. AMC Corp.*, 2019 U.S. Dist. LEXIS 143021, 2019 WL 3977253
(E.D. Ky. July 26, 2019) ................................................................................................................5

*Demmick v. Cellco P'ship*, Civil Action No. 06-2163 (JLL), 2015 U.S. Dist. LEXIS 192723
(D.N.J. Apr. 30, 2015) ..................................................................................................................14

*Epstein v. Wittig*, 2005 U.S. Dist. LEXIS 31078, 2005 WL 3276390 (D. Kan. Dec. 2, 2005) ......6

*Fitzgerald v. P.L. Mktg.*, No. 2:17-cv-02251-SHM-cgc, 2020 U.S. Dist. LEXIS 25672 (W.D.
Tenn. Feb. 13, 2020) ...............................................................................................................13, 15

*Garner Props. & Mgmt., LLC v. City of Inkster*, No. 17-cv-13960, 2020 U.S. Dist. LEXIS
146655 (E.D. Mich. Aug. 14, 2020) .............................................................................................16

*Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075 (6th Cir. 1984) .............................................9

*Hadix v. Johnson*, 322 F.3d 895 (6th Cir. 2003) .........................................................................15

*In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 2021 U.S. Dist. LEXIS 16470 (D.S.C.,
January 25, 2021) ...........................................................................................................................8

*In re Cardizem CD Antitrust Litigation*, 218 F.R.D. 508 (E.D. Mich. 2003) ......................5, 9, 11

*In re Se. Milk Antitrust Litig.,* No. 2:07-cv-208, U.S. Dist. LEXIS 131855, 2012 WL 12875983
(E.D. Tenn. July 11, 2012) ............................................................................................................13

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720 (MKB)
(JO), 2019 U.S. Dist. LEXIS 217583 (E.D.N.Y. Dec. 16, 2019) .................................................14

*In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-md-2807, 2019 U.S. Dist. LEXIS
135573 (N.D. Ohio Aug. 12, 2019) ..............................................................................................15

*In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570 (S.D.N.Y. 2008) .............................................13

*Int'l Union v. Robert Bosch Corp.*, 2009 U.S. Dist. LEXIS 1424830
 (W.D. Mich., Nov. 3, 2009) ...........................................................................6, 9

*Isby v. Bayh*, 75 F.3d 1191 (7th Cir. 1996) ............................................9, 10

*Kis v. Covelli Enters.*, No. 4:18-cv-54, 2020 U.S. Dist. LEXIS 93929
(N.D. Ohio May 29, 2020) ........................................................................12, 14

*Macy v. GC Servs. Ltd. P'ship*, Civil Action No. 3:15-cv-819-DJH-CHL, 2019 U.S. Dist. LEXIS
210632 (W.D. Ky. Dec. 6, 2019) ....................................................................16

*Osman v. Grube, Inc.,* No. 3:16-cv-00802, 2018 U.S. Dist. LEXIS 78222, 2018 WL 2095172
(N.D. Ohio May 4, 2018) ..............................................................................15

*Petrovic v. Amoco Oil Co.*, 200 F.3d 1140 (8th Cir. 1999) .........................9

*Salinas v. U.S. Express Enters., Inc.*, No. 1:13-cv-00245, 2018 U.S. Dist. LEXIS 50800, 2018
WL 1477127 (E.D. Tenn. Mar. 8, 2018) ......................................................15

*Shy v. Navistar Int'l Corp.*, 1993 U.S. Dist. LEXIS 21291 (S.D. Ohio 1993) ..............9

*Taifa v. Bayh*, 846 F. Supp. 723 (N.D. Ind. 1994) ....................................10

*Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559 (6th Cir. 2001) .........3

*UAW v. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007) ....................5, 16

*Williams v. Vukovich*, 720 F.2d 909 (6th Cir. 1983) ...................................9

## Rules

Fed. R. Civ. P. 23(a) .....................................................................................4, 5

Fed. R. Civ. P. 23(b) .........................................................................................3

Fed. R. Civ. P. 23(b)(3) ................................................................................4-5

Fed. R. Civ. P. 23(e) ..........................................................................1, 3, 5, 15

Fed. R. Civ. P. 23(e)(1)(B) ..............................................................................3

Fed. R. Civ. P. 23(e)(2) ...................................................................6, 7, 15, 16

Fed. R. Civ. P. 23(e)(2)(C) ..............................................................................7

iv

**Other Authorities**

*Manual for Complex Litigation* (4th ed.) (2004) ........................................................................3, 9

*2 Newberg on Class Actions* ........................................................................................................7, 9

*4 Newberg on Class Actions* 4th ed. 2002) ................................................................................6

## <u>Index of Exhibits</u>

Exhibit 1 – Proposed Final Approval Order

Declaration of Nicholas A. Coulson in Support of Plaintiffs' Motion for Final Approval

Declaration of Derek Smith on Behalf of Notice Administrator Regarding Compliance With Notice Requirements

## I.    INTRODUCTION AND FACTUAL BACKGROUND

Pursuant to Fed. R. Civ. P. 23(e), Plaintiffs seek the second of two phases of the Court's required approval of the Settlement reached in this matter after more than 2.5 years of litigation.[1] The Court entered the Preliminary Approval Order on April 29, 2021. (ECF No. 114). Pursuant to the Preliminary Approval Order, the Notice campaign was conducted and Class Members were given the opportunity to make claims, opt-out, or object to the Settlement before the Court considered whether to grant final approval.[2] The reaction of the Class has been almost unfathomably positive. While the residents of several hundred households have submitted claims for payment, not a single objection was received, and zero Class Members opted out.[3] This remarkable reception from the Class makes clear that the Court was right to find that it would likely be able to grant final approval. (PageID 1497, ¶3). Plaintiffs now request that the Court enter the Final Approval Order **(Ex. 1)** so that the Settlement Agreement can be implemented, and Class Members paid.

The Settlement Agreement provides the Class with excellent relief for the claims asserted in this action. **(ECF No. 112-8** ("Coulson Preliminary Approval Decl.")[4] ¶17-21). This case does

---

[1] Plaintiffs refer the Court to their Motion for Preliminary Approval (ECF No. 112) for a recitation of the history of this litigation.

[2] The components of the Notice campaign are described and attested to in the Declaration of Derek Smith (Director of Class Action Services for KCC) filed concurrently herewith.

[3] Two Opt-Outs were received by the Settlement Administrator, but by their own terms they were submitted by persons who were not Class Members to begin with. (Smith Decl. ¶ 8). No objections were received to the Settlement. (Declaration of Nicholas A. Coulson in Support of Plaintiffs' Motion for Final Approval (filed concurrently herewith) ¶ 4).

[4] Plaintiffs refer extensively herein to the previously filed Declaration of Nicholas A. Coulson in Support of Plaintiffs' Motion for Preliminary Approval (**ECF No. 112-8**) and do so as "Coulson

not involve and has never involved claims for personal injury or illness, and the Settlement therefore does not release such claims. (**ECF No. 112-1,** PageID.1424, ¶1(e); PageID.1429-30, ¶4(b)). Instead, the Settlement Agreement requires Defendants to pay $11,900,000 into a fund for the benefit of Settlement Class Members, to be paid to those who had property interests and/or resided in homes serviced by Parchment's municipal water system as of the date the contamination was discovered. (*Id.*, PageID.1426, ¶2(a)). In general, the funds are to be allocated to Class Members pro- rata in one of three amounts, depending on whether they (i) owned, rented, or leased a property that received water from Parchment's system; (ii) resided in such a property (and were therefore presumptively exposed to the water); or (iii) both (i) and (ii). (**ECF No. 112-2**, PageID.1451, ¶ 10-12). There were approximately 1,174 relevant residential properties and approximately 3,100 residents at the relevant time. After final approval and the deduction of such attorneys' fees, costs, and expenses (including the costs of notice and administration) and incentive payments as the Court may award, the Settlement Fund will be allocated as set forth in the Class Settlement Allocation Plan (**ECF No. 112-2**).

A multimillion-dollar Class Action settlement in a case of such personal nature as this one that draws no objections or operative opt-outs is vanishingly rare. The Class appears to have recognized what this Court has determined in granting preliminary approval - that the Settlement Agreement provides substantial benefits to the Class despite the significant risks the Class faced in the litigation. Plaintiffs request that the Court take the final step necessary to facilitate the distribution of those benefits by granting final approval to the Settlement.

---

Preliminary Approval Decl." Plaintiffs also submit a very brief Declaration of Nicholas A. Coulson in support of the instant motion, which they refer to only once, above.

## II.    LEGAL STANDARD AND PROCEDURE FOR CLASS SETTLEMENT AND CERTIFICATION

Rule 23(e) provides that "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). Approval of a class action settlement is a two-step process. "First, counsel submit the proposed terms of [the] settlement and the judge makes a preliminary fairness evaluation. . . Once the judge is satisfied as to the . . . results of the initial inquiry into the fairness, reasonableness, and adequacy of the settlement, notice of a formal Rule 23(e) fairness hearing is given to the class members." *Manual for Complex Litigation* (4th ed.) §§ 21.632-.633 (2004); *see also Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559, 565-66 (6th Cir. 2001).  Once the class has been notified and its input received, the Court conducts a hearing to determine whether the settlement is fair, reasonable, and adequate after considering whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i)    the costs, risks, and delay of trial and appeal;
>> (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii)  the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv)   any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

## III.    CERTIFICATION OF THE SETTLEMENT CLASS REMAINS APPROPRIATE UNDER RULE 23.

Before ordering notice, the Court made the required finding that it will "likely be able to… certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B); *see*

3

(PageID.1497). A class action may be maintained if each of the prerequisites of Rule 23(a) is satisfied along with one of the three categories in Rule 23(b). Rule 23(a)'s prerequisites mandate findings that:

1)  the class is so numerous that joinder of all members is impracticable;
2)  there are questions of law or fact common to the class;
3)  the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
4)  the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Plaintiffs seek certification under Rule 23(b)(3), which requires that, "questions of law or fact common to class members predominate over any questions affecting only individual members" (the predominance requirement), "and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy" (the superiority requirement). Fed. R. Civ. P. 23(b)(3). The matters pertinent to these findings include:

(A)  the class members' interests in individually controlling the prosecution or defense of separate actions;
(B)  the extent and nature of any litigation concerning the controversy already begun by or against class members;
(C)  the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
(D)  the likely difficulties in managing a class action.

*Id.* However, where, as here, certification is sought in the context of a settlement, the final Rule 23(b)(3) factor ("manageability") is rendered irrelevant. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there be no trial.").

Plaintiffs previously submitted a detailed analysis of the Rule 23 factors in their Motion for Preliminary Approval[5], at which time the Court found that "[t]he Class appears likely to satisfy

---

[5] (ECF No. 112), (PageID.1399-1405).

the requirements of Rule 23(a) and Rule 23(b)(3) for settlement purposes." (PageID.1497). Plaintiffs submit that nothing has changed that would warrant a different conclusion, particularly given (a) the complete lack of any opposition to the Settlement and (b) the Class's overwhelmingly positive response. Plaintiffs therefore request that the Class be certified to facilitate the implementation of the Settlement Agreement.

## IV.    THE SETTLEMENT SHOULD BE APPROVED AS FAIR, ADEQUATE, AND REASONABLE

The Court previously found that it would likely be able to approve the Settlement Agreement as meeting the required standard of fairness, reasonableness, and adequacy. (PageID. 1497, ¶¶ 2,3). Now with the benefit of the Class's input, it is even more clear that the Settlement Agreement far exceeds the requirements for approval. The Class overwhelmingly recognizes the Settlement Agreement as an excellent result, which counsels strongly in favor of a further finding of fairness, reasonableness, and adequacy.

The Sixth Circuit has long recognized that the law favors the settlement of class action lawsuits. *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007) (noting "the federal policy favoring settlement of class actions"). "[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *In re Cardizem CD Antitrust Litigation*, 218 F.R.D. 508, 530 (E.D. Mich. 2003) (citations omitted). Since its 2018 amendment, Fed. R. Civ. P. 23(e) directs courts evaluating whether a settlement is fair, reasonable, and adequate to consider "(1) whether the proposed class was adequately represented; (2) whether the proposed settlement was reached through an arm's length negotiation; (3) whether the proposed relief to the class is adequate; and (4) whether the proposed settlement treats class members equitably." *Day v. AMC Corp.*, 2019 U.S. Dist. LEXIS 143021, *10, 2019 WL 3977253 (E.D. Ky. July 26,

5

2019).  The Settlement Agreement is more than fair, reasonable, and adequate because it delivers nearly 12 million dollars in financial relief to the Class, which compares favorably to the few salient comparable cases that exist.

**A.  The Settlement Satisfies the Rule 23(e)(2) Factors.**

**i.    Plaintiffs and Proposed Class Counsel have zealously and adequately represented the Class.**

Beyond the adequacy of representation considerations addressed above, "the nature and amount of discovery in this or other cases, or the actual outcomes of other cases, may indicate whether counsel negotiating on behalf of the class had an adequate information base." Fed. R. Civ. P. 23(e)(2) Advisory Committee's Note (2018 Amendment). "In evaluating the proposed settlement, this Court need not possess sufficient 'evidence to decide the merits of the issue, because the compromise is proposed in order to avoid further litigation.'" *Int'l Union v. Robert Bosch Corp.*, 2009 U.S. Dist. LEXIS 142483, *10 (W.D. Mich., Nov. 3, 2009) (quoting 4 *Newberg on Class Actions* § 11:45 (4th ed. 2002)). Instead, the Court need only have "sufficient facts before [it] to intelligently approve or disapprove the settlement." *Id*. (quoting *Epstein v. Wittig*, 2005 U.S. Dist. LEXIS 31078, 2005 WL 3276390, at *7 (D. Kan. Dec. 2, 2005) (unpublished)).

Here, the Parties engaged in extensive formal discovery, allowing all Parties and counsel to have "all information necessary to assess the merits of the [P]arties' respective claims and the merits of the final settlement." *Int'l Union v. Robert Bosch Corp.*, 2009 U.S. Dist. LEXIS 142483, *11 (W.D. Mich., Nov. 3, 2009); (Coulson Preliminary Approval Decl., ¶13-16). "In short, …[the p]arties were fully informed and were in possession of all information, documents and data necessary to make an informed decision regarding the future of the litigation." *Id*.

6

  **ii.**  **The Settlement Agreement Was Reached as a Result of Extensive Arms' Length Negotiations, Including through the Use of a Court-Approved Neutral Mediator.**

  "There is usually an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval." 2 *Newberg On Class Actions*, Herbert B. Newberg and Alba Conte, §11.41, at 11-88 (3d ed. 1992). "[T]he involvement of a neutral or court-affiliated mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests." Fed. R. Civ. P. 23(e)(2) Advisory Committee's Note (2018 Amendment).

  The Settlement Agreement was reached after months of prolonged negotiations, including two full days of mediation with the assistance of court-appointed mediator, Frederick Dilley. (Coulson Preliminary Approval Decl., ¶15-16). Class Counsel are experienced litigators who negotiated this settlement following significant discovery, ensuring the protection and furtherance of the Class's interests. (*Id.*, ¶11-14). The settlement is clearly the product of arm's length negotiations which adequately protected the Class's interests.

  **iii.**  **The proposed relief is adequate as defined by Rule 23(e)(2)(c).**

  Rule 23(e)(2)(C) requires the Court to ensure "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(c). Consideration of these factors readily supports final approval here.

7

> a. **The Costs, Risks, and Delay of Trial and Appeal Weigh in Favor of Approval.**

Plaintiffs are represented by counsel with significant experience in litigating environmental class and mass actions, including environmental contamination cases, who were adequately informed of both the strengths and weaknesses of Plaintiffs' case. (Coulson Preliminary Approval Decl., ¶ 6-16). This experience provides Plaintiffs' counsel with a foundation for evaluating the Settlement in light of the possible outcomes of continued litigation. Plaintiffs' counsel has fully considered the risks of attempting to obtain class certification over Defendants' objection and proving this case on the merits, including proof of damages. (*Id.* ¶ 18-20).  This Settlement avoids those risks and provides significant relief for an immediate and ongoing concern. To jeopardize this satisfactory settlement as a gamble to seek a greater monetary award would not be in the best interests of the Class. (*Id.*, ¶ 21)

Plaintiffs and their counsel believe that Plaintiffs and the Class have an excellent case, and that is reflected in the result. (*Id.*, ¶17). The Settlement Agreement compares very favorably with recent settlements in other environmental contamination class actions. For example, the MDL transferee Court overseeing a case arising from PFAS pollution in Wisconsin recently approved a settlement of $17,500,000 in cash to compensate class members for their alleged exposure to PFAS-contaminated water. *See In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 2021 U.S. Dist. LEXIS 16470 (D.S.C., January 25, 2021).  Importantly, that settlement involved a class definition that extended 35 years in the past, the contamination of privately owned wells (as opposed to a former source of municipal water), and the release of personal injuries. *Id.* at *4, *9. These key differences highlight the excellent result provided by the instant settlement. The instant Settlement provides for $11,900,000 in cash, includes a Class defined based on occupancy or property interests on only a single day in 2018, does not involve the contamination of private wells,

and does not release any individual claims of class members for past, present, or future manifested bodily injuries that have resulted in a medically diagnosed condition.  Thus, this Agreement represents an excellent result for the Class.

A significant factor in the Court's evaluation of a proposed settlement is the likelihood of success on the merits weighed against the relief offered in the settlement. *See Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984); *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1150 (8th Cir. 1999); *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996); *see also* 2 NEWBERG § 11:44 (3d ed. 1992). Although this factor requires "'some evaluation of the merits of the dispute, the district court must refrain from reaching conclusions upon issues which have not been fully litigated.'" *Berry v. Sch. Dist.*, 184 F.R.D. 93, 98 (W.D. Mich. 1998) (quoting *Armstrong v. Bd. of Sch. Directors*, 616 F.2d 305, 314 (7th Cir. 1980)). The ultimate question, rather, is "'whether the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued.'" *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 522 (E.D. Mich. 2003) (quoting Manual for Complex Litig. ("MCL") § 30.42 at 238 (3d ed. 1995)); *see also Shy v. Navistar Int'l Corp.*, 1993 U.S. Dist. LEXIS 21291, *11 (S.D. Ohio 1993) ("It is neither required, nor is it possible for a court to determine that the settlement is the fairest possible resolution of the claims of every individual class member; rather, the settlement, taken as a whole, must be fair, adequate and reasonable.") (citing *Clark Equip. Co. v. Int'l Union, Allied Indus. Workers*, 803 F.2d 878 (6th Cir. 1986)). Settlements should represent "a compromise which has been reached after the risks, expense and delay of further litigation have been assessed." *Williams v. Vukovich*, 720 F.2d 909, 922 (6th Cir. 1983).

An evaluation of the relief achieved in the Settlement Agreement considered against the costs, risks, and delay of prosecuting this action through a trial and possible appeal(s) strongly

counsels in favor of final approval. The difficulties of continued litigation in a case of this nature are difficult to overstate. Litigating environmental contamination class actions is inherently costly and time consuming given the involvement of highly specialized experts and the need for extensive documentary and testimonial evidence. (Coulson Preliminary Approval Decl., ¶20). The class certification stage alone typically lasts for a period of years and involves costs, particularly expert costs, that regularly reach six figures. (*Id.*, ¶ 19). Litigating beyond the class certification stage would necessarily involve additional voluminous discovery and likely hundreds of thousands of dollars of additional expert testimony. Such litigation could proceed for several years through trial and possibly appeal(s), including potential appeals of the class certification decision itself. (*Id.*, ¶ 21).

Here, the continuation of the litigation "would require the resolution of many difficult and complex issues," would "entail considerable additional expense," and would entail substantial trial time. *Isby*, 75 F.3d at 1199 (quoting *Taifa v. Bayh*, 846 F. Supp. 723, 727 (N.D. Ind. 1994)). As discussed previously, the Settlement Agreement represents "an outcome at least comparable, if not far superior, to that which plaintiffs might achieve by proceeding to trial." *Id.*

The Settlement achieves substantial benefits for the class without expending additional resources and without delay. The Class will obtain immediate relief, as opposed to waiting years for an uncertain outcome which would in any event be diminished by the costs of protracted litigation. (Coulson Decl., ¶21). The fact that the settlement offers these advantages and falls within the range of reasonableness weighs heavily in favor of approval.

While Class Counsel maintains confidence in the strength of its merits arguments, the results of Defendants' previously filed motion on medical monitoring and likely future motions are anything but certain. (Coulson Preliminary Approval Decl., ¶18). The results of an adverse

determination on such motions or appeals threatened to render Plaintiffs' claims worth somewhere between mere pennies on the dollar and nothing. Furthermore, no matter the outcome on those issues, Plaintiffs would additionally face the challenge of class certification, summary judgment, and trial. And "the prospect of a trial necessarily involves the risk that Plaintiffs would obtain little or no recovery." *In Re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 523 (E.D. Mich. 2003). "Experience proves that, no matter how confident trial counsel may be, they cannot predict with 100% accuracy a jury's favorable verdict." *Id.* Defendants would be expected to mount substantial defenses on the legal and factual basis for all claims, and certification of a class, at all future stages of this case, all with significant risk and costs to the relief sought by the Class. For example, Defendants would likely argue that the Class experienced no diminution in property value and that the market for home sales has not been materially impacted, and they likewise would assert that medical monitoring is not a viable remedy, but even if viable, is not warranted here given the science. (Coulson Preliminary Approval Decl., ¶18, 20). While Plaintiffs would dispute these arguments, they create serious risk for Plaintiffs' claims.

The Settlement Agreement avoids the risk, complexity, time, and cost of further litigation, and provides the Class with substantial guaranteed monetary relief on an immediate basis. After considering the range of possibilities, it is Plaintiffs' counsel's experienced opinion that, given the potential risks, rewards, and costs of continuing litigation, Settlement on the proposed terms is the most desirable course for Plaintiffs and the Class to take. (*Id.* ¶17, 21). Those risks further counsel in favor of approving the Settlement.

### b. *The Effectiveness of the Proposed Method of Distributing Relief to the Class, including Class Members' Claims, Weighs in Favor of Approval.*

The Court previously appointed KCC Class Action Services, LLC as the Class Administrator to provide notice to the Class and administer the Settlement. (PageID.1499, ¶ 7).

11

KCC will administer the Settlement pursuant to the Claim Processing and Payment Guidelines (**ECF No. 112-2**). Under those guidelines, after deducting the amounts awarded to (a) Class Counsel for attorneys' fees and costs; (b) the Class Administrator for the costs of notice and administration; and (c) Plaintiffs/Class Representatives for their litigation efforts, the Settlement Fund will be distributed to Class Members based on the number and type of approved claims. (*Id.*, ¶10; **ECF No. 112-9**, ¶ 10). Specifically, each approved claiming Class Member who owned, rented, or leased a property serviced by Parchment's municipal water system as of July 26, 2018 will be awarded one Share. (**ECF No. 112-2**, ¶10). Each approved claiming Class member who resided in such a property will be awarded two Shares. (*Id.*) Approved claiming Class Members who satisfy both categories will receive the combined three Shares. (*Id.*) KCC will administer the Settlement Fund and conduct all necessary work to issue checks to the approved claiming Class Members. (**ECF No. 112-9**, ¶ 10). Because this is an environmental case involving people in a fixed geographic area and not, for example, a consumer financial case in which each Class Member has an account with the defendant (and can therefore be paid electronically and/or automatically), this is the most effective and practicable way to provide payment to Class Members.

### c. The Terms of the Proposed Award of Attorney's Fees, including Timing of Payment, Weigh in Favor of Approval.

While so called "clear-sailing" agreements to refrain from opposing Class Counsel's request for fees are permissible in this Circuit, the Settlement Agreement contains no such provision. *See Kis v. Covelli Enters.*, No. 4:18-cv-54, 2020 U.S. Dist. LEXIS 93929, at *11 (N.D. Ohio May 29, 2020) ("Absent evidence of improper incentives, a clear-sailing provision alone does not doom the settlement. Upon close inspection, the Court finds no cause for concern. Class Counsel seeks fees that are a percentage of the aggregate settlement amount, a common method of valuing attorney's fees in common fund settlements."). Instead, the Settlement Agreement simply

12

provides for Class Counsel to apply for an award of attorneys' fees from the Court. (Ex. 1, pg. 7, ¶3).

Counsel has filed a separate motion seeking an award of fees of less than one-third of the Settlement, well within the accepted range in the Sixth Circuit. (ECF No. 116). "The one-third contingency fee arrangement reflected in the Settlement Agreement is 'certainly within the range of fees often awarded in common fund cases, both nationwide and in the Sixth Circuit.'" *Fitzgerald v. P.L. Mktg.*, No. 2:17-cv-02251-SHM-cgc, 2020 U.S. Dist. LEXIS 25672, at *31-32 (W.D. Tenn. Feb. 13, 2020) (quoting *In re Se. Milk Antitrust Litig.,* No. 2:07-cv-208, 2018 U.S. Dist. LEXIS 131855, 2012 WL 12875983, at *2 (E.D. Tenn. July 11, 2012)). Class Counsel will not be paid until the Defendants fund the Settlement Fund, near or around the same time Class Members begin to receive payments. This factor counsels in favor of approval.

### d.   There Are No Agreements Between the Parties other than the Settlement Agreement.

As stated by the Settlement Agreement's own terms, no other agreement between the Parties exists, and the Settlement Agreement expressly disclaims any other such agreement. (**Ex. 1**, pg. 17 of 21, ¶18).

### iv.   The Proposed Settlement Treats Class Members Equitably Relative to One Another.

"When formulated by competent and experienced counsel, a plan for allocation of net settlement proceeds need have only a reasonable, rational basis. A reasonable plan may consider the relative strength and values of different categories of claims." *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 580 (S.D.N.Y. 2008) (internal quotations, citations, and marks omitted). "In assessing whether the Settlement Agreement treats Settlement Class Members fairly vis-a-vis one another, the Court considers whether the 'apportionment of relief among class

13

members takes appropriate account of differences among their claims.'" *Kis v. Covelli Enters.*, No. 4:18-cv-54, 2020 U.S. Dist. LEXIS 93929, at *12 (N.D. Ohio May 29, 2020) (quoting Fed. R. Civ. P. 23(e)(2)(D), Advisory Committee Note 2018 Amendments).

Settlement Class Members who have submitted timely and valid claims will receive one of three amounts, depending on whether they 1) owned, rented, or leased a property in the Class area; 2) resided in such a property; or 3) both. (**ECF No. 112-2**, ¶10). Class Members who only had a property interest but did not reside in their property will receive one half of what those who resided in a home but did not have a property interest receive, and one-third of what those who both had a property interest and resided at their property. (*Id.*) In Class Counsel's view, this is a reasoned reflection of the fact that individuals who owned and resided in a property have a different set of claims and potential damages than a person who simply owns property within the Class area. Due to the myriad of potential factors and the limited temporal nature of the Class, it would be impractical, burdensome, and inherently likely to cause conflict if Class Members within each of the three categories received differing payments from one another.  This likewise simplifies the claims process and reduces its expense to the benefit of the Class.  Equal payments to Class Members who are generally similarly situated is an accepted form of equitable distribution. *See, e.g., Demmick v. Cellco P'ship*, Civil Action No. 06-2163 (JLL), 2015 U.S. Dist. LEXIS 192723, at *47 (D.N.J. Apr. 30, 2015) ("the Court approves [the] Plan as fair, reasonable and adequate for the following reasons. First, every eligible Settlement Class Member will receive the same amount of cash."); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720 (MKB) (JO), 2019 U.S. Dist. LEXIS 217583, at *226 (E.D.N.Y. Dec. 16, 2019) ([t]he Court also notes that for such large class action settlements that involve releases, it would

14

be nearly administratively unfeasible to tailor a release to match the duration that a member had been in the class.").

The only other difference in the treatment of Class Members is that the named Plaintiffs will seek incentive awards of $5,000 each. (**ECF No. 112-1**, PageID.1429, ¶3(d)). Similar service awards are regularly granted to reward plaintiffs for the benefit they confer on their fellow class members. "[I]ncentive awards are efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Fitzgerald v. P.L. Mktg.*, No. 2:17-cv-02251-SHM-cgc, 2020 U.S. Dist. LEXIS 25672, at *33-34 (W.D. Tenn. Feb. 13, 2020) (quoting *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003)). "The proposed service payments are similar to other collective and class action incentive awards approved by courts in this Circuit. *See, e.g., Salinas v. U.S. Express Enters., Inc.*, No. 1:13-cv-00245, 2018 U.S. Dist. LEXIS 50800, 2018 WL 1477127, at *10 (E.D. Tenn. Mar. 8, 2018) (collecting cases in which courts approved service payments to named plaintiffs between $7,500 and $10,000), *adopted by* 2018 U.S. Dist. LEXIS 48946, 2018 WL 1475610 (E.D. Tenn. Mar. 26, 2018); *Osman v. Grube, Inc.,* No. 3:16-cv-00802, 2018 U.S. Dist. LEXIS 78222, 2018 WL 2095172,*2 (N.D. Ohio May 4, 2018) (approving $7,500 service payment to named plaintiff in FLSA collective action). The plan of allocation, like the Settlement Agreement as a whole, is fair, adequate, and reasonable.

**B. The Settlement Also Satisfies the Traditional Sixth Circuit Factors for Approval.**

Some courts continue to consider the factors used to evaluate settlement fairness prior to the Rule 23(e) amendments.[6] "In addition to the Rule 23(e)(2) factors, courts may also consider

---

[6] *See, e.g., In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-md-2807, 2019 U.S. Dist. LEXIS 135573, at *11 (N.D. Ohio Aug. 12, 2019) ("Before this Rule 23(e)(2) amendment, circuit courts had developed their own multi-factor inquiries. According to the 2018 Amendment's

circuit-specific factors in the analysis. In the Sixth Circuit, those factors are '(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.'" *Garner Props. & Mgmt., LLC v. City of Inkster*, No. 17-cv-13960, 2020 U.S. Dist. LEXIS 146655, at *22-23 (E.D. Mich. Aug. 14, 2020) (citing *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)). "No single factor is determinative, and the Court should consider the factors relevant to the circumstances of each individual case." *Id.* (citation omitted).

Factors 1-5 are subsumed by the Rule 23(e)(2) factors. *See Macy v. GC Servs. Ltd. P'ship*, Civil Action No. 3:15-cv-819-DJH-CHL, 2019 U.S. Dist. LEXIS 210632, at *4-5 (W.D. Ky. Dec. 6, 2019) ("[Rule 23(e)] largely encompasses the factors that have been employed by the Sixth Circuit[.]"). The sixth factor, the reaction of absent Class Members, could not weigh more strongly in favor of approval. The seventh factor, the public interest, also weighs overwhelmingly in favor of approval. This Settlement represents the resolution of an alleged environmental impact to thousands of people which will provide meaningful relief to the community and certainty to each of the Defendants. Beyond the public interest in efficient resolution of litigation generally, the Settlement serves the important interest of encouraging responsible environmental stewardship. Thus, both additional factors support approval of the Settlement.

## V.    CONCLUSION

WHEREFORE, Plaintiffs request that this Honorable Court enter an order finally approving the Settlement Agreement, substantially in the form attached hereto as **Exhibit 1.**

---

Advisory Committee Notes, so long as courts use the 23(e)(2) factors as the primary framework, courts may still consider circuit-specific factors in the analysis.").

Respectfully submitted,

Dated: August 25, 2021

*s/ Nicholas A. Coulson*
Steven D. Liddle
Nicholas A. Coulson
**LIDDLE & DUBIN PC**
975 E. Jefferson Avenue
Detroit, MI 48207
Tel: (313) 392-0015
Fax: (313) 392-0025
sliddle@ldclassaction.com
ncoulson@ldclassaction.com

*Attorneys for Plaintiffs and the Settlement Class*

17

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that Plaintiffs' Unopposed Motion for Final Approval complies with the type-volume limitation pursuant to W.D. Mich. LCivR 7.2(b)(i). The brief contains 5,305 words of 12-point type. The word processing software used to prepare this brief was Microsoft Word 365 version 1908.

Dated: August 25, 2021

/s/ Nicholas A. Coulson
Nicholas A. Coulson

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 25, 2021 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses denoted on the Electronic Mail notice list.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: August 25, 2021

/s/ Nicholas A. Coulson
Nicholas A. Coulson
